# EXHIBIT 1

From: VSA DRUG #1033      Page: 1/9      Date: 7/16/2007 1:08:59 PM

**\* Cosigned \*      Loan Request/Credit Agreement – Signature Page**

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

Education One® Education One Undergraduate Loan                    Academic Period: 08/2007-05/2008

Lender: JPMorgan Chase Bank, N.A.          School: CHRISTIAN BROTHERS UNIVERSITY

Loan Amount Requested: $8500.00          Repayment Option: Full Deferral

Deferment Period Margin: 7.25          Repayment Period Margin: 7.25      Loan Origination Fee Percentage: 10.50

### STUDENT BORROWER INFORMATION

Borrower Name: Alisha D Waddell          Home Address: ██████████ Lincoln, AR ███████
Social Security #: ████4440          Date of Birth: ██1988      Home Telephone: █████████
Mobile Telephone:          E-mail Address:
Student Citizenship (check one box):      ☒ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Gwyda G Waddell      Reference Home Tel #: ██████████      Work Tel #:
Reference Street Address:
Reference City/State/Zip:

### COSIGNER INFORMATION (Must be age of majority in state of residence – see Paragraph N of Credit Agreement)

Cosigner Name: James Waddell          Home Address: ██████████ AR █
Social Security #: ████1764          Date of Birth: ██1938      Home Telephone: ██████████
Mobile Telephone:          E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy in the last 10 years?...      ☒ No      ☐ Yes
Current Employer: ███████          Years There: ██████      Employer Telephone: ██████████
Current Position: Other
Years at Previous Employment: 0 Years
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.
If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):      ☒ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Borrower.
Personal Reference Name: James D Waddell      Reference Home Tel #: ██████████      Work Tel #:
Reference Street Address:
Reference City/State/Zip:

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement EO.07-08.CSX1.10DC.1106 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on this Credit Agreement and any related notices that require signature. If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend: (i) my fax signature to be an electronic signature under applicable federal and state law, (ii) any fax printout of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code. I, the Cosigner, have read the applicable cosigner notice(s).

For purposes of the following notices "you" means the Borrower and Cosigner, not the Lender.

**FOR ALABAMA RESIDENTS:** CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.
**FOR WISCONSIN RESIDENTS:** NOTICE TO CUSTOMER:
(a)   DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b)   DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c)   YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d)   YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) –
FAX TO: 800-704-9407

Signature of Borrower *Alisha Waddell*          Date *7-16-07*

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner *James W Waddell*          Date *7-16-07*

**EO.07-08.CSX1.10DC.1106**          LENDER COPY
PN01_EO_07-08_CSX1_F_X_WADDELL_A105346549.pdf                    EOXUDP

In this Credit Agreement, the words "I", "me", "my", and "mine" mean each and every Borrower and Cosigner, individually and collectively, who signed this Credit Agreement. The words "you", "your", "yours", and "Lender" mean the Lender named at the top of the first page of this Credit Agreement, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to your order, upon the terms and conditions of this Credit Agreement, the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum, and other charges set forth herein.

**B. LOAN; DISCLOSURE STATEMENT:**

1. By signing this Credit Agreement, and submitting it to you, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. When you receive my signed Application, you are not agreeing to lend me money. You have the right not to make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A).

2. If you agree to make a loan to me, you will mail me the disbursement check (the "Disbursement Check") and a statement disclosing certain information about the loan in accordance with the federal Truth-in-Lending Act (the "Disclosure Statement"). You have the right to disburse my Disbursement Check through an agent. At your option, you may also make any Disbursement Check co-payable to me and the Cosigner or to me and the School. In addition to other information, the Disclosure Statement will tell me the amount of my disbursement and the amount of the Loan Origination Fee. The Disclosure Statement is part of this Credit Agreement. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. My endorsement of the Disbursement Check or allowing the loan proceeds to be used by or on behalf of the student Borrower without objection will acknowledge receipt of the Disclosure Statement and my agreement to be legally bound by this Credit Agreement.

3. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice, together with my unused Disbursement Check or, if I have already endorsed and delivered the Disbursement Check to the School, a good check, payable to you, in the full amount of the Disbursement Check. In any event, I cannot cancel more than ten (10) days after I receive the Disclosure Statement. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.3, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date shown on any Disbursement Check you prepare for me (not the date I endorse or negotiate my check).

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Education One Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, a student who receives the first of joint or serial degrees (e.g., associates to bachelors) may continue in-school deferment while completing their second degree, up to the 5-year or 5½-year maximum.

(b) *Education One Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement

Date; provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8¼ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends (or, if there is no Deferment Period, the day after the Disbursement Date for my loan). The Repayment Period is 20 years, unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest on the outstanding balance of this Credit Agreement (including any unpaid interest later added to principal according to Paragraph D.3) will accrue each day (including holidays and other days you are closed) at the Variable Rate (Paragraph D.2) divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H). In all cases, the sum of interest you capitalize plus the then-outstanding principal balance is thereafter considered the principal balance, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c)

following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe principal, interest, and/or late fees at the end of the Repayment Period. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full in a single payment.

5. Payments – Payments will be applied first to late fees and other fees and charges, then accrued interest, and the remainder to principal. If I have multiple loans processed by the servicer, and I submit a single payment that is not sufficient to pay all of the amounts I owe, such payment may be divided between or among the loans in accordance with applicable law and the servicer's customary procedures.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. I will pay only one late fee for any (monthly) payment, regardless of the number of days it is late. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: You may charge me an Origination Fee. If you charge me, at the time you issue any disbursement to me, or on my behalf, you may add the Origination Fee to my loan amount. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire Principal Sum would equal 6.9519% of the loan amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.3), I will not be entitled to a refund of any Loan Origination Fee after my Disbursement Check has been negotiated.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty or charge.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. I understand that if I default on my loan, disclosure of my loan information to consumer reporting agencies may adversely affect my credit rating. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. To the extent permitted by law, upon default, you will have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

K. INFORMATION:

1. I must update any and all information related to this Credit Agreement or my loan application whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also provide the School with certain personally-identifiable information about me (such as my Social Security Number and my Loan ID number) and report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in OHIO and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement. If I fax my Credit Agreement, I have read and understand the prohibition regarding changes in Paragraph L.16.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. If I am in default at any time (including but not limited to a situation where I give an improper cancellation notice), you may exercise on my behalf any right that I may have to receive a full or partial refund of payments made to the School. I authorize the School to pay any or all of such amounts directly to you upon receipt of notice from you that I am in default under this Credit Agreement.

9. The Borrower and the Cosigner each agrees that any communication between you and the Borrower or the Cosigner will be binding on the Borrower and the Cosigner. The Borrower and Cosigner intend to be treated as principals of this Credit Agreement and not as sureties. To the extent the Borrower or the Cosigner may be treated as a surety, the Borrower and Cosigner waive all notices otherwise required or available by law, and all suretyship defenses that might be available (including, without limitation, contribution, subrogation and exoneration). The Cosigner agrees that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on the Cosigner. It shall not be necessary for you to resort to or exhaust your remedies against the Borrower before calling upon the Cosigner to make repayment.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States dollars with no deduction for currency exchange.

11. The student Borrower's failure to complete the education program paid for with this loan will not relieve any Borrower of any obligation under this Credit Agreement.

12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy

contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

13.  I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14.  I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15.  Waiver by Lender:  You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16.  If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement and I will refax the first page upon request by Lender. I may NOT amend the Credit Agreement by making changes to the Signature Page, which are then faxed to Lender. If the Borrower faxes the Signature Page, and the Lender approves the application, you and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

M. DISCLOSURE NOTICES

---

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you (the Borrower and the Cosigner):*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

---

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA and UTAH RESIDENTS:  As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. (For purposes of the following two notices, the word "you" refers to the Borrower and the Cosigner, not the Lender.)

IOWA RESIDENTS:  If you are an Iowa resident and your amount financed is $25,000 or less, this is a consumer credit transaction.

IOWA, KANSAS and NEBRASKA RESIDENTS: (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender.) NOTICE TO CONSUMER: 1.  Do not sign this Credit Agreement before you read it.  2.  You are entitled to a copy of this Credit Agreement.  3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of OHIO, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS:  ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEVADA RESIDENTS:  This is a loan for study.

NEW YORK, RHODE ISLAND, and VERMONT RESIDENTS: I understand and agree that you may obtain a consumer credit report in connection with updates, renewals of extensions of any credit as a result of this application.  If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report.  I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.

NEW JERSEY RESIDENTS:  The section headings of this Credit Agreement are a table of contents and not contract terms.  Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires.  In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS:  The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request.  The Ohio Civil Rights Commission administers compliance with this law.

OKLAHOMA RESIDENTS:  If I am in default and only if the total amount disbursed under this Credit Agreement is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

WISCONSIN RESIDENTS:  For married Wisconsin residents, my signature confirms that this loan obligation is being incurred in the interest of my marriage or family.  No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, a statement or a decree or have actual knowledge of the adverse provision.  If the loan for which I am applying is granted, I will notify you if I have a spouse who needs to receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION:  I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith.  I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated.  I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

STATE AGE REQUIREMENTS:  THE LEGAL AGE FOR ENTERING INTO CONTRACTS IS 18 YEARS OF AGE IN EVERY STATE IN THE UNITED STATES EXCEPT THE FOLLOWING:  ALABAMA AND NEBRASKA 19 YEARS OLD, AND MISSISSIPPI AND PUERTO RICO 21 YEARS OLD.

**By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.**

O. STATE-SPECIFIC COSIGNER NOTICES:  For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the Lender.

FOR OBLIGORS COSIGNING IN VERMONT:  For purposes of the following notice, the words "you" and "your" refer to any Cosigner, not to the Lender.  "Credit Agreement" means this Credit Agreement.

*NOTICE TO COSIGNER:*
YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN.  IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

## FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley):**

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to.  Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay.  You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the Borrower.  The holder of the loan can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo.  Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla.  Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor.  Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc.  Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito *de usted*.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

# EXHIBIT 2



CHASE

TRH
21 St. James Avenue, 9th Floor
Boston, Massachusetts 02116

NO. 00420317

DATE
07/18/2007

**$8,500.00**

PAY  EIGHT THOUSAND FIVE HUNDRED AND .00 DOLLARS

TO
THE
ORDER
OF

ALISHA D WADDELL & JAMES WADDELL
137 CHESTNUT CIR
LINCOLN
AR 72744

⑆004203178⑆  ⑆0445⑆  9706⑆

⑆0000850000⑆

This is a LEGAL COPY of
your check. You can use it
the same way you would
use the original check.



# EXHIBIT 3

## POOL SUPPLEMENT (DTC ONLY)
### BANK OF AMERICA, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Amended and Restated Note Purchase Agreement dated as of April 1, 2006, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "Program Lender"). This Supplement is dated as of September 20, 2007. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank of America Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to a Purchaser Trust. The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, together with any additional information relating to the Transferred Bank of America Loans heretofore provided by TERI (as origination agent) to the Servicer or FMC in connection with the subject Securitization Transaction. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2: Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 2 attached hereto.

Article 3: Representations and Warranties.

3.01.   By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Purchaser Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02.   By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

[F0013443.1]

(a)  The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

(b)  The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)  The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)  This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)  The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)  There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties:  (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

<u>Article 4:  Cross Receipt</u>.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price.  The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

{F0013443.1 }

Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank of America Loans described in Schedule 1, other than any right to obtain servicing after the date hereof.  It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred Bank of America Loans, and the Program Lender hereby releases any security interest it may have in such collateral.  The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

{F0013443.1 }

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
    John A. Foxgrover
    Senior Vice President


BANK OF AMERICA, N.A.


By: _____
    Name:
    Title:


THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member


By: _____
    John A. Foxgrover
    Vice President

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By:_____
    John A. Foxgrover
    Senior Vice President


BANK OF AMERICA, N.A.

By:_____
    Name:  ANDREW IRWIN
    Title:  SENIOR VICE PRESIDENT


THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member


By:_____
    John A. Foxgrover
    Vice President

{F0015443.1 }

-4-

**National Collegiate Student Loan Trust 2007-4**
Roster:     BANK OF AMERICA                    Final Reconciliation Settlement Figures

| Lender | Lender Code | Marketer | Loan Product | BSSN |
|---|---|---|---|---|
| BANK OF AMERICA | 900008QC | Bank of America | DTC - Undergraduate | ████4440 |

| GUARREF | Disb. Date | Tier | Repay Type | Margin |
|---|---|---|---|---|
| 5401939 | 7/25/2007 | 12 | DP | 7.25% |

| Fee to Borrower | TERI Admin Fee | Marketing Fee | Total Gross Disbursed | Total Net Disbursed |
|---|---|---|---|---|
| 10.50% | 2.75% | 3.00% | 5027.93 | 4499.9974 |

| Total Net Principal | Total Capitalized Interest | Total Outstanding Gross Principal | Total Outstanding Unpaid Interest | Administrative Fee Reimbursement on 0% Fee Loans |
|---|---|---|---|---|
| 4499.9974 | 0 | 5027.93 | 98.69 | 0 |

| Origination Fee Reimbursement Due Bank | Total Marketing Fees | Marketing Fees Due FMC | Marketing Fees Due Bank | Total Amount Due Bank |
|---|---|---|---|---|
| 100 | 134.9999 | 0 | 134.9999 | 5361.6199 |

# EXHIBIT 4

EX-99.4 9 d719472.htm DEPOSIT AND SALE AGREEMENT

EXHIBIT 99.4

## DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of September 20, 2007, between The National Collegiate Funding LLC, as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2007-3, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

### ARTICLE I
### TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

### ARTICLE II
### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of September 1, 2007 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

### ARTICLE III
### SALE AND PURCHASE

Section 3.01.    Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.    Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.    Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Article 2 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.    Assistance by Seller. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

### ARTICLE IV
### REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.    General. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)     The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)     The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.     Loan Representations. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.     Covenants. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Controlling Party in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee and Wilmington Trust Company (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION

OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
### LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
### SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Controlling Party pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
### COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the

Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2007-3
> c/o Wilmington Trust Company, as Owner Trustee
> Rodney Square North
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto with the consent of the Note Insurer, but without the consent of the Noteholders, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of such Noteholders; providedthat such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the percentage interest in the Certificates and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Note Insurer and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

### ARTICLE XII
### ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

### ARTICLE XIII
### THIRD PARTY BENEFICIARY

The Noteholders and the Note Insurer are third party beneficiaries hereof.

### ARTICLE XIV
### GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

### ARTICLE XV
### LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By: GATE Holdings, Inc., Member

By: /s/ John A. Foxgrover

Name:     John A. Foxgrover

Title:      Vice President

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, as Purchaser

By:  Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By: /s/ Patricia A. Evans

Name:     Patricia A. Evans

Title:      Vice President

## SCHEDULE A

### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Private Loan Program, TERI (School Channel) Loan Program and TERI ISLP Loan Program.

- RBS Citizens, N.A., successor by merger to Charter One Bank, N.A., dated September 20, 2007, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Citibank Education Assistance Loan Program, College Loan Corporation Loan Program, EdFinancial Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, Astrive Education (f/k/a START) Loan Program, AstriveAlliance Education (f/k/a START) Loan Program, Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program and ThinkFinancial Alternative Loan Program.

- RBS Citizens, N.A., successor by merger to Citizens Bank of Rhode Island, dated September 20, 2007, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, Navy Federal Alternative Loan Program, FinanSure Alternative Loan Program, Xanthus Alternative Loan Program and Penn State Undergraduate Loan Program.

- Comerica Bank, dated September 20, 2007, for loans that were originated under Comerica Bank's Private Loan Program.

- First National Bank Northeast, dated September 20, 2007, for loans that were originated under First National Bank Northeast's Nelnet Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated September 20, 2007, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated September 20, 2007, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated September 20, 2007, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.) dated September 20, 2007, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated September 20, 2007, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated September 20, 2007, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Bank Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated September 20, 2007, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated September 20, 2007, for loans that were originated under Sovereign Bank's Alternative Student Loan Program.

- SunTrust Bank, dated September 20, 2007, for loans that were originated under the SunTrust Loan Program.

- Union Federal Savings Bank, dated September 20, 2007, for loans that were originated under the UFSB Astrive Loan Program.

- U.S. Bank National Association, dated September 20, 2007, for loans that were originated under the U.S Bank Alternative Loan Program.

## SCHEDULE B

### *Note Purchase Agreements*

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's EdFinancial Loan Program.

- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).

- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education (f/k/a START) Loan Programs.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the Charter One Bank Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program, and ThinkFinancial Alternative Loan Program).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- Comerica Bank, dated June 30, 2006, for loans that were originated under Comerica Bank's Private Loan Program.

- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's Nelnet Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated July 1, 2006, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A., (successor to Bank One, N.A.), dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under the National City Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under the National City Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Student Loan Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under the SunTrust Loan Program.

- Union Federal Savings Bank, dated March 26, 2007, for loans that were originated under the UFSB Astrive Loan Program.

- U.S. Bank National Association, dated May 1, 2005, for loans that were originated under the U.S Bank Alternative Loan Program.

# EXHIBIT 5

## Loan Payment History Report
### Date: 2017-10-26

| | | | |
|---|---|---|---|
| Account Number: | 4440/001-001000 | | |
| Social Security Number: | 4440 | Product: | EOU EDUCATION ONE UNDERGRAD |
| Name: | WADDELL, ALISHA | Officer Code: | 777073 |
| Birth Date: | 1989 | School: | CHRISTIAN BROTHERS UNIV |
| Address 1: | C/O COREY MCGAHA | Program Year: | 2007-08 |
| Address 2: | 5507 RANCH DR #202 | | |
| City: | LITTLE ROCK | Variable Rate Code: | F3 MONTHLY LIBOR |
| State: | AR | Interest Rate: | 8.48% |
| Zip Code: | 72223 | | |
| Cosigner Name: | WADDELL, JAMES | | |
| Social Security Number: | 1764 | | |
| Address 1: | PO BOX 524 | | |
| Address 2: | | | |
| City: | LINCOLN | | |
| State: | AR | | |
| Zip Code: | 72744-0524 | | |
| | | Last Payment Date: | 2016-09-21 |
| | | Last Payment Amount: | $215.00 |
| Contract Date: | 2007-07-18 | Last Interest Date: | 2017-10-26 |
| Vendor Placement Date: | 2015-08-20 | Accrued Interest: | $5,874.05 |
| Charge Off Date: | 2011-02-01 | Recovered Interest: | $3,058.17 |
| Charge Off Amount: | $11,777.07 | Net Interest: | $2,815.88 |
| Recovered Principal: | $282.03 | Associated Costs: | $0.00 |
| Current Principal: | $11,495.04 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2007-07-18 | Net Costs: | $0.00 |
| Disbursement Amount: | $9,497.21 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2011-02-28 | 00:01 | 82 | $11,777.07 @ 7.510 / 02/01/2011 - 02/28/2011 | $65.43 |
| System | 2011-03-01 | 00:01 | 82 | $11,777.07 @ 7.510 / 02/28/2011 - 03/01/2011 | $2.42 |
| System | 2011-03-31 | 00:01 | 82 | $11,777.07 @ 7.510 / 03/01/2011 - 03/31/2011 | $72.70 |
| System | 2011-04-01 | 00:01 | 82 | $11,777.07 @ 7.510 / 03/31/2011 - 04/01/2011 | $2.42 |
| System | 2011-04-08 | 00:00 | 12 | Interest Office Payment | $142.97 |
| System | 2011-04-08 | 00:00 | 16 | Principal Office Payment | $53.43 |
| System | 2011-04-29 | 00:00 | 16 | Principal Office Payment | $98.20 |
| System | 2011-04-30 | 00:01 | 82 | $11,625.44 @ 7.510 / 04/01/2011 - 04/30/2011 | $69.37 |
| System | 2011-05-02 | 00:01 | 82 | $11,625.44 @ 7.490 / 04/30/2011 - 05/02/2011 | $4.77 |

| System | 2011-05-31 | 00:00 | 12 | Interest Office Payment | $98.20 |
|--------|------------|-------|----|-------------------------|--------|
| System | 2011-05-31 | 00:01 | 82 | $11,625.44 @ 7.490 / 05/02/2011 - 05/31/2011 | $69.18 |
| System | 2011-06-01 | 00:01 | 82 | $11,625.44 @ 7.490 / 05/31/2011 - 06/01/2011 | $2.39 |
| System | 2011-06-30 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-06-30 | 00:01 | 82 | $11,625.44 @ 7.460 / 06/01/2011 - 06/30/2011 | $68.91 |
| System | 2011-07-01 | 00:01 | 82 | $11,625.44 @ 7.460 / 06/30/2011 - 07/01/2011 | $2.38 |
| System | 2011-07-31 | 00:01 | 82 | $11,625.44 @ 7.440 / 07/01/2011 - 07/31/2011 | $71.09 |
| System | 2011-08-01 | 00:00 | 12 | Interest Office Payment | $94.06 |
| System | 2011-08-01 | 00:00 | 16 | Principal Office Payment | $4.14 |
| System | 2011-08-01 | 00:01 | 82 | $11,625.44 @ 7.440 / 07/31/2011 - 08/01/2011 | $2.37 |
| System | 2011-08-30 | 00:00 | 16 | Principal Office Payment | $98.20 |
| System | 2011-08-31 | 00:01 | 82 | $11,523.10 @ 7.440 / 08/01/2011 - 08/31/2011 | $70.46 |
| System | 2011-09-01 | 00:01 | 82 | $11,523.10 @ 7.440 / 08/31/2011 - 09/01/2011 | $2.36 |
| System | 2011-09-30 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-09-30 | 00:01 | 82 | $11,523.10 @ 7.440 / 09/01/2011 - 09/30/2011 | $68.12 |
| System | 2011-10-03 | 00:01 | 82 | $11,523.10 @ 7.440 / 09/30/2011 - 10/03/2011 | $7.05 |
| System | 2011-10-31 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-10-31 | 00:01 | 82 | $11,523.10 @ 7.470 / 10/03/2011 - 10/31/2011 | $66.03 |
| System | 2011-11-01 | 00:01 | 82 | $11,523.10 @ 7.470 / 10/31/2011 - 11/01/2011 | $2.36 |
| System | 2011-11-30 | 00:00 | 12 | Interest Office Payment | $88.54 |
| System | 2011-11-30 | 00:00 | 16 | Principal Office Payment | $9.66 |
| System | 2011-11-30 | 00:01 | 82 | $11,523.10 @ 7.490 / 11/01/2011 - 11/30/2011 | $68.57 |
| System | 2011-12-01 | 00:01 | 82 | $11,513.44 @ 7.490 / 11/30/2011 - 12/01/2011 | $2.36 |
| System | 2011-12-29 | 00:00 | 12 | Interest Office Payment | $2.36 |
| System | 2011-12-29 | 00:00 | 16 | Principal Office Payment | $95.84 |
| System | 2011-12-31 | 00:01 | 82 | $11,417.60 @ 7.500 / 12/01/2011 - 12/31/2011 | $70.38 |
| System | 2012-01-03 | 00:01 | 82 | $11,417.60 @ 7.520 / 12/31/2011 - 01/03/2012 | $7.04 |
| System | 2012-01-30 | 00:00 | 12 | Interest Office Payment | $77.44 |
| System | 2012-01-30 | 00:00 | 16 | Principal Office Payment | $20.78 |
| System | 2012-01-31 | 00:01 | 82 | $11,396.84 @ 7.520 / 01/03/2012 - 01/31/2012 | $65.57 |
| System | 2012-02-01 | 00:01 | 82 | $11,396.84 @ 7.520 / 01/31/2012 - 02/01/2012 | $2.34 |
| System | 2012-02-06 | 00:00 | 13 | NSF Principal Office Payment | $98.20 |
| System | 2012-02-29 | 00:01 | 82 | $11,495.04 @ 7.550 / 02/01/2012 - 02/29/2012 | $66.39 |
| System | 2012-03-01 | 00:01 | 82 | $11,495.04 @ 7.510 / 02/29/2012 - 03/01/2012 | $2.36 |
| System | 2012-03-31 | 00:01 | 82 | $11,495.04 @ 7.510 / 03/01/2012 - 03/31/2012 | $70.76 |
| System | 2012-04-02 | 00:01 | 82 | $11,495.04 @ 7.510 / 03/31/2012 - 04/02/2012 | $4.72 |
| System | 2012-04-30 | 00:01 | 82 | $11,495.04 @ 7.490 / 04/02/2012 - 04/30/2012 | $65.87 |
| System | 2012-05-02 | 00:01 | 82 | $11,495.04 @ 7.490 / 04/30/2012 - 05/02/2012 | $4.70 |
| System | 2012-05-31 | 00:01 | 82 | $11,495.04 @ 7.490 / 05/02/2012 - 05/31/2012 | $68.22 |
| System | 2012-06-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 05/31/2012 - 06/01/2012 | $2.35 |
| System | 2012-06-30 | 00:01 | 82 | $11,495.04 @ 7.490 / 06/01/2012 - 06/30/2012 | $68.22 |
| System | 2012-07-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 06/30/2012 - 07/01/2012 | $2.35 |
| System | 2012-07-02 | 00:01 | 82 | $11,495.04 @ 7.490 / 07/01/2012 - 07/02/2012 | $2.35 |
| System | 2012-07-31 | 00:01 | 82 | $11,495.04 @ 7.490 / 07/02/2012 - 07/31/2012 | $68.22 |
| System | 2012-08-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 07/31/2012 - 08/01/2012 | $2.35 |
| System | 2012-08-31 | 00:01 | 82 | $11,495.04 @ 7.500 / 08/01/2012 - 08/31/2012 | $70.67 |
| System | 2012-09-04 | 00:01 | 82 | $11,495.04 @ 7.500 / 08/31/2012 - 09/04/2012 | $9.42 |
| System | 2012-09-30 | 00:01 | 82 | $11,495.04 @ 7.500 / 09/04/2012 - 09/30/2012 | $61.24 |

| System | 2012-10-01 | 00:01 | 82 | $11,495.04 @ 7.500 / 09/30/2012 – 10/01/2012 | $2.36 |
|--------|-----------|-------|----|---------------------------------------------|-------|
| System | 2012-10-31 | 00:01 | 82 | $11,495.04 @ 7.480 / 10/01/2012 – 10/31/2012 | $70.48 |
| System | 2012-11-06 | 00:01 | 82 | $11,495.04 @ 7.480 / 10/31/2012 – 11/06/2012 | $14.10 |
| System | 2012-11-08 | 00:00 | 47 | Check Charge/Fee Adjustment | $-194.38 |
| System | 2012-11-08 | 00:01 | 82 | $11,495.04 @ 7.460 / 11/06/2012 – 11/08/2012 | $4.69 |
| System | 2012-11-09 | 00:01 | 82 | $11,495.04 @ 7.460 / 11/08/2012 – 11/09/2012 | $2.34 |
| System | 2012-12-03 | 00:01 | 82 | $11,495.04 @ 7.460 / 11/09/2012 – 12/03/2012 | $56.23 |
| System | 2012-12-17 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/03/2012 – 12/17/2012 | $32.80 |
| System | 2012-12-21 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/17/2012 – 12/21/2012 | $9.37 |
| System | 2012-12-31 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/21/2012 – 12/31/2012 | $23.43 |
| System | 2013-01-11 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/31/2012 – 01/11/2013 | $25.84 |
| System | 2013-01-14 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/11/2013 – 01/14/2013 | $7.05 |
| System | 2013-01-18 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/14/2013 – 01/18/2013 | $9.40 |
| System | 2013-01-21 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/18/2013 – 01/21/2013 | $7.05 |
| System | 2013-01-22 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/21/2013 – 01/22/2013 | $2.35 |
| System | 2013-01-24 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/22/2013 – 01/24/2013 | $4.70 |
| System | 2013-01-25 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/24/2013 – 01/25/2013 | $2.35 |
| System | 2013-01-30 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/25/2013 – 01/30/2013 | $11.75 |
| System | 2013-01-31 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/30/2013 – 01/31/2013 | $2.35 |
| System | 2013-02-01 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/31/2013 – 02/01/2013 | $2.35 |
| System | 2013-02-04 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/01/2013 – 02/04/2013 | $7.05 |
| System | 2013-02-06 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/04/2013 – 02/06/2013 | $4.70 |
| System | 2013-02-07 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/06/2013 – 02/07/2013 | $2.35 |
| System | 2013-02-08 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/07/2013 – 02/08/2013 | $2.35 |
| System | 2013-02-11 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/08/2013 – 02/11/2013 | $7.05 |
| System | 2013-02-12 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/11/2013 – 02/12/2013 | $2.35 |
| System | 2013-02-14 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/12/2013 – 02/14/2013 | $4.70 |
| System | 2013-02-15 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/14/2013 – 02/15/2013 | $2.35 |
| System | 2013-02-18 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/15/2013 – 02/18/2013 | $7.05 |
| System | 2013-02-28 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/18/2013 – 02/28/2013 | $23.49 |
| System | 2013-03-01 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/28/2013 – 03/01/2013 | $2.35 |
| System | 2013-03-04 | 00:01 | 82 | $11,495.04 @ 7.450 / 03/01/2013 – 03/04/2013 | $7.04 |
| System | 2013-03-31 | 00:01 | 82 | $11,495.04 @ 7.450 / 03/04/2013 – 03/31/2013 | $63.35 |
| System | 2013-04-30 | 00:01 | 82 | $11,495.04 @ 7.450 / 03/31/2013 – 04/30/2013 | $70.39 |
| System | 2013-05-07 | 00:01 | 82 | $11,495.04 @ 7.450 / 04/30/2013 – 05/07/2013 | $16.42 |
| System | 2013-05-31 | 00:01 | 82 | $11,495.04 @ 7.450 / 05/07/2013 – 05/31/2013 | $56.31 |
| System | 2013-06-30 | 00:01 | 82 | $11,495.04 @ 7.450 / 05/31/2013 – 06/30/2013 | $70.39 |
| System | 2013-07-04 | 00:01 | 82 | $11,495.04 @ 7.450 / 06/30/2013 – 07/04/2013 | $9.38 |
| System | 2013-07-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 07/04/2013 – 07/31/2013 | $63.26 |
| System | 2013-08-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 07/31/2013 – 08/31/2013 | $72.64 |
| System | 2013-09-30 | 00:01 | 82 | $11,495.04 @ 7.440 / 08/31/2013 – 09/30/2013 | $70.29 |
| System | 2013-10-09 | 00:01 | 82 | $11,495.04 @ 7.440 / 09/30/2013 – 10/09/2013 | $21.09 |
| System | 2013-10-31 | 00:01 | 82 | $11,495.04 @ 7.430 / 10/09/2013 – 10/31/2013 | $51.48 |
| System | 2013-11-30 | 00:01 | 82 | $11,495.04 @ 7.430 / 10/31/2013 – 11/30/2013 | $70.20 |
| System | 2013-12-04 | 00:01 | 82 | $11,495.04 @ 7.430 / 11/30/2013 – 12/04/2013 | $9.36 |
| System | 2013-12-31 | 00:01 | 82 | $11,495.04 @ 7.420 / 12/04/2013 – 12/31/2013 | $63.09 |
| System | 2014-01-31 | 00:01 | 82 | $11,495.04 @ 7.420 / 12/31/2013 – 01/31/2014 | $72.44 |
| System | 2014-02-28 | 00:01 | 82 | $11,495.04 @ 7.420 / 01/31/2014 – 02/28/2014 | $65.43 |

| System | 2014-04-03 | 00:01 | 82 | $11,495.04 @ 7.420 / 02/28/2014 - 04/03/2014 | $79.45 |
| System | 2014-05-07 | 00:01 | 82 | $11,495.04 @ 7.410 / 04/03/2014 - 05/07/2014 | $79.34 |
| System | 2014-05-21 | 00:01 | 82 | $11,495.04 @ 7.400 / 05/07/2014 - 05/21/2014 | $32.63 |
| System | 2014-07-31 | 00:01 | 82 | $11,495.04 @ 7.400 / 05/21/2014 - 07/31/2014 | $165.47 |
| System | 2014-08-31 | 00:01 | 82 | $11,495.04 @ 7.400 / 07/31/2014 - 08/31/2014 | $72.25 |
| System | 2014-09-02 | 00:01 | 82 | $11,495.04 @ 7.400 / 08/31/2014 - 09/02/2014 | $4.66 |
| System | 2014-09-30 | 00:01 | 82 | $11,495.04 @ 7.410 / 09/02/2014 - 09/30/2014 | $65.34 |
| System | 2014-10-01 | 00:01 | 82 | $11,495.04 @ 7.410 / 09/30/2014 - 10/01/2014 | $2.33 |
| System | 2014-10-31 | 00:01 | 82 | $11,495.04 @ 7.410 / 10/01/2014 - 10/31/2014 | $70.01 |
| System | 2014-11-30 | 00:01 | 82 | $11,495.04 @ 7.410 / 10/31/2014 - 11/30/2014 | $70.01 |
| System | 2014-12-31 | 00:01 | 82 | $11,495.04 @ 7.410 / 11/30/2014 - 12/31/2014 | $72.34 |
| System | 2015-01-05 | 00:01 | 82 | $11,495.04 @ 7.410 / 12/31/2014 - 01/05/2015 | $11.66 |
| System | 2015-01-31 | 00:01 | 82 | $11,495.04 @ 7.400 / 01/05/2015 - 01/31/2015 | $60.59 |
| System | 2015-02-03 | 00:01 | 82 | $11,495.04 @ 7.400 / 01/31/2015 - 02/03/2015 | $6.99 |
| System | 2015-02-28 | 00:01 | 82 | $11,495.04 @ 7.420 / 02/03/2015 - 02/28/2015 | $58.42 |
| System | 2015-03-31 | 00:01 | 82 | $11,495.04 @ 7.420 / 02/28/2015 - 03/31/2015 | $72.44 |
| System | 2015-04-30 | 00:01 | 82 | $11,495.04 @ 7.420 / 03/31/2015 - 04/30/2015 | $70.10 |
| System | 2015-05-01 | 00:01 | 82 | $11,495.04 @ 7.420 / 04/30/2015 - 05/01/2015 | $2.34 |
| System | 2015-05-31 | 00:01 | 82 | $11,495.04 @ 7.430 / 05/01/2015 - 05/31/2015 | $70.20 |
| System | 2015-06-30 | 00:01 | 82 | $11,495.04 @ 7.430 / 05/31/2015 - 06/30/2015 | $70.20 |
| System | 2015-07-31 | 00:01 | 82 | $11,495.04 @ 7.430 / 06/30/2015 - 07/31/2015 | $72.54 |
| System | 2015-08-03 | 00:01 | 82 | $11,495.04 @ 7.430 / 07/31/2015 - 08/03/2015 | $7.02 |
| System | 2015-08-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 08/03/2015 - 08/31/2015 | $65.61 |
| System | 2015-09-30 | 00:01 | 82 | $11,495.04 @ 7.440 / 08/31/2015 - 09/30/2015 | $70.29 |
| System | 2015-10-01 | 00:01 | 82 | $11,495.04 @ 7.440 / 09/30/2015 - 10/01/2015 | $2.34 |
| System | 2015-11-04 | 00:01 | 82 | $11,495.04 @ 7.450 / 10/01/2015 - 11/04/2015 | $79.77 |
| System | 2015-11-05 | 00:01 | 82 | $11,495.04 @ 7.450 / 11/04/2015 - 11/05/2015 | $2.35 |
| System | 2015-12-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 11/05/2015 - 12/31/2015 | $131.21 |
| System | 2016-01-01 | 00:01 | 82 | $11,495.04 @ 7.440 / 12/31/2015 - 01/01/2016 | $2.34 |
| System | 2016-01-19 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-01-19 | 00:01 | 82 | $11,495.04 @ 7.490 / 01/01/2016 - 01/19/2016 | $42.34 |
| System | 2016-01-31 | 00:01 | 82 | $11,495.04 @ 7.490 / 01/19/2016 - 01/31/2016 | $28.23 |
| System | 2016-02-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 01/31/2016 - 02/01/2016 | $2.35 |
| System | 2016-02-12 | 00:00 | 12 | Interest Office Payment | $-305.00 |
| System | 2016-02-12 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-02-12 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/01/2016 - 02/12/2016 | $26.53 |
| System | 2016-02-16 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-02-16 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/12/2016 - 02/16/2016 | $9.65 |
| System | 2016-02-29 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/16/2016 - 02/29/2016 | $31.36 |
| System | 2016-03-16 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-03-16 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/29/2016 - 03/16/2016 | $38.59 |
| System | 2016-03-31 | 00:01 | 82 | $11,495.04 @ 7.680 / 03/16/2016 - 03/31/2016 | $36.18 |
| System | 2016-04-01 | 00:01 | 82 | $11,495.04 @ 7.680 / 03/31/2016 - 04/01/2016 | $2.41 |
| System | 2016-04-18 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-04-18 | 00:01 | 82 | $11,495.04 @ 7.677 / 04/01/2016 - 04/18/2016 | $40.99 |
| System | 2016-04-30 | 00:01 | 82 | $11,495.04 @ 7.677 / 04/18/2016 - 04/30/2016 | $28.93 |
| System | 2016-05-02 | 00:01 | 82 | $11,495.04 @ 7.677 / 04/30/2016 - 05/02/2016 | $4.82 |
| System | 2016-05-17 | 00:00 | 12 | Interest Office Payment | $305.00 |

| System | 2016-05-17 | 00:01 | 82 | $11,495.04 @ 7.690 / 05/02/2016 - 05/17/2016 | $36.23 |
|--------|-----------|-------|-----|-----------------------------------------------|--------|
| System | 2016-05-31 | 00:01 | 82 | $11,495.04 @ 7.690 / 05/17/2016 - 05/31/2016 | $33.81 |
| System | 2016-06-16 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-06-16 | 00:01 | 82 | $11,495.04 @ 7.690 / 05/31/2016 - 06/16/2016 | $38.64 |
| System | 2016-06-30 | 00:01 | 82 | $11,495.04 @ 7.690 / 06/16/2016 - 06/30/2016 | $33.81 |
| System | 2016-07-01 | 00:01 | 82 | $11,495.04 @ 7.690 / 06/30/2016 - 07/01/2016 | $2.42 |
| System | 2016-07-18 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-07-18 | 00:01 | 82 | $11,495.04 @ 7.720 / 07/01/2016 - 07/18/2016 | $41.22 |
| System | 2016-07-25 | 00:00 | 12 | Interest Office Payment | $-305.00 |
| System | 2016-07-25 | 00:01 | 82 | $11,495.04 @ 7.720 / 07/18/2016 - 07/25/2016 | $16.97 |
| System | 2016-08-01 | 00:01 | 82 | $11,495.04 @ 7.720 / 07/25/2016 - 08/01/2016 | $16.97 |
| System | 2016-08-19 | 00:00 | 12 | Interest Office Payment | $215.00 |
| System | 2016-08-19 | 00:01 | 82 | $11,495.04 @ 7.720 / 08/01/2016 - 08/19/2016 | $43.64 |
| System | 2016-08-31 | 00:01 | 82 | $11,495.04 @ 7.720 / 08/19/2016 - 08/31/2016 | $29.10 |
| System | 2016-09-01 | 00:01 | 82 | $11,495.04 @ 7.720 / 08/31/2016 - 09/01/2016 | $2.42 |
| System | 2016-09-21 | 00:00 | 12 | Interest Office Payment | $215.00 |
| System | 2016-09-21 | 00:01 | 82 | $11,495.04 @ 7.750 / 09/01/2016 - 09/21/2016 | $48.68 |
| System | 2016-09-30 | 00:01 | 82 | $11,495.04 @ 7.750 / 09/21/2016 - 09/30/2016 | $21.91 |
| System | 2016-10-01 | 00:01 | 82 | $11,495.04 @ 7.750 / 09/30/2016 - 10/01/2016 | $2.43 |
| System | 2016-10-08 | 00:00 | 44 | Interest Adjustment | $-32.86 |
| System | 2016-10-08 | 00:01 | 82 | $11,495.04 @ 7.770 / 10/01/2016 - 10/08/2016 | $17.08 |
| System | 2016-10-31 | 00:01 | 82 | $11,495.04 @ 7.770 / 10/08/2016 - 10/31/2016 | $56.13 |
| System | 2016-11-01 | 00:01 | 82 | $11,495.04 @ 7.770 / 10/31/2016 - 11/01/2016 | $2.44 |
| System | 2016-11-30 | 00:01 | 82 | $11,495.04 @ 7.780 / 11/01/2016 - 11/30/2016 | $70.86 |
| System | 2016-12-31 | 00:01 | 82 | $11,495.04 @ 7.780 / 11/30/2016 - 12/31/2016 | $75.75 |
| System | 2017-01-01 | 00:01 | 82 | $11,495.04 @ 7.780 / 12/31/2016 - 01/01/2017 | $2.45 |
| System | 2017-01-31 | 00:01 | 82 | $11,495.04 @ 7.870 / 01/01/2017 - 01/31/2017 | $74.36 |
| System | 2017-02-01 | 00:01 | 82 | $11,495.04 @ 7.870 / 01/31/2017 - 02/01/2017 | $2.48 |
| System | 2017-02-28 | 00:01 | 82 | $11,495.04 @ 8.020 / 02/01/2017 - 02/28/2017 | $68.20 |
| System | 2017-03-01 | 00:01 | 82 | $11,495.04 @ 8.020 / 02/28/2017 - 03/01/2017 | $2.53 |
| System | 2017-03-31 | 00:01 | 82 | $11,495.04 @ 8.030 / 03/01/2017 - 03/31/2017 | $75.87 |
| System | 2017-04-01 | 00:01 | 82 | $11,495.04 @ 8.030 / 03/31/2017 - 04/01/2017 | $2.53 |
| System | 2017-04-30 | 00:01 | 82 | $11,495.04 @ 8.040 / 04/01/2017 - 04/30/2017 | $73.43 |
| System | 2017-05-01 | 00:01 | 82 | $11,495.04 @ 8.040 / 04/30/2017 - 05/01/2017 | $2.53 |
| System | 2017-05-18 | 00:00 | 33 | FILE SUMCOM CMKR | $167.50 |
| System | 2017-05-18 | 00:01 | 82 | $11,495.04 @ 8.230 / 05/01/2017 - 05/18/2017 | $44.08 |
| System | 2017-05-31 | 00:01 | 82 | $11,495.04 @ 8.230 / 05/18/2017 - 05/31/2017 | $33.69 |
| System | 2017-06-01 | 00:01 | 82 | $11,495.04 @ 8.230 / 05/31/2017 - 06/01/2017 | $2.59 |
| System | 2017-06-02 | 00:00 | 33 | SHERRIFF FEES | $60.00 |
| System | 2017-06-02 | 00:01 | 82 | $11,495.04 @ 8.250 / 06/01/2017 - 06/02/2017 | $2.60 |
| System | 2017-06-30 | 00:01 | 82 | $11,495.04 @ 8.250 / 06/02/2017 - 06/30/2017 | $72.75 |
| System | 2017-07-01 | 00:01 | 82 | $11,495.04 @ 8.250 / 06/30/2017 - 07/01/2017 | $2.60 |
| System | 2017-07-31 | 00:01 | 82 | $11,495.04 @ 8.310 / 07/01/2017 - 07/31/2017 | $78.51 |
| System | 2017-08-01 | 00:01 | 82 | $11,495.04 @ 8.310 / 07/31/2017 - 08/01/2017 | $2.62 |
| System | 2017-08-31 | 00:01 | 82 | $11,495.04 @ 8.470 / 08/01/2017 - 08/31/2017 | $80.02 |
| System | 2017-09-01 | 00:01 | 82 | $11,495.04 @ 8.470 / 08/31/2017 - 09/01/2017 | $2.67 |
| System | 2017-09-30 | 00:01 | 82 | $11,495.04 @ 8.480 / 09/01/2017 - 09/30/2017 | $77.45 |
| System | 2017-10-26 | 00:01 | 82 | $11,495.04 @ 8.480 / 09/30/2017 - 10/26/2017 | $69.44 |

# EXHIBIT 6

# EXHIBIT 1

NATIONAL COLLEGIATE STUDENT )
LOAN TRUST 2007-4, A Delaware )
Statutory Trust )

Plaintiff )       Docket #
)
)
v. )
)
)
ALISHA WADDELL )
)
JAMES WADDELL )
)
Defendant(s) )
)

## AFFIDAVIT AND VERIFICATION OF ACCOUNT

STATE OF GEORGIA )
)
COUNTY OF  GWINNETT )

BEFORE ME, the undersigned authority, personally appeared Affiant _____**Brian Jackson**_____ ,

who being first duly sworn, deposes and states:

1.      I am employed by Transworld Systems Inc. (hereinafter TSI), the Subservicer for

Plaintiff pertaining to the educational loan forming the subject matter of this action.

2.      TSI has been contracted to perform the duties of the Subservicer for Plaintiff by

U.S. Bank, National Association, the Special Servicer of Plaintiff.  TSI, as the Subservicer of the

Plaintiff, is the designated custodian of records for the Defendants' educational loan.

Additionally, TSI maintains the dedicated system of record for electronic transactions pertaining

to the Defendants' educational loan, including, but not necessarily limited to, payments, credits,

interest accrual and any other transactions that could impact the Defendants' educational loan.

This is an attempt to collect a debt and
any information obtained will be used for
that purpose. This communication
is from a debt collector.

# EXHIBIT 1

Attached hereto as Exhibit "A" is a true and correct copy of confirmation of TSI's capacity as Subservicer.

3.     I am over the age of 18 and competent to testify to the matters stated herein.  As an employee of TSI, I am duly authorized by Plaintiff and U.S. Bank, National Association to make the representations contained in this Affidavit.

4.     I have access and training on the system of record utilized by TSI to enter and maintain loan account records and documentation concerning the Defendants' educational loan for the Plaintiff.

5.     I am familiar with the process by which TSI receives prior account records, including origination records from the time the loan was requested and/or disbursed to the Defendants and/or the student's school on their behalf.

6.     As custodian of records it is TSI's regularly-conducted business practice to incorporate prior loan records and/or documentation into TSI's business records.

7.     I am further competent and authorized to testify regarding  this educational loan through personal knowledge of the business records maintained by TSI as custodian of records, including electronic data provided to TSI related to the Defendants' educational loan, and the business records attached to this Affidavit.

8.     This lawsuit concerns an unpaid loan owed by Defendants ALISHA WADDELL and JAMES WADDELL to Plaintiff.  Specifically, Defendants' entered into an educational loan agreement at Defendants' special instance and request.  A loan was extended for Defendants to use pursuant to the terms of the loan agreements.  Defendants have failed, refused, and/or neglected to pay the balance pursuant to the agreed terms.

# EXHIBIT 1

9.      Educational loan records are created, compiled and recorded as part of regularly conducted business activity at or near the time of the event and from information transmitted from a person with personal knowledge of said event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described within the business record.  Such records are created, kept, maintained, and relied upon in the course of ordinary and regularly conducted business activity.

10.     I have reviewed the educational loan records described in this affidavit regarding account number xxxxx4440/002-001000.  No payment has been made since 08/19/2016.  After all payments, credits and offsets have been applied, Defendants ALISHA WADDELL and JAMES WADDELL owe the principal sum of $6,063.22, together with accrued interest in the amount of $1,515.42, totaling the sum of $7,578.64 as of 8/24/2016.  Attached hereto and incorporated as Exhibit "B" is a true copy of the underlying Credit Agreement/Promissory Note and Note Disclosure Statement.  In the event the Defendant(s) faxed the executed Credit Agreement/Promissory Note, per its terms they agreed their facsimile/electronic signature is deemed to be an original.

11.     The Defendants opened the educational loan described above and funds were first disbursed on 7/25/2007.  *See* Exhibit "B".  The Defendants' educational loan was then transferred, sold and assigned by the Lender directly to Plaintiff, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4, or to an intermediary, National Collegiate Funding, LLC, who then immediately transferred, sold and assigned the Defendants' educational loan to Plaintiff, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4.  The Defendants' educational loan was in good standing and not in default on the date the Plaintiff acquired the

EXHIBIT 1

Defendants' educational loan.  Attached hereto and incorporated as Exhibit "C" is a true and correct copy of the assignment Agreement(s) described herein.

12.    Based on custodial records, the Defendants are not minors or incompetent.  A reasonable inquiry has been made to determine if the Defendants are in the military service of the United States of America, and to the best of my knowledge, Defendants are not in such military service and are therefore not entitled to the rights and privileges provided under the Soldiers and Sailors Civil Relief Act of 1940, as amended.

13.    I declare under the penalty of perjury under the laws of the forum state that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

AFFIANT
Print Name:     **Brian Jackson**
Title:          **Legal Case Manager**

SWORN AND SUBSCRIBED to before me this ___24___ day of __August__, 20_16_

NOTARY PUBLIC
My Commission Expires on

# EXHIBIT 7

FILED FOR RECORD
5
2017 MAY 15  PM 3: 24

WASHINGTON AR
CIRCUIT CLERK
K. SYLVESTER

**IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS**
**FAYETTEVILLE DIVISION**

NATIONAL COLLEGIATE STUDENT LOAN TRUST                          **PLAINTIFF**
2007-4

VS.                                      Case No.    CV-16-2251-4

ALISHA  WADDELL and                                             **DEFENDANT(S)**
JAMES  WADDELL

---

**PLAINTIFF'S RESPONSES TO DEFENDANT ALISHA WADDELL'S**
**REQUEST FOR PRODUCTION**

---

**COMES** the Plaintiff, National Collegiate Student Loan Trust 2007-4, by and through counsel, and for its Responses to Defendant Alisha Waddell's Request for Production, states as follows:

1. Produce all materials relating to the damages you are claiming in this civil action.

     ANSWER:  In addition to the pertinent Exhibits attached to its Complaint, Plaintiff directs Defendant to the Deferment/Forbearance Loan Detail, Disbursement Check, Loan Financial Activity, and Repayment Schedule, copies of which are attached hereto.

2. Produce all materials supporting your calculation of your alleged damages in this civil action.

     ANSWER: *See* Plaintiff's Response to Request for Production No. 1.

3. Produce all materials reviewed to create your alleged damages in this action.

     ANSWER: *See* Plaintiff's Response to Request for Production No. 1.

4. Produce all materials showing any demand on Alisha Waddell for the amounts alleged in the Complaint.

     ANSWER:  Plaintiff objects to this request to the extent it seeks documentation more readily accessible to Defendant from Defendant's own files or from documents in Defendant's possession. Subject to and without waiving its objection, Plaintiff directs Defendant to the Demand Letter, a copy

File no. 15-16291

of which is attached hereto.  As to the Demand Letter, Plaintiff states that the balance reflected therein does not match the balance sought in the Complaint due to payments that were made subsequent to the date of the Demand Letter and prior to the filing of Plaintiff's Complaint.

5.  Produce all materials evidencing that Alisha Waddell was indebted to you as alleged in the Complaint.

ANSWER:  *See* Plaintiff's Response to Request for Production No. 1 for documentation evidencing that Defendant is indebted to Plaintiff as averred in its Amended Complaint.  Plaintiff further directs Defendant to the Schedule 1, a copy of which is attached hereto.

6.  Produce all materials containing any and all terms and conditions of the loan referenced in your Complaint.

ANSWER:  Plaintiff states that it has already provided Defendant with the Terms and Conditions of the loan at issue.

7.  Produce a copy of the endorsed check which disbursed the loan proceeds.

ANSWER:  Plaintiff directs Defendant to the Disbursement Check, a copy of which is attached hereto.

8.  Produce all materials showing Alisha Waddell agreed to the terms of the loan at issue.

ANSWER:  *See* Plaintiff's Response to Request for Production No. 1.

9.  Produce all materials relating to the alleged default by Alisha Waddell on the loan at issue.

ANSWER:  In addition to the pertinent Exhibits attached to its Complaint, Plaintiff directs Defendant to the Loan Financial Activity, the Repayment Schedule, the Schedule 1, and the Deferment/Forbearance Loan Detail, copies of which are attached hereto.

10. Produce the original written contract showing the terms and conditions for the student loan for which you are suing Alisha Waddell.

ANSWER:  Plaintiff objects to this request to the extent it apparently presumes that an original written contract is required to evidence the terms and conditions with respect to the loan at

File no. 15-16291

issue. Subject to and without waiving its objection, Plaintiff directs Defendant to the Non-Negotiable Credit Agreement, a copy of which is attached to Plaintiff's Complaint as part of collective Exhibit "1".

11. Produce all materials relating to the loan application.

ANSWER: Plaintiff objects to this request to the extent it is overly vague despite the provided definition of the term "relating". Subject to and without waiving its objection, Plaintiff directs Defendant to the pertinent Exhibits attached to its Complaint and any documentation provided in response to these Requests for Production.

12. Produce all materials relating to the loan origination.

ANSWER: Plaintiff objects to this request to the extent it is overly vague despite the provided definition of the term "relating". Subject to and without waiving its objection, Plaintiff directs Defendant to the pertinent Exhibits attached to its Complaint and all documentation provided in response to these Requests for Production.

13. Produce all materials you received from Bank of America relating to Alisha Waddell.

ANSWER: In addition to the pertinent Exhibits attached to its Complaint, Defendant directs Defendant to the Schedule 1 and the copy of the Disbursement Check, copies of which are attached hereto.

14. Produce all communications between you and Alisha Waddell relating to Alisha Waddell.

ANSWER: Plaintiff objects to this request to the extent it seeks information and/or documentation more readily accessible to Defendant from her own files or information and/or documentation in Defendant's possession. Plaintiff objects to this request to the extent it is overly broad and vague, despite Defendant's definition of the term "relating". Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, in addition to the copy of the Demand Letter attached hereto,

Plaintiff states that Defendant contacted Plaintiff's counsel's firm telephonically on the following dates: 12/10/2015; 12/11/2015; and 12/18/2015.

15. Produce all materials you received from and Transworld Systems relating to Alisha Waddell.[1]

ANSWER: Plaintiff objects to this request to the extent it is overly broad and vague, despite Defendant's definition of the term "relating". Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Plaintiff states that Transworld Systems, Inc. is Plaintiff's designated custodian of records. Plaintiff directs Defendant to all Exhibits attached to its Complaint along with all documentation provided in response to these Requests for Production.

16. Produce all communications between you and Transworld Systems relating to Alisha Waddell.

ANSWER: Plaintiff objects to this request to the extent it is overly broad, vague, and confusing, due to the expansive definition of the term "you" and despite Defendant's definition of the term "relating".

17. Produce the contract between Transworld Systems and U.S. Bank, National Association, referenced in Brian Jackson's Affidavit attached as Exhibit 1 to the Complaint.

ANSWER: Plaintiff objects to this request to the extent it seeks documentation which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

18. Produce all materials regarding Brian Jackson's authorization by Plaintiff and U.S. Bank to make the representations in Brian Jackson's Affidavit.

---

[1] Defendant's Request for Production No. 15 appears to either be missing an entity name or inadvertently including the conjunction "and". As such, Plaintiff's Response shall address the request as to Transworld Systems' materials, to the extent there is no objection.

ANSWER:  Plaintiff objects to this request to the extent it seeks documentation which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving its objection, Plaintiff directs Defendant to the Affidavit and Verification of Account, attached as Exhibit 1 to Plaintiff's Complaint.

19. Produce all loan account records and documentation concerning Alisha Waddell's educational loans referenced in Brian Jackson's Affidavit.

ANSWER:  Plaintiff directs Defendant to all Exhibits attached to its Complaint and any documentation provided in response to these Requests for Production.

20. Produce all origination records referenced in Brian Jackson's Affidavit.

ANSWER:  Plaintiff directs Defendant to all pertinent Exhibits attached to its Complaint and any pertinent documentation provided in response to these Requests for Production.

21. Produce all business records referenced in Brian Jackson's Affidavit.

ANSWER:  Plaintiff directs Defendant to all Exhibits attached to its Complaint and any documentation provided in response to these Requests for Production.

22. Produce all electronic data referenced in Brian Jackson's Affidavit.

ANSWER:  Plaintiff directs Defendant to all pertinent Exhibits attached to its Complaint and any pertinent documentation provided in response to these Requests for Production.

23. Produce the loan agreements referenced in Brian Jackson's Affidavit.

ANSWER: Plaintiff directs Defendant to all pertinent Exhibits attached to its Complaint and any pertinent documentation provided in response to these Requests for Production.

24. Produce the educational loan records referenced in Brian Jackson's Affidavit.

ANSWER:  Plaintiff directs Defendant to all pertinent Exhibits attached to its Complaint and any pertinent documentation provided in response to these Requests for Production.

25. Produce all materials related to payments referenced in Brian Jackson's Affidavit.

ANSWER:  Plaintiff directs Defendant to the Payment History attached to its Complaint as Exhibit 2 and to the Loan Financial Activity and Repayment Schedule, copies of which is attached hereto.

26. Produce all materials showing that the education loan was disbursed on 7/25/2007 as stated in Brian Jackson's Affidavit.

ANSWER:  Plaintiff objects to this request to the extent it seeks documents that are readily more accessible to Defendant from Defendant's own files or from documents in Defendant's possession.  Subject to and without waiving its objection, Plaintiff directs Defendant to the Note Disclosure Statement attached to its Complaint as part of collective Exhibit 1, and further directs Defendant to the Disbursement Check, the Loan Financial Activity, the Repayment Schedule, and the Schedule 1, copies of which are attached hereto.

27. Produce all materials relating to the transfer, sale, and assignment of the Defendants' educational loan to you.

ANSWER:  Plaintiff objects to this request to the extent it is overly broad.  Subject to and without waiving its objection, Plaintiff directs Defendant to the pertinent Exhibits attached to its Complaint in addition to the Schedule 1, a copy of which is attached hereto.

28. Produce all materials relating to the transfer, sale, and assignment of the Defendants' educational loan to National Collegiate Funding, LLC.

ANSWER:  Plaintiff objects to this request to the extent it is overly broad.  Subject to and without waiving its objection, Plaintiff directs Defendant to the pertinent Exhibits attached to its Complaint in addition to the Schedule 1, a copy of which is attached hereto.

29. Produce all materials showing that the Defendants' educational loan was in good standing and not in default on the date Plaintiff acquired the Defendants' education loan.

ANSWER:  Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the

discovery of admissible evidence.  Subject to and without waiving its objection, Plaintiff directs Defendant to the pertinent Exhibits attached to its Complaint in addition to the Loan Financial Activity, Repayment Schedule, Deferment/Forbearance Loan Detail, and the Schedule 1, copies of which are attached hereto.

30. Produce the document referenced as Schedule 1 in the Pool Supplement (DTC Only) Bank of America, N.A. attached to the Complaint.

ANSWER:  Plaintiff directs Defendant to the Schedule 1, a copy of which is attached hereto.

31. Produce the document referenced as Schedule 2 in the Pool Supplement (DTC Only) Bank of America, N.A. attached to the Complaint.

ANSWER:  Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

32. Produce the document referenced as Schedule A in the Deposit and Sale Agreement attached to the Complaint.

ANSWER:  Plaintiff states that it has already provided the requested document. *See* Schedule A, a copy of which is attached as part of collective Exhibit 1 of Plaintiff's Complaint.

33. Produce the document referenced as Schedule B in the Deposit and Sale Agreement attached to the Complaint.

ANSWER:  Plaintiff states that it has already provided the requested document. *See* Schedule B, a copy of which is attached as part of collective Exhibit 1 of Plaintiff's Complaint.

Respectfully submitted this the 10ᵗʰ day of May , 20 17 .

**This space intentionally left blank.**

File no. 15-16291

National Collegiate Student Loan Trust 2007-4

By: _____

☐ Kelly C. Dicken,   ABN # 2015096
☐ Linda Catron Noe,  ABN # 2017010
☐ Ann C. Pederson,   ABN # 2017072
Attorney for Plaintiff
Finkelstein, Kern, Steinberg, & Cunningham, P.C.
Post Office Box 1
Knoxville, Tennessee 37901
Phone:          865-525-0238
Toll Free:      888-200-6501

## CERTIFICATE OF SERVICE

Finkelstein, Kern, Steinberg & Cunningham, attorney of record for the Plaintiff in the above referenced case, does hereby certify that a true and correct copy of the above and foregoing pleading has been served upon the Defendant or Defendant's counsel via first class mail, as follows:

Corey McGaha
5507 Ranch Dr., Suite 202
Little Rock AR 72223

This _10_ day of ___May___, 20_17_.

_____

☐ Kelly C. Dicken     ABN #2015096
☐ Linda Catron Noe,  ABN # 2017010
☐ Ann C. Pederson,   ABN # 2017072
Attorney for Plaintiff

File no. 15-16291

## FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

A Professional Corporation

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KENNETH S. CHRISTIANSEN
KELLY C. DICKEN * / **** / *****
LINDA C. NOE
JESSICA COX *
ANGELA D. SIMMONS **
MICHAEL D. BEACH ***
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM

ATTORNEYS AT LAW
1810 AILOR AVENUE
KNOXVILLE, TN 37921

www.fksclaw.com

P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Alabama
**** Admitted in Arkansas
***** Admitted in Kentucky

August 26, 2015

ALISHA WADDELL
████████████████
SPRINGDALE AR ████████
ADDRESS SERVICE REQUESTED

Re:  ALISHA WADDELL
Creditor:                NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4
Creditor Account No.     XXXXX-XXXX-XXXX-1000
Current Balance Due:     $7,713.64
Our File No.:            15-16291

Dear ALISHA WADDELL:

Please be advised that the above account has been assigned to our office for collection efforts. It is our hope that an effort will be made to voluntarily resolve this outstanding obligation. As of the date of this letter, the amount owed is $7,713.64. At this time, no attorney with this firm has personally reviewed the particular circumstances of this account, and this letter is not a threat of suit. Because of interest that may vary from day to day, the amount due on the day payment is made may be greater. Hence, if the amount shown above is paid, an adjustment may be necessary after we receive the payment check, in which event we may attempt to advise before depositing the payment check for collection.

Please contact our office so that we can discuss payment of this account. For further information, write the undersigned or call 1-888-200-6501 between the hours of 8:30 a.m. and 7:00 p.m. (EST) Monday through Friday.

Sincerely,

FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

### NOTICE

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

### VALIDATION NOTICE

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that the debt or any portion thereof is disputed, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such verification or judgment. If you so request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

LDR_DMD Initial Retail      File No.: 15-16291

*National Collegiate Trust*

Date: 11/3/14

RE:

| | |
|---|---|
| National Collegiate Master Student Loan Trust-I | National Collegiate Student Loan Trust-2003-1 |
| National Collegiate Student Loan Trust-2004-1 | National Collegiate Student Loan Trust-2004-2 |
| National Collegiate Student Loan Trust-2005-1 | National Collegiate Student Loan Trust-2005-2 |
| National Collegiate Student Loan Trust-2005-3 | National Collegiate Student Loan Trust-2006-1 |
| National Collegiate Student Loan Trust-2006-2 | National Collegiate Student Loan Trust-2006-3 |
| National Collegiate Student Loan Trust-2006-4 | National Collegiate Student Loan Trust-2007-1 |
| National Collegiate Student Loan Trust-2007-2 | National Collegiate Student Loan Trust-2007-3 |
| National Collegiate Student Loan Trust-2007-4 | |

To whom it may concern:

U.S. Bank, as Special Servicer for the above referenced Trust(s), confirms that Transworld Systems Inc. is its Subservicer, authorized to file Proofs of Claim (POC) on behalf of the above Trust(s) with respect of student loans owned by the Trust(s). Transworld Systems Inc. is also the dedicated record custodian with respect to all student loan accounts owned by the Trust(s) and is fully authorized to execute affidavits regarding account documents, verify responses to discovery and provide testimony on behalf of the Trust(s).

Any questions regarding the above referenced processes should be directed to Transworld Systems Inc. at 1-800-209-9161

Sincerely,

U.S. Bank National Association
As Special Servicer to the National Collegiate Student Loan Trust(s)

By:

Brian C Tri
Vice President
Title

Acknowledged,
By: GSS Data Services, Inc.
Not in its individual capacity and solely as
administrator for and on behalf of the Trust(s)

By: Kenneth L. Ruggiero

President and CEO
Title

(Page 2 of 16)

From: 14798244175    Page: 1/10    Date: 7/20/2007 4:12:17 PM

---

**\* Cosigned \*    Loan Request/Credit Agreement – Information Page**

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

---

**LOAN PROGRAM INFORMATION**

Education Maximizer Undergraduate Loan | Academic Period: 08/2007-05/2008

Lender: Bank of America, N.A. | School: CHRISTIAN BROTHERS UNIVERSITY

Loan Amount Requested: $4500.00 | Repayment Option: Full Deferral

Deferral Period Margin: 7.25 | Repayment Period Margin: 7.25 | Loan Origination Fee Percentage: 10.50

---

**STUDENT BORROWER INFORMATION**

Borrower Name: Alisha D Waddell | Home Address: ████ Lincoln, AR ████
Social Security #: ████-4440 | Date of Birth: ████ 1989 | Home Telephone: ████
Mobile Telephone: | E-mail Address:
Borrower Citizenship (check one box): ☒ U.S. Citizen | ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name | Work Tel #:
Reference Street Address:
Reference City/State/Zip: Farmington, AR 72730

---

**COSIGNER INFORMATION (Must be age of majority in state of residence)**

Cosigner Name: James Waddell | Home Address: ████ Huntsville, AR ████
Social Security #: ████1764 | Date of Birth: ████ 1938 | Home Telephone: ████
Mobile Telephone: | E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy? ☒ No   ☐ Yes
Current Employer:
Current Position: | Years: | Employer Telephone: (479) 200-9638
Years at Previous Employment: 0 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box): ☒ U.S. Citizen | ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Borrower.

Personal Reference Name | Work Tel #:
Reference Street Address:
Reference City/State/Zip: Prairie Grove, AR 72753

---

**Borrower and Cosigner: Read and, where indicated, sign and date the next page.**

BK.07-08.CSX1.10DC.0107         LENDER COPY
PN01_BD_07-08_CSX1_F_X_WADDELL_A105401939.pdf

BKXUDP

(Page 3 of 16)

From: 14798244175      Page: 2/10      Date: 7/20/2007 4:12:17 PM

---

## * Cosigned *   Loan Request/Credit Agreement – Signature Page

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all seven (7) pages of this Loan Request/Credit Agreement BK.07-08.CSX1.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

### FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley):**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

For purposes of the following notices, "you" means the Borrower and Cosigner, not the Lender.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS – NOTICE TO CUSTOMER:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**PLEASE SIGN BELOW – RETURN This Page (and the Information Page) With Proof of Income and Other Information (if applicable)**
FAX TO: 800-704-9406

Signature of Borrower  _Alisha Waddell_                      Date _7-20-07_

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (I) APPLY FOR JOINT CREDIT AND (II) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner _Jamie Waddell_                      Date _7-20-07_

**BK.07-08.CSX1.10DC.0107**           LENDER COPY

PN01_BD_07-08_CSX1_F_X_WADDELL_A105401939.pdf                  BKXUDP

## Bank of America Loan Request/Credit Agreement Instructions

You have been conditionally approved for a Bank of America Education Maximizer Loan.  Attached is your Loan Request/Credit Agreement.  Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document**
**Urgent Reply Requested**

**Please follow the instructions on the following page to complete your application.  Be sure to include your <u>Loan ID#</u> and/or <u>SSN#</u> on <u>ALL</u> correspondence.**

**Your Loan ID# is located in the footer of this page. It is the eight digit number following "A1".**

<u>Once Completed – RETURN all signed paperwork, the Information Sheet and all requested documents.</u>

- For faster loan processing, fax all documents to [_____].

- Return all information by mail to the address below.

**For regular delivery, send to:**
[_____]
P.O. Box 848108
Boston, MA  02284-8108

**For overnight delivery, send to:**
[_____]
One Cabot Road, Second Floor
Medford, MA  02155-5141

**Frequently Asked Questions:**

1. **Q: What could cause my loan to be delayed?**
   **A:** The most common delays are caused by unacceptable or incomplete <u>proof of enrollment or income</u> as described in steps 2 and 3 on the following page.
2. **Q: How can I check the status of my loan and confirm the disbursement date of my funds?**
   **A:** You can check the status of your loan and confirm the disbursement date at anytime. Simply visit us online at [_____] or call us at [_____].

**Applications not completed within 90 days will be considered withdrawn.**
Before returning this Credit Agreement, read the entire document and sign and date the Signature Page where indicated.

# Credit Agreement Instructions Checklist

*(For your reference only; you do not need to return this checklist)*

| Step 1: | **REVIEW all pre-printed information, complete and SIGN the Credit Agreement** |
|---|---|
| ☐ Check Box | • If you find any incorrect information, please correct the information and <u>initial the change(s)</u>. Please note that certain changes may require the issuance of a new Credit Agreement for signature |
| | • **Legibly sign and date** by hand the bottom of the Signature Page of the Credit Agreement. Please note that certain changes may require the issuance of a new Credit Agreement for signature. The signatures of the borrower and cosigner must match the names pre-printed on the Credit Agreement. |
| | • If you have made an error on the signature or date lines, either download another copy or contact us as you will need to complete a new Credit Agreement. |

| Step 2: | **ATTACH proof of enrollment** |
|---|---|
| ☐ Check Box | • <u>If this loan is for the current and/or an upcoming semester</u>, please submit documentation in **one** of the following formats: |

| 1. Current tuition bill **or** current class/ registration schedule that shows the following: <br> • student Borrower Name <br> • School Name <br> • Academic period that matches the period on the Credit Agreement | **OR** | 2. Acceptance letter from the school verifying enrollment that shows the following: <br> • student Borrower Name <br> • School Name <br> • Academic period that matches the period on the Credit Agreement |
|---|---|---|

• <u>If this loan is for a past due balance</u>, please submit a current invoice (less than 60 days old) indicating the name of the school, the name of the student, and the dates of and the amount owed for the specific academic period.

| Step 3: | **ATTACH proof of income** |
|---|---|
| ☐ Check Box | • <u>For wage earners:</u> Provide **one** of the following documents: |

| 1. Legible copy of the cosigner's current paystub that shows the following: <br> • Dated within the last 60 days <br> • Employer Name <br> • Employee Name <br> • Year-to-date earnings or date of hire | **OR** | 2. Signed letter from the cosigner's employer that shows the following: <br> • Dated within the last 60 days <br> • Employer Name and letterhead <br> • Employee Name <br> • Year-to-date earnings or annual salary <br> • Employee's hire date |
|---|---|---|

• <u>For self-employed individuals:</u> Provide the cosigner's complete federal tax returns (1040's) for the last 2 years, including all schedules and signatures (or IRS receipt confirmation for electronically filed returns).

• <u>For retired individuals:</u> Provide the cosigner's pension statement (1099) or Social Security Statement (1099) for the last year or a current year award letter showing pension or retirement income.

• <u>For individuals relying on alimony or child support payments to repay this loan:</u> Provide a complete copy of the divorce decree and a signed copy of the cosigner's federal tax return (1040's) for the past two years.

| Step 4: | **ATTACH proof of immigration status (for eligible non-U.S. citizens only)** |
|---|---|
| ☐ Check Box | • <u>If the cosigner is an eligible non-citizen</u>, the cosigner must provide a current Resident Alien Card, Form I-551 (i.e., Green Card) showing that the cosigner is a permanent resident alien of the United States. |
| | • <u>If the student Borrower is an eligible non-citizen</u>, the student Borrower must provide one of the following forms demonstrating that the student Borrower has the legal right to remain in the United Stated for the academic period: <br> 1. Current Form I-20 showing F-1 or M-1 status; <br> 2. Current Form DS-2019 showing J-1 status; <br> 3. Permanent Resident Alien card, Form I-551 (i.e., Green Card) <br> 4. Current Form I-94 (Arrival-Departure record) issued from BCIS (Front/back copy) showing valid F, M or J status; <br> 5. Stamped passport along with a Notice of Action letter. |

**If you have questions, please have your Loan ID# available and call:**

[_____]

**\* Cosigned \*   Loan Request/Credit Agreement – Information Page**

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

## LOAN PROGRAM INFORMATION

Loan Program:                                               Academic Period:

Lender: Bank of America, N.A.        School:

Loan Amount Requested:              Repayment Option:

Deferral Period Margin:                Repayment Period Margin:        Loan Origination Fee Percentage:

## STUDENT BORROWER INFORMATION

Borrower Name:                          Home Address:
Social Security #:                       Date of Birth:              Home Telephone:
Mobile Telephone:                     E-mail Address:
Borrower Citizenship (check one box):  ☐ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name:_____        Reference Home Tel #:_____ Work Tel #:_____

Reference Street Address:_____

Reference City/State/Zip:_____

## COSIGNER INFORMATION (Must be age of majority in state of residence)

Cosigner Name:                          Home Address:
Social Security #:                       Date of Birth:              Home Telephone:
Mobile Telephone:                     E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy?   ☐ No    ☐ Yes
Current Employer:                                                      Employer Telephone:
Current Position:                       Years There:
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.**

Cosigner Citizenship (check one box):  ☐ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note:  Personal reference name and address cannot match that of the Borrower.

Personal Reference Name:_____        Reference Home Tel #:_____ Work Tel #:_____

Reference Street Address:_____

Reference City/State/Zip:_____

**Borrower and Cosigner:  Read and, where indicated, sign and date the next page.**

## \* *Cosigned* \*   Loan Request/Credit Agreement – Signature Page

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all seven (7) pages of this Loan Request/Credit Agreement BK.07-08.CSX1.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

## FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

### NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley):

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

### AVISO PARA EL FIADOR (Spanish Translation Required by Law):

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

For purposes of the following notices, "you" means the Borrower and Cosigner, not the Lender.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
**(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.**
**(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

**PLEASE SIGN BELOW – RETURN** This Page (and the Information Page) With Proof of Income and Other Information (if applicable)
**FAX TO:**

Signature of Borrower_____   Date_____

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner_____   Date_____

[W0675664.1] **BK.07-08.CSX1.10DC.0107**

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:**  I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.**  By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the student Borrower without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. **If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement.**  If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check that disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:*  If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment

option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, joint and serial (associates to bachelors) degree recipients may continue in-school deferment while completing their second degree, up to the 5-year or 5 ½- year maximum.

(b) *Graduate Professional Education Loan Program:*  The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment End Date. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the

principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late

fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against

the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the student Borrower fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to the Borrower and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

M. DISCLOSURE NOTICES

> ALL APPLICANTS:
> IMPORTANT FEDERAL LAW NOTICE—
>
> *Important information about procedures for opening a new account:*

**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for student Borrowers (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:

*NOTICE:* You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the Borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.
Name of Creditor: Bank of America, National Association, and its successors and assigns.
Date: If the loan is disbursed by check, the date of the check. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.
Kind of Debt: Education loan.
Total of Payments: The Loan Amount Requested set forth on the first page of this Credit Agreement (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Credit Agreement.
**FOR OBLIGORS COSIGNING IN VERMONT:**

*NOTICE TO COSIGNER*

**YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**
**FOR OBLIGORS COSIGNING IN WEST VIRGINIA:**

---

NOTICE TO COSIGNER
You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the Borrower. The creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

---

(Page 4 of 16)

## NOTE DISCLOSURE STATEMENT

$ 5,027.93

_____ 939
Loan No.

Borrower(s)     ALISHA D WADDELL
     JAMES WADDELL

Student:     ALISHA D WADDELL
Date:     July 25, 2007

ALISHA D WADDELL

LINCOLN , AR _____ USA

Lender Name and Address:
BANK OF AMERICA, N.A.
600 WILSHIRE BLVD, 4TH FLOOR
LOS ANGELES, CA 90017

This disclosure statement relates to your Loan Note disbursed on     July 25, 2007
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 13.601 % | $ 19,036.80 | $ 4,500.00 | $ 23,536.80 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due | | |
|---|---|---|---|---|
| 240 | $ 98.07 | On the | 20th day of each month beginning | 12/2011 |
| | | | | |
| | | | | |
| | | | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

[ ] **Prime Rate Index Adjusted Monthly -** The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

[ ] **Prime Rate Index Adjusted Quarterly -** The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

[ ] **LIBOR Index Adjusted Quarterly -** The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

[X] **LIBOR Index Adjusted Monthly -** The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of the preceding calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of principal and interest payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)     $ _____ 5,027.93

Itemization of Amount Financed
Amount paid to   ALISHA D WADDELL and     $ _____ .
Amount paid to   JAMES WADDELL     $ _____ 4,500.00
Total Amount Financed     $ _____ 4,500.00

Itemization of Prepaid Finance Charge
Origination Fee     $ _____ 527.93
Total Prepaid Finance Charge(s)     $ _____ 527.93



This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

*07/31/2007 0481*
3207

[ 0872] 07/30/2007
6090

Bank of America

25 St. James Avenue, 6th Floor
Boston, Massachusetts 02116

PAY FOUR THOUSAND FIVE HUNDRED AND 00/ DOLLARS

TO
THE
ORDER
OF

ALISHA D WADDELL & JAMES WADDELL
137 CHESTNUT CIR
LINCOLN
AR 72744

07/31/03

DATE 07/25/2007

$4,500.00

NO. 00291254



↓Do not endorse or write below this line.↓

0045   07/31/2007
4656
0481*   07/31/2007
3207

James J Waddell
Talisha Waddell

0198289

## POOL SUPPLEMENT (DTC ONLY)
## BANK OF AMERICA, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Amended and Restated Note Purchase Agreement dated as of April 1, 2006, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (together, the "Agreement"), by and between The First Marblehead Corporation and Bank of America, N.A. (the "Program Lender"). This Supplement is dated as of September 20, 2007. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price set forth below, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank of America Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any agreement pursuant to which TERI granted collateral for its obligations under the Guaranty Agreement, relating to the Transferred Bank of America Loans. The Depositor in turn will sell the Transferred Bank of America Loans to a Purchaser Trust. The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank of America Loan and all Origination Records relating thereto, together with any additional information relating to the Transferred Bank of America Loans heretofore provided by TERI (as origination agent) to the Servicer or FMC in connection with the subject Securitization Transaction. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2: Price.

The amounts paid pursuant to this Supplement are the amounts set forth on Schedule 2 attached hereto.

Article 3: Representations and Warranties.

3.01.   By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Purchaser Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02.   By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

{F001344.1 }

(a)     The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank of America Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank of America Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties:  (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of, the Agreement or this Supplement.

Article 4:  Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price.  The Depositor hereby acknowledges receipt of the Transferred Bank of America Loans.

Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank of America Loans described in Schedule 1, other than any right to obtain servicing after the date hereof.  It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to any collateral pledged by TERI to the Program Lender to secure its obligations under the Guaranty Agreement that relates to the Transferred Bank of America Loans, and the Program Lender hereby releases any security interest it may have in such collateral.  The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: _____
John A. Foxgrover
Senior Vice President

BANK OF AMERICA, N.A.

By: _____
Name:
Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By:     GATE Holdings, Inc., Member

By: _____
John A. Foxgrover
Vice President

-4-

{F0013443.1 }

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION


By:_____
    John A. Foxgrover
    Senior Vice President


BANK OF AMERICA, N.A.

By: _____
    Name:  ANDREW  IRWIN
    Title:  SENIOR VICE PRESIDENT


THE NATIONAL COLLEGIATE FUNDING LLC

By:    GATE Holdings, Inc., Member


    By: _____
       John A. Foxgrover
       Vice President

{F0013443.1 }

-4-

**National Collegiate Student Loan Trust 2007-4**

**Roster:**   BANK OF AMERICA                 Final Reconciliation Settlement Figures

| Lender | Lender Code | Marketer | Loan Product | BSSN |
|---|---|---|---|---|
| BANK OF AMERICA | 900008QC | Bank of America | DTC - Undergraduate | ████4440 |

| GUARREF | Disb. Date | Tier | Repay Type | Margin |
|---|---|---|---|---|
| 5401939 | 7/25/2007 | 12 | DP | 7.25% |

| Fee to Borrower | TERI Admin Fee | Marketing Fee | Total Gross Disbursed | Total Net Disbursed |
|---|---|---|---|---|
| 10.50% | 2.75% | 3.00% | 5027.93 | 4499.9974 |

| Total Net Principal | Total Capitalized Interest | Total Outstanding Gross Principal | Total Outstanding Unpaid Interest | Administrative Fee Reimbursement on 0% Fee Loans |
|---|---|---|---|---|
| 4499.9974 | 0 | 5027.93 | 98.69 | 0 |

| Origination Fee Reimbursement Due Bank | Total Marketing Fees | Marketing Fees Due FMC | Marketing Fees Due Bank | Total Amount Due Bank |
|---|---|---|---|---|
| 100 | 134.9999 | 0 | 134.9999 | 5361.6199 |

EX-99.4 9 d719503.htm DEPOSIT AND SALE AGREEMENT

**EXHIBIT 99.4**

## DEPOSIT AND SALE AGREEMENT

### THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of September 20, 2007, between The National Collegiate Funding LLC, as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2007-4, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

### ARTICLE I
### TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

### ARTICLE II
### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of September 1, 2007 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

### ARTICLE III
### SALE AND PURCHASE

Section 3.01.        Sale of Loans.  The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.        Assignment of Rights.  The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.        Settlement of the Payment.  The Purchaser shall pay the Seller the purchase price set forth in Article 2 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.        Assistance by Seller.  Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

### ARTICLE IV
### REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.    <u>General</u>.  The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)    The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)    The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.    <u>Loan Representations</u>.  The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on <u>Schedule B</u> attached hereto.

Section 4.03.    <u>Covenants</u>.  The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement.  The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Controlling Party in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

**ARTICLE V**
**PURCHASE OF LOANS; REIMBURSEMENT**

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee and Wilmington Trust Company (the "<u>Owner Trustee</u>") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan.  In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

**ARTICLE VI**
**LIABILITY OF SELLER; INDEMNITIES**

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation.  If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Controlling Party pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X

## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2007-4
> c/o Wilmington Trust Company, as Owner Trustee
> Rodney Square North
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto with the consent of the Note Insurer, but without the consent of the Noteholders, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of such Noteholders; providedthat such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the percentage interest in the Certificates and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders,

or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Note Insurer and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement.  The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
### ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
### THIRD PARTY BENEFICIARY

The Noteholders and the Note Insurer are third party beneficiaries hereof.

## ARTICLE XIV
### GOVERNING LAW

**THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.**

## ARTICLE XV
### LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser.  For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC,
as Seller

By:  GATE Holdings, Inc., Member


By:  /s/ John A. Foxgrover
    Name:   John A. Foxgrover
    Title:    Vice President

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4, as Purchaser

By:  Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By:  /s/ Patricia A. Evans
    Name:    Patricia A. Evans
    Title:     Vice President

## SCHEDULE A

### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Private Loan Program, TERI (School Channel) Loan Program and TERI ISLP Loan Program.

- RBS Citizens, N.A., successor by merger to Charter One Bank, N.A., dated September 20, 2007, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Citibank Education Assistance Loan Program, College Loan Corporation Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, Astrive Education (f/k/a START) Loan Program, AstriveAlliance Education (f/k/a START) Loan Program, Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program and ThinkFinancial Alternative Loan Program.

- RBS Citizens, N.A., successor by merger to Citizens Bank of Rhode Island, dated September 20, 2007, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, Navy Federal Alternative Loan Program, FinanSure Alternative Loan Program, Xanthus Alternative Loan Program and Penn State Undergraduate Loan Program.

- Comerica Bank, dated September 20, 2007, for loans that were originated under Comerica Bank's Private Loan Program.

- HSBC Bank USA, National Association, dated September 20, 2007, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated September 20, 2007, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated September 20, 2007, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.) dated September 20, 2007, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated September 20, 2007, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated September 20, 2007, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Bank Referral Loan Program, including the Astute Private Loan Program and Student Lending Works Private Loan Program.

- PNC Bank, N.A., dated September 20, 2007, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated September 20, 2007, for loans that were originated under Sovereign Bank's Alternative Student Loan Program.

- SunTrust Bank, dated September 20, 2007, for loans that were originated under the SunTrust Loan Program.

- TCF National Bank, dated September 20, 2007, for loans that were originated under the TCF National Bank Alternative Loan Program.

- Union Federal Savings Bank, dated September 20, 2007, for loans that were originated under the UFSB Astrive Loan Program.

## SCHEDULE B

### *Note Purchase Agreements*

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education (f/k/a START) Loan Programs.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the Charter One Bank Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program, and ThinkFinancial Alternative Loan Program).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- Comerica Bank, dated June 30, 2006, for loans that were originated under Comerica Bank's Private Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated July 1, 2006, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A,, (successor to Bank One, N.A.), dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under the National City Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under the National City Referral Loan Program, including the Astute Private Loan Program and Student Lending Works Private Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Student Loan

Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under the SunTrust Loan Program.

- TCF National Bank, dated July 22, 2005, for loans that were originated under the TCF National Bank Alternative Loan Program.

- Union Federal Savings Bank, dated March 26, 2007, for loans that were originated under the UFSB Astrive Loan Program.



**National™**
**Collegiate**
**Trust**

SEPTEMBER 21, 2007

**American Education Services**
P.O. Box 2461  Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 • TDD 717-720-2354
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

#BWNDHKB
#B154 3429 9609 21L2#
ALISHA D WADDELL

LINCOLN AR

ACCT NUMBER: █████6384

DEAR CUSTOMER:

American Education Services (AES) would like to inform you that BANK OF AMERICA,DTC has sold the loan(s) referenced below to NATIONAL COLLEGIATE TRUST, effective SEPTEMBER 20, 2007. AES will continue to service the loan(s).

| LOAN PROGRAM | CURRENT OWNER | 1ST DISB DATE | PRINCIPAL BALANCE | LOAN STATUS |
|---|---|---|---|---|
| ALPLN | NCT | 07/25/2007 | $ 5,027.93 | IN SCHOOL |

The transfer in ownership of your loan(s) will not result in any inconvenience to you.  You can continue to send your payments and correspondence to the usual addresses.  Thank you in advance for your patience and cooperation.

AES is dedicated to helping you manage your education loans with ease.  Visit us online, at www.aesSuccess.org, to access and update account information, make payments online, and view the many resources that AES has to offer.

Please notify us immediately, using our toll free number, for name, address, or enrollment status changes, or if the current status of your loan(s) is incorrect.

AES has assigned to your loan(s) a unique account number, which is located next to your name and address at the top of this letter. Please use this number when communicating with AES.

SINCERELY,

Tina L. Dorbert
Manager
AES, Conversion Services

TSX08:PS07BTRAN
█████6384 █████6384          MR 00070072630159647



```
ITS2C██████4440;;                  AES/PA          VTAM NACP        TSX2D
DATE 05/10/17 08:53:06      LOAN FINANCIAL ACTIVITY        PAGE  1 OF  3


BORROWER SSN: ██████-4440   NAME: WADDELL, ALISHA D
1ST DISB: 07/25/07 LN SEQ: 0002  LN PGM: ALPLN      OWN: 122962QC-NCT
GUARANTOR: TERI - DTC              CUST ACCT:  LT15  ORIG BAL:   5,027.93
BOND ISSUE: NCT20074   PD AHEAD:    STATUS: ACTIVE     CURR BAL:      0.00
```

|     | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|-----|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1   |         | 02/02/11       | 02/02/11    | 5003A     | 7.44CR      | 0.00             | 0.00              |
| 2   |         | 02/01/11       | 02/01/11    | 1030A     | 6,212.01CR  | 28.14            | 0.00              |
| 3   |         | 01/09/11       |             | 2601A     | 1.24        | 36.67            | 5,947.84          |
| 4   |         | 12/10/10       |             | 2601A     | 1.24        | 37.92            | 5,947.84          |
| 5   |         | 11/09/10       |             | 2601A     | 1.24        | 36.71            | 5,947.84          |
| 6   |         | 10/10/10       |             | 2601A     | 1.24        | 38.11            | 5,947.84          |
| 7   |         | 09/09/10       |             | 2601A     | 1.24        | 38.33            | 5,947.84          |
| 8   |         | 08/09/10       |             | 2601A     | 1.24        | 48.29            | 5,947.84          |
| 9   |         | 07/01/10       | 07/01/10    | 7001A     | 0.00        | 200.54           | 5,947.84          |
| 10  |         | 01/11/10       | 01/11/10    | 1010C     | 53.78CR     | 37.51            | 5,712.43          |

```
        SELECTION ___


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2Q     4440;;              AES/PA        VTAM NACP      TSX2D
DATE 05/10/17 08:53:13    LOAN FINANCIAL ACTIVITY      PAGE  2 OF  3

BORROWER SSN:      -4440  NAME: WADDELL, ALISHA D
1ST DISB: 07/25/07 LN SEQ: 0002  LN PGM: ALPLN     OWN: 122962QC-NCT
GUARANTOR: TERI - DTC          CUST ACCT:  LT15  ORIG BAL:   5,027.93
BOND ISSUE: NCT20074   PD AHEAD:    STATUS: ACTIVE    CURR BAL:      0.00
```

|    | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|----|-----|-----------|--------|------|------|----------|-----------|
|    | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1  |     | 12/10/09 |          | 2601A | 2.69 | 42.24 | 5,712.43 |
| 2  |     | 11/04/09 | 11/04/09 | 1010C | 53.78CR | 59.99 | 5,712.43 |
| 3  |     | 09/14/09 | 09/14/09 | 1010C | 107.56CR | 5.92 | 5,712.43 |
| 4  |     | 09/09/09 |          | 2601A | 2.69 | 68.97 | 5,742.41 |
| 5  |     | 07/13/09 | 07/14/09 | 1010C | 53.78CR | 30.08 | 5,742.41 |
| 6  |     | 06/18/09 | 06/19/09 | 1010C | 53.78CR | 37.81 | 5,766.11 |
| 7  |     | 05/18/09 | 05/19/09 | 1010C | 53.78CR | 34.40 | 5,782.08 |
| 8  |     | 04/20/09 | 04/20/09 | 1010C | 53.78CR | 25.78 | 5,787.55 |
| 9  |     | 03/30/09 | 03/30/09 | 1015C | 53.78CR | 30.40 | 5,787.55 |
| 10 |     | 03/05/09 | 03/05/09 | 1015C | 53.78CR | 32.90 | 5,787.55 |

```
     SELECTION __


F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C██████4440;;                 AES/PA        VTAM NACP        TSX2D
DATE 05/10/17 08:53:17      LOAN FINANCIAL ACTIVITY        PAGE  3 OF  3


BORROWER SSN: ████-4440  NAME: WADDELL, ALISHA D
1ST DISB: 07/25/07 LN SEQ: 0002  LN PGM: ALPLN      OWN: 122962QC-NCT
GUARANTOR: TERI - DTC          CUST ACCT:  LT15  ORIG BAL:   5,027.93
BOND ISSUE: NCT20074   PD AHEAD:     STATUS: ACTIVE     CURR BAL:      0.00
```

|   | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|---|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1 |         | 02/06/09       | 02/06/09    | 1010C     | 55.51CR     | 141.68           | 5,787.55          |
| 2 |         | 11/07/08       | 11/07/08    | 7001A     | 0.00        | 57.77            | 5,787.55          |
| 3 |         | 10/01/08       | 10/01/08    | 7001A     | 0.00        | 136.51           | 5,729.78          |
| 4 |         | 07/01/08       | 07/01/08    | 7001A     | 0.00        | 137.25           | 5,593.27          |
| 5 |         | 04/01/08       | 04/01/08    | 7001A     | 0.00        | 152.57           | 5,456.02          |
| 6 |         | 01/01/08       | 01/02/08    | 7001A     | 0.00        | 176.83           | 5,303.45          |
| 7 |         | 09/20/07       | 09/20/07    | 0390A     | 5,126.62    | 0.00             | 5,027.93          |
| 8 |         | 09/20/07       | 09/20/07    | 0395A     | 5,126.62CR  | 98.69            | 0.00              |
| 9 |         | 07/25/07       | 07/25/07    | 0101A     | 5,027.93    | 0.00             | 5,027.93          |

```
       SELECTION __


   F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
ITS2V████4440;                    AES/PA        VTAM NACP        TSX2W
DATE 05/10/17 08:53:33    DEFERMENT/FORBEARANCE SUMMARY      PAGE  1 OF  1


BORROWER SSN ████-4440    NAME ALISHA D WADDELL


  DEFER/FORB    BEGIN     END
    TYPE        DATE      DATE      1ST DISB LOAN PGM        OWNER
  F-GEN/TEMP  12/01/09 06/30/10  1 07/25/07 ALPLN      NCT
                                 ███████████████       NCT






                         SELECTION ___


 F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

May 10, 2017  8:53:38 AM

```
  ITS2X■■■■4440;                 AES/PA        VTAM NACP        TSX2Y
  DATE 05/10/17 08:53:52 REPAYMENT SCHEDULE SUMMARY SELECTION   PAGE  1 OF  1


  BORROWER SSN ■■■■■-4440   NAME ALISHA D WADDELL


          SCHED   INSTALL   REPAY  REPAY  1ST DUE 1ST DISB    LOAN
  SEL STA TYPE    AMOUNT    LVLS   TERM    DATE    DATE       PGM      OWNER
   1  I  TG        24.87     4     221    07/10/10 07/25/07 ALPLN      NCT
   2  I  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■     NCT
   3  I  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■     NCT
   4  I  L         47.63     2     226    01/10/10 07/25/07 ALPLN      NCT
   5  I  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■     NCT
   6  I  L         53.78     2     237    02/10/09 07/25/07 ALPLN      NCT
   7  I  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■     NCT
   8  I  L         55.51     2     238    01/22/09 07/25/07 ALPLN      NCT




  SELECTION  ___



  F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

May 10, 2017 8:53:56 AM



National
Collegiate
Trust

JUNE 05, 2010

**American Education Services**
P.O. Box 2461 Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 • TDD 717-720-2354
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

#BWNDHKB
#B154 3429 9606 05L5#
ALISHA D WADDELL

FARMINGTON AR

ACCT NUMBER: ███████6384

---

### PLEASE READ THE FOLLOWING INFORMATION CAREFULLY TO DETERMINE WHETHER YOU NEED TO TAKE ACTION.

---

**WHY WE ARE CONTACTING YOU**
There has been a change in the current repayment terms for the loan(s) listed on the following page(s).

**WHAT THIS MEANS TO YOU**
These new repayment terms replace all previous repayment terms for the loan(s) listed on the following page(s). We will send you a bill 20 to 30 days prior to your due date. However, it is IMPORTANT to note that any amounts due from bills you have already received remain your responsibility and MUST be paid.

Please send your payment to our office by your due date. Checks or money orders should be made payable to American Education Services (AES) and mailed to American Education Services, Harrisburg, PA 17130-0001. You may also pay your account online at www.aesSuccess.org.

**WHAT ACTIONS YOU NEED TO TAKE**

| If you: | Then: |
|---|---|
| Have past-due amounts from a previous repayment schedule,... | ...send your past due payment(s) now to avoid future late fees and collection calls and letters. |
| Do not have any past-due amounts... | ...send your new monthly installment amount by the due date shown on the following page. |

**ADDITIONAL INFORMATION YOU MAY FIND HELPFUL**
Conditions such as granting a deferment or forbearance, a change in interest rate and interest capitalization (adding interest to the principal balance) are examples of what may have caused the terms of your loan(s) to be recalculated. Please contact us at the number listed above if you have any questions regarding this change.



TSXFH:PS06BTRT8     Page   1
████6384 ████6384     MR 00001101560015464

REPAYMENT SCHEDULES

REPAYMENT SCHEDULE 1

| OWNER NAME | LOAN PROGRAM | FIRST DISBURSEMENT | ORIGINAL BALANCE | CURRENT PRINCIPAL | INTEREST RATE |
|---|---|---|---|---|---|
| NCT | ALPLN | 07/25/2007 | $5,027.93 | $5,712.43 | 7.530 |

| SCHEDULE TYPE | TOTAL REPAY AMOUNT | REPAY TERM | INSTALL AMOUNT | DUE DATE | ANTICIPATED CAP |
|---|---|---|---|---|---|
| TERI GRD 2 | $11,254.63 | 12 | $24.87 | 07/10/10 | N/A |
| | | 12 | $36.53 | 07/10/11 | |
| | | 196 | $53.40 | 07/10/12 | |
| | | 1 | $51.43 | 11/10/28 | |

�れ Your terms have been re-calculated due to a change in status ✻✻

REPAYMENT SCHEDULE  2

| OWNER NAME | LOAN PROGRAM | FIRST DISBURSEMENT | ORIGINAL BALANCE | CURRENT PRINCIPAL | INTEREST RATE |
|---|---|---|---|---|---|
| NCT | ALPLN | 07/18/2007 | $9,497.21 | $10,825.01 | 7.530 |

| SCHEDULE TYPE | TOTAL REPAY AMOUNT | REPAY TERM | INSTALL AMOUNT | DUE DATE | ANTICIPATED CAP |
|---|---|---|---|---|---|
| TERI GRD 2 | $21,337.13 | 12 | $47.14 | 07/10/10 | N/A |
| | | 12 | $69.22 | 07/10/11 | |
| | | 196 | $101.23 | 07/10/12 | |
| | | 1 | $99.73 | 11/10/28 | |

✻✻ Your terms have been re-calculated due to a change in status ✻✻

# Loan Payment History Report
## Date: 2017-05-10

| | | | |
|---|---|---|---|
| Account Number: | ████████1000 | | |
| Social Security Number: | ████4440 | Product: | DFU DIRECT TO CONSUMER UNDERGRAD |
| Name: | WADDELL, ALISHA | Officer Code: | 777074 |
| Birth Date: | 1989-████ | School: | CHRISTIAN BROTHERS UNIV |
| Address 1: | C/O MCGAHA COREY | Program Year: | 2007-08 |
| Address 2: | | | |
| City: | LITTLE ROCK | Variable Rate Code: | F3 MONTHLY LIBOR |
| State: | AR | Interest Rate: | 8.23% |
| Zip Code: | ████████ | | |
| Cosigner Name: | WADDELL, JAMES | | |
| Social Security Number: | ████1764 | | |
| Address 1: | C/O MCGAHA COREY | | |
| Address 2: | | | |
| City: | LITTLE ROCK | | |
| State: | AR | | |
| Zip Code: | ████████ | | |
| | | Last Payment Date: | 2016-09-21 |
| | | Last Payment Amount: | $135.00 |
| Contract Date: | 2007-07-25 | Last Interest Date: | 2017-05-10 |
| Vendor Placement Date: | 2015-08-20 | Accrued Interest: | $2,863.30 |
| Charge Off Date: | 2011-02-01 | Recovered Interest: | $691.01 |
| Charge Off Amount: | $6,212.01 | Net Interest: | $2,172.29 |
| Recovered Principal: | $148.79 | Associated Costs: | $0.00 |
| Current Principle: | $6,063.22 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2007-07-25 | Net Costs: | $0.00 |
| Disbursement Amount: | $5,027.93 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2011-02-28 | 00:01 | 82 | $6,212.01 @ 7.510 / 02/01/2011 - 02/28/2011 | $34.51 |
| System | 2011-03-01 | 00:01 | 82 | $6,212.01 @ 7.510 / 02/28/2011 - 03/01/2011 | $1.28 |
| System | 2011-03-31 | 00:01 | 82 | $6,212.01 @ 7.510 / 03/01/2011 - 03/31/2011 | $38.34 |
| System | 2011-04-01 | 00:01 | 82 | $6,212.01 @ 7.510 / 03/31/2011 - 04/01/2011 | $1.28 |
| System | 2011-04-08 | 00:00 | 12 | Interest Office Payment | $75.41 |
| System | 2011-04-08 | 00:00 | 16 | Principal Office Payment | $28.19 |
| System | 2011-04-29 | 00:00 | 16 | Principal Office Payment | $51.80 |
| System | 2011-04-30 | 00:01 | 82 | $6,132.02 @ 7.510 / 04/01/2011 - 04/30/2011 | $36.59 |
| System | 2011-05-02 | 00:01 | 82 | $6,132.02 @ 7.490 / 04/30/2011 - 05/02/2011 | $2.52 |

| System | 2011-05-31 | 00:00 | 12 | Interest Office Payment | $51.80 |
|--------|------------|-------|----|-------------------------|--------|
| System | 2011-05-31 | 00:01 | 82 | $6,132.02 @ 7.490 / 05/02/2011 - 05/31/2011 | $36.49 |
| System | 2011-06-01 | 00:01 | 82 | $6,132.02 @ 7.490 / 05/31/2011 - 06/01/2011 | $1.26 |
| System | 2011-06-30 | 00:00 | 12 | Interest Office Payment | $51.80 |
| System | 2011-06-30 | 00:01 | 82 | $6,132.02 @ 7.460 / 06/01/2011 - 06/30/2011 | $36.35 |
| System | 2011-07-01 | 00:01 | 82 | $6,132.02 @ 7.460 / 06/30/2011 - 07/01/2011 | $1.25 |
| System | 2011-07-31 | 00:01 | 82 | $6,132.02 @ 7.440 / 07/01/2011 - 07/31/2011 | $37.50 |
| System | 2011-08-01 | 00:00 | 12 | Interest Office Payment | $49.61 |
| System | 2011-08-01 | 00:00 | 16 | Principal Office Payment | $2.19 |
| System | 2011-08-01 | 00:01 | 82 | $6,132.02 @ 7.440 / 07/31/2011 - 08/01/2011 | $1.25 |
| System | 2011-08-30 | 00:00 | 16 | Principal Office Payment | $51.80 |
| System | 2011-08-31 | 00:01 | 82 | $6,078.03 @ 7.440 / 08/01/2011 - 08/31/2011 | $37.17 |
| System | 2011-09-01 | 00:01 | 82 | $6,078.03 @ 7.440 / 08/31/2011 - 09/01/2011 | $1.24 |
| System | 2011-09-30 | 00:00 | 12 | Interest Office Payment | $51.80 |
| System | 2011-09-30 | 00:01 | 82 | $6,078.03 @ 7.440 / 09/01/2011 - 09/30/2011 | $35.93 |
| System | 2011-10-03 | 00:01 | 82 | $6,078.03 @ 7.440 / 09/30/2011 - 10/03/2011 | $3.72 |
| System | 2011-10-31 | 00:00 | 12 | Interest Office Payment | $51.80 |
| System | 2011-10-31 | 00:01 | 82 | $6,078.03 @ 7.470 / 10/03/2011 - 10/31/2011 | $34.83 |
| System | 2011-11-01 | 00:01 | 82 | $6,078.03 @ 7.470 / 10/31/2011 - 11/01/2011 | $1.24 |
| System | 2011-11-30 | 00:00 | 12 | Interest Office Payment | $46.70 |
| System | 2011-11-30 | 00:00 | 16 | Principal Office Payment | $5.10 |
| System | 2011-11-30 | 00:01 | 82 | $6,078.03 @ 7.490 / 11/01/2011 - 11/30/2011 | $36.17 |
| System | 2011-12-01 | 00:01 | 82 | $6,072.93 @ 7.490 / 11/30/2011 - 12/01/2011 | $1.25 |
| System | 2011-12-29 | 00:00 | 12 | Interest Office Payment | $1.25 |
| System | 2011-12-29 | 00:00 | 16 | Principal Office Payment | $50.55 |
| System | 2011-12-31 | 00:01 | 82 | $6,022.38 @ 7.500 / 12/01/2011 - 12/31/2011 | $37.12 |
| System | 2012-01-03 | 00:01 | 82 | $6,022.38 @ 7.520 / 12/31/2011 - 01/03/2012 | $3.71 |
| System | 2012-01-30 | 00:00 | 12 | Interest Office Payment | $40.84 |
| System | 2012-01-30 | 00:00 | 16 | Principal Office Payment | $10.96 |
| System | 2012-01-31 | 00:01 | 82 | $6,011.42 @ 7.520 / 01/03/2012 - 01/31/2012 | $34.58 |
| System | 2012-02-01 | 00:01 | 82 | $6,011.42 @ 7.520 / 01/31/2012 - 02/01/2012 | $1.24 |
| System | 2012-02-06 | 00:00 | 13 | NSF Principal Office Payment | $51.80 |
| System | 2012-02-29 | 00:01 | 82 | $6,063.22 @ 7.550 / 02/01/2012 - 02/29/2012 | $35.02 |
| System | 2012-03-01 | 00:01 | 82 | $6,063.22 @ 7.510 / 02/29/2012 - 03/01/2012 | $1.24 |
| System | 2012-03-31 | 00:01 | 82 | $6,063.22 @ 7.510 / 03/01/2012 - 03/31/2012 | $37.32 |
| System | 2012-04-02 | 00:01 | 82 | $6,063.22 @ 7.510 / 03/31/2012 - 04/02/2012 | $2.49 |
| System | 2012-04-30 | 00:01 | 82 | $6,063.22 @ 7.490 / 04/02/2012 - 04/30/2012 | $34.74 |
| System | 2012-05-02 | 00:01 | 82 | $6,063.22 @ 7.490 / 04/30/2012 - 05/02/2012 | $2.48 |
| System | 2012-05-31 | 00:01 | 82 | $6,063.22 @ 7.490 / 05/02/2012 - 05/31/2012 | $35.98 |
| System | 2012-06-01 | 00:01 | 82 | $6,063.22 @ 7.490 / 05/31/2012 - 06/01/2012 | $1.24 |
| System | 2012-06-30 | 00:01 | 82 | $6,063.22 @ 7.490 / 06/01/2012 - 06/30/2012 | $35.98 |
| System | 2012-07-01 | 00:01 | 82 | $6,063.22 @ 7.490 / 06/30/2012 - 07/01/2012 | $1.24 |
| System | 2012-07-02 | 00:01 | 82 | $6,063.22 @ 7.490 / 07/01/2012 - 07/02/2012 | $1.24 |
| System | 2012-07-31 | 00:01 | 82 | $6,063.22 @ 7.490 / 07/02/2012 - 07/31/2012 | $35.98 |
| System | 2012-08-01 | 00:01 | 82 | $6,063.22 @ 7.490 / 07/31/2012 - 08/01/2012 | $1.24 |
| System | 2012-08-31 | 00:01 | 82 | $6,063.22 @ 7.500 / 08/01/2012 - 08/31/2012 | $37.27 |
| System | 2012-09-04 | 00:01 | 82 | $6,063.22 @ 7.500 / 08/31/2012 - 09/04/2012 | $4.97 |
| System | 2012-09-30 | 00:01 | 82 | $6,063.22 @ 7.500 / 09/04/2012 - 09/30/2012 | $32.30 |

| System | 2012-10-01 | 00:01 | 82 | $6,063.22 @ 7.500 / 09/30/2012 - 10/01/2012 | $1.24 |
|--------|------------|-------|-----|---------------------------------------------|-------|
| System | 2012-10-31 | 00:01 | 82 | $6,063.22 @ 7.480 / 10/01/2012 - 10/31/2012 | $37.17 |
| System | 2012-11-06 | 00:01 | 82 | $6,063.22 @ 7.480 / 10/31/2012 - 11/06/2012 | $7.43 |
| System | 2012-11-08 | 00:00 | 47 | Check Charge/Fee Adjustment | $-102.52 |
| System | 2012-11-08 | 00:01 | 82 | $6,063.22 @ 7.460 / 11/06/2012 - 11/08/2012 | $2.47 |
| System | 2012-11-09 | 00:01 | 82 | $6,063.22 @ 7.460 / 11/08/2012 - 11/09/2012 | $1.24 |
| System | 2012-12-03 | 00:01 | 82 | $6,063.22 @ 7.460 / 11/09/2012 - 12/03/2012 | $29.66 |
| System | 2012-12-17 | 00:01 | 82 | $6,063.22 @ 7.460 / 12/03/2012 - 12/17/2012 | $17.30 |
| System | 2012-12-31 | 00:01 | 82 | $6,063.22 @ 7.460 / 12/17/2012 - 12/31/2012 | $17.30 |
| System | 2013-01-31 | 00:01 | 82 | $6,063.22 @ 7.460 / 12/31/2012 - 01/31/2013 | $38.42 |
| System | 2013-02-06 | 00:01 | 82 | $6,063.22 @ 7.460 / 01/31/2013 - 02/06/2013 | $7.44 |
| System | 2013-02-07 | 00:01 | 82 | $6,063.22 @ 7.460 / 02/06/2013 - 02/07/2013 | $1.24 |
| System | 2013-02-13 | 00:01 | 82 | $6,063.22 @ 7.460 / 02/07/2013 - 02/13/2013 | $7.44 |
| System | 2013-02-28 | 00:01 | 82 | $6,063.22 @ 7.460 / 02/13/2013 - 02/28/2013 | $18.59 |
| System | 2013-03-01 | 00:01 | 82 | $6,063.22 @ 7.460 / 02/28/2013 - 03/01/2013 | $1.24 |
| System | 2013-03-04 | 00:01 | 82 | $6,063.22 @ 7.450 / 03/01/2013 - 03/04/2013 | $3.71 |
| System | 2013-03-31 | 00:01 | 82 | $6,063.22 @ 7.450 / 03/04/2013 - 03/31/2013 | $33.41 |
| System | 2013-04-30 | 00:01 | 82 | $6,063.22 @ 7.450 / 03/31/2013 - 04/30/2013 | $37.13 |
| System | 2013-05-07 | 00:01 | 82 | $6,063.22 @ 7.450 / 04/30/2013 - 05/07/2013 | $8.66 |
| System | 2013-05-31 | 00:01 | 82 | $6,063.22 @ 7.450 / 05/07/2013 - 05/31/2013 | $29.70 |
| System | 2013-06-30 | 00:01 | 82 | $6,063.22 @ 7.450 / 05/31/2013 - 06/30/2013 | $37.13 |
| System | 2013-07-04 | 00:01 | 82 | $6,063.22 @ 7.450 / 06/30/2013 - 07/04/2013 | $4.95 |
| System | 2013-07-31 | 00:01 | 82 | $6,063.22 @ 7.440 / 07/04/2013 - 07/31/2013 | $33.37 |
| System | 2013-08-31 | 00:01 | 82 | $6,063.22 @ 7.440 / 07/31/2013 - 08/31/2013 | $38.31 |
| System | 2013-09-30 | 00:01 | 82 | $6,063.22 @ 7.440 / 08/31/2013 - 09/30/2013 | $37.08 |
| System | 2013-10-09 | 00:01 | 82 | $6,063.22 @ 7.440 / 09/30/2013 - 10/09/2013 | $11.12 |
| System | 2013-10-31 | 00:01 | 82 | $6,063.22 @ 7.430 / 10/09/2013 - 10/31/2013 | $27.15 |
| System | 2013-11-30 | 00:01 | 82 | $6,063.22 @ 7.430 / 10/31/2013 - 11/30/2013 | $37.03 |
| System | 2013-12-04 | 00:01 | 82 | $6,063.22 @ 7.430 / 11/30/2013 - 12/04/2013 | $4.94 |
| System | 2013-12-31 | 00:01 | 82 | $6,063.22 @ 7.420 / 12/04/2013 - 12/31/2013 | $33.28 |
| System | 2014-01-31 | 00:01 | 82 | $6,063.22 @ 7.420 / 12/31/2013 - 01/31/2014 | $38.21 |
| System | 2014-02-28 | 00:01 | 82 | $6,063.22 @ 7.420 / 01/31/2014 - 02/28/2014 | $34.51 |
| System | 2014-04-03 | 00:01 | 82 | $6,063.22 @ 7.420 / 02/28/2014 - 04/03/2014 | $41.91 |
| System | 2014-05-07 | 00:01 | 82 | $6,063.22 @ 7.410 / 04/03/2014 - 05/07/2014 | $41.85 |
| System | 2014-05-21 | 00:01 | 82 | $6,063.22 @ 7.400 / 05/07/2014 - 05/21/2014 | $17.21 |
| System | 2014-07-31 | 00:01 | 82 | $6,063.22 @ 7.400 / 05/21/2014 - 07/31/2014 | $87.28 |
| System | 2014-08-31 | 00:01 | 82 | $6,063.22 @ 7.400 / 07/31/2014 - 08/31/2014 | $38.11 |
| System | 2014-09-02 | 00:01 | 82 | $6,063.22 @ 7.400 / 08/31/2014 - 09/02/2014 | $2.46 |
| System | 2014-09-30 | 00:01 | 82 | $6,063.22 @ 7.410 / 09/02/2014 - 09/30/2014 | $34.47 |
| System | 2014-10-01 | 00:01 | 82 | $6,063.22 @ 7.410 / 09/30/2014 - 10/01/2014 | $1.23 |
| System | 2014-10-31 | 00:01 | 82 | $6,063.22 @ 7.410 / 10/01/2014 - 10/31/2014 | $36.93 |
| System | 2014-11-30 | 00:01 | 82 | $6,063.22 @ 7.410 / 10/31/2014 - 11/30/2014 | $36.93 |
| System | 2014-12-31 | 00:01 | 82 | $6,063.22 @ 7.410 / 11/30/2014 - 12/31/2014 | $38.16 |
| System | 2015-01-05 | 00:01 | 82 | $6,063.22 @ 7.410 / 12/31/2014 - 01/05/2015 | $6.15 |
| System | 2015-01-31 | 00:01 | 82 | $6,063.22 @ 7.400 / 01/05/2015 - 01/31/2015 | $31.96 |
| System | 2015-02-03 | 00:01 | 82 | $6,063.22 @ 7.400 / 01/31/2015 - 02/03/2015 | $3.69 |
| System | 2015-02-28 | 00:01 | 82 | $6,063.22 @ 7.420 / 02/03/2015 - 02/28/2015 | $30.81 |
| System | 2015-03-31 | 00:01 | 82 | $6,063.22 @ 7.420 / 02/28/2015 - 03/31/2015 | $38.21 |

| System | 2015-04-30 | 00:01 | 82 | $6,063.22 @ 7.420 / 03/31/2015 - 04/30/2015 | $36.98 |
|--------|-----------|-------|----|--------------------------------------------|--------|
| System | 2015-05-01 | 00:01 | 82 | $6,063.22 @ 7.420 / 04/30/2015 - 05/01/2015 | $1.23 |
| System | 2015-05-31 | 00:01 | 82 | $6,063.22 @ 7.430 / 05/01/2015 - 05/31/2015 | $37.03 |
| System | 2015-06-30 | 00:01 | 82 | $6,063.22 @ 7.430 / 05/31/2015 - 06/30/2015 | $37.03 |
| System | 2015-07-31 | 00:01 | 82 | $6,063.22 @ 7.430 / 06/30/2015 - 07/31/2015 | $38.26 |
| System | 2015-08-03 | 00:01 | 82 | $6,063.22 @ 7.430 / 07/31/2015 - 08/03/2015 | $3.70 |
| System | 2015-08-31 | 00:01 | 82 | $6,063.22 @ 7.440 / 08/03/2015 - 08/31/2015 | $34.61 |
| System | 2015-09-30 | 00:01 | 82 | $6,063.22 @ 7.440 / 08/31/2015 - 09/30/2015 | $37.08 |
| System | 2015-10-01 | 00:01 | 82 | $6,063.22 @ 7.440 / 09/30/2015 - 10/01/2015 | $1.24 |
| System | 2015-11-04 | 00:01 | 82 | $6,063.22 @ 7.450 / 10/01/2015 - 11/04/2015 | $42.08 |
| System | 2015-11-05 | 00:01 | 82 | $6,063.22 @ 7.450 / 11/04/2015 - 11/05/2015 | $1.24 |
| System | 2015-12-31 | 00:01 | 82 | $6,063.22 @ 7.440 / 11/05/2015 - 12/31/2015 | $69.21 |
| System | 2016-01-01 | 00:01 | 82 | $6,063.22 @ 7.440 / 12/31/2015 - 01/01/2016 | $1.23 |
| System | 2016-01-31 | 00:01 | 82 | $6,063.22 @ 7.490 / 01/01/2016 - 01/31/2016 | $37.22 |
| System | 2016-02-01 | 00:01 | 82 | $6,063.22 @ 7.490 / 01/31/2016 - 02/01/2016 | $1.24 |
| System | 2016-02-29 | 00:01 | 82 | $6,063.22 @ 7.680 / 02/01/2016 - 02/29/2016 | $35.62 |
| System | 2016-03-31 | 00:01 | 82 | $6,063.22 @ 7.680 / 02/29/2016 - 03/31/2016 | $39.44 |
| System | 2016-04-01 | 00:01 | 82 | $6,063.22 @ 7.680 / 03/31/2016 - 04/01/2016 | $1.27 |
| System | 2016-04-30 | 00:01 | 82 | $6,063.22 @ 7.677 / 04/01/2016 - 04/30/2016 | $36.88 |
| System | 2016-05-02 | 00:01 | 82 | $6,063.22 @ 7.677 / 04/30/2016 - 05/02/2016 | $2.54 |
| System | 2016-05-31 | 00:01 | 82 | $6,063.22 @ 7.690 / 05/02/2016 - 05/31/2016 | $36.94 |
| System | 2016-06-30 | 00:01 | 82 | $6,063.22 @ 7.690 / 05/31/2016 - 06/30/2016 | $38.22 |
| System | 2016-07-01 | 00:01 | 82 | $6,063.22 @ 7.690 / 06/30/2016 - 07/01/2016 | $1.27 |
| System | 2016-08-01 | 00:01 | 82 | $6,063.22 @ 7.720 / 07/01/2016 - 08/01/2016 | $39.65 |
| System | 2016-08-19 | 00:00 | 12 | Interest Office Payment | $135.00 |
| System | 2016-08-19 | 00:01 | 82 | $6,063.22 @ 7.720 / 08/01/2016 - 08/19/2016 | $23.02 |
| System | 2016-08-31 | 00:01 | 82 | $6,063.22 @ 7.720 / 08/19/2016 - 08/31/2016 | $15.35 |
| System | 2016-09-01 | 00:01 | 82 | $6,063.22 @ 7.720 / 08/31/2016 - 09/01/2016 | $1.28 |
| System | 2016-09-21 | 00:00 | 12 | Interest Office Payment | $135.00 |
| System | 2016-09-21 | 00:01 | 82 | $6,063.22 @ 7.750 / 09/01/2016 - 09/21/2016 | $25.68 |
| System | 2016-09-30 | 00:01 | 82 | $6,063.22 @ 7.750 / 09/21/2016 - 09/30/2016 | $11.55 |
| System | 2016-10-01 | 00:01 | 82 | $6,063.22 @ 7.750 / 09/30/2016 - 10/01/2016 | $1.28 |
| System | 2016-10-08 | 00:00 | 44 | Interest Adjustment | $-17.32 |
| System | 2016-10-08 | 00:01 | 82 | $6,063.22 @ 7.770 / 10/01/2016 - 10/08/2016 | $9.01 |
| System | 2016-10-19 | 00:00 | 34 | FILE SUMCOM CMKR | $165.00 |
| System | 2016-10-19 | 00:01 | 82 | $6,063.22 @ 7.770 / 10/08/2016 - 10/19/2016 | $14.16 |
| System | 2016-10-31 | 00:01 | 82 | $6,063.22 @ 7.770 / 10/19/2016 - 10/31/2016 | $15.45 |
| System | 2016-11-01 | 00:01 | 82 | $6,063.22 @ 7.770 / 10/31/2016 - 11/01/2016 | $1.29 |
| System | 2016-11-14 | 00:00 | 34 | SHERRIFF FEES | $60.00 |
| System | 2016-11-14 | 00:01 | 82 | $6,063.22 @ 7.780 / 11/01/2016 - 11/14/2016 | $16.76 |
| System | 2016-11-30 | 00:00 | 34 | SERV SUMM CMKR | $60.00 |
| System | 2016-11-30 | 00:01 | 82 | $6,063.22 @ 7.780 / 11/14/2016 - 11/30/2016 | $20.62 |
| System | 2016-12-31 | 00:01 | 82 | $6,063.22 @ 7.780 / 11/30/2016 - 12/31/2016 | $39.95 |
| System | 2017-01-01 | 00:01 | 82 | $6,063.22 @ 7.780 / 12/31/2016 - 01/01/2017 | $1.29 |
| System | 2017-01-31 | 00:01 | 82 | $6,063.22 @ 7.870 / 01/01/2017 - 01/31/2017 | $39.22 |
| System | 2017-02-01 | 00:01 | 82 | $6,063.22 @ 7.870 / 01/31/2017 - 02/01/2017 | $1.31 |
| System | 2017-02-22 | 00:00 | 34 | SERVING SUMMONS | $50.00 |
| System | 2017-02-22 | 00:01 | 82 | $6,063.22 @ 8.020 / 02/01/2017 - 02/22/2017 | $27.98 |

| System | 2017-02-28 | 00:01 | 82 | $6,063.22 @ 8.020 / 02/22/2017 - 02/28/2017 | $7.99 |
| System | 2017-03-01 | 00:01 | 82 | $6,063.22 @ 8.020 / 02/28/2017 - 03/01/2017 | $1.33 |
| System | 2017-03-31 | 00:01 | 82 | $6,063.22 @ 8.030 / 03/01/2017 - 03/31/2017 | $40.02 |
| System | 2017-04-01 | 00:00 | 39 | COST ADJUSTMENT | $-335.00 |
| System | 2017-04-01 | 00:01 | 82 | $6,063.22 @ 8.030 / 03/31/2017 - 04/01/2017 | $1.33 |
| System | 2017-04-30 | 00:01 | 82 | $6,063.22 @ 8.040 / 04/01/2017 - 04/30/2017 | $38.73 |
| System | 2017-05-01 | 00:01 | 82 | $6,063.22 @ 8.040 / 04/30/2017 - 05/01/2017 | $1.34 |
| System | 2017-05-10 | 00:01 | 82 | $6,063.22 @ 8.230 / 05/01/2017 - 05/10/2017 | $12.30 |

# EXHIBIT 8

(Page 2 of 16)

From: ████4175        Page: 1/10     Date: 7/20/2007 4:12:17 PM

# EXHIBIT 1

| * Cosigned *    Loan Request/Credit Agreement – Information Page |
|---|

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Education Maximizer Undergraduate Loan                     Academic Period: ████/2008

Lender: Bank of America, N.A.          School: CHRISTIAN BROTHERS UNIVERSITY

Loan Amount Requested: $4500.00        Repayment Option: Full Deferral

Deferral Period Margin: 7.25      Repayment Period Margin: 7.25      Loan Origination Fee Percentage: 10.50

### STUDENT BORROWER INFORMATION

Borrower Name: Alisha D Waddell          Home Address: ████
Social Security #: ████4440              Date of Birth: ████1989      Home Telephone: ████8015
Mobile Telephone:                        E-mail Address:
Borrower Citizenship (check one box):  ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Glenda G Waddell          Reference Home Tel #: ████        Work Tel #:

Reference Street Address: ████
Reference City/State/Zip: ████

### COSIGNER INFORMATION (Must be age of majority in state of residence)

Cosigner Name: James Waddell            Home Address: ████
Social Security #: ████1764             Date of Birth: ████1938      Home Telephone: ████2184
Mobile Telephone:                       E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy?  ☒ No    ☐ Yes
Current Employer: RETIRED                                       Employer Telephone: ████
Current Position: Retired                Years There: 7 Years
Years at Previous Employment: 0 Years

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this
obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):  ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note:  Personal reference name and address cannot match that of the Borrower.

Personal Reference Name: James D Waddell          Reference Home Tel #: ████        Work Tel #:

Reference Street Address: ████
Reference City/State/Zip: ████

**Borrower and Cosigner:  Read and, where indicated, sign and date the next page.**

LENDER COPY

PND1_BD_07-08_CSX1_F_X_WADDELL_████1939.pdf

BKXUDP

EXHIBIT 1

(Page 3 of 16)

From: ████44175     Page: 2/10     Date: 7/20/2007 4:12:17 PM

---

## * Cosigned *   Loan Request/Credit Agreement – Signature Page

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all seven (7) pages of this Loan Request/Credit Agreement BK.07-08.CSX1.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

### FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

---

**NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley):**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si es obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsibilidad de la deuda.

---

For purposes of the following notices, "you" means the Borrower and Cosigner, not the Lender.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS – NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page (and the Information Page) With Proof of Income and Other Information (if applicable)
FAX TO: 800-704-9406

Signature of Borrower _Alisha Waddell_     Date _7-20-07_

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner _Jamie M Waddell_     Date _7-20-07_

BK.07-08.CSX1.10DC.0107          LENDER COPY

PN01_BD_07-08_CSX1_F_X_WADDELL_A105401939.pdf          BKXUDP

# EXHIBIT 1

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the student Borrower without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. **If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement.** If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check that disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).
(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment

option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, joint and serial (associates to bachelors) degree recipients may continue in-school deferment while completing their second degree, up to the 5-year or 5 ½- year maximum.
(b) *Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the

# EXHIBIT 1

principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

E. TERMS OF REPAYMENT:

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates; and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late

fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

K. INFORMATION:

1. I must update the information I provided to you whenever you ask me to do so.

# EXHIBIT 1

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against

the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the student Borrower fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to the Borrower and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender. You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

M. DISCLOSURE NOTICES

> ALL APPLICANTS:
> IMPORTANT FEDERAL LAW NOTICE—
>
> *Important information about procedures for opening a new account:*

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

# EXHIBIT 1

> **To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial Institutions to obtain, verify, and record Information that identifies each person who opens an account.**
>
> *What this means for you:*
> **When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished me my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for student Borrowers (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

**By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.**

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the Lender.

FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:

*NOTICE:* You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the Borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

# EXHIBIT 1

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.
Name of Creditor: Bank of America, National Association, and its successors and assigns.
Date: If the loan is disbursed by check, the date of the check. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.
Kind of Debt: Education loan.
Total of Payments: The Loan Amount Requested set forth on the first page of this Credit Agreement (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Credit Agreement.
**FOR OBLIGORS COSIGNING IN VERMONT:**

### NOTICE TO COSIGNER

**YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**
**FOR OBLIGORS COSIGNING IN WEST VIRGINIA:**

---

**NOTICE TO COSIGNER**
You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the Borrower. The creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

---

# EXHIBIT 9



This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

07/31/2007
*0461*
3207

[0872]   07/30/2007
6090

Bank of America

PAY   FOUR THOUSAND FIVE HUNDRED AND .00 DOLLARS

TO THE ORDER OF
AISHA D MADDELL & JAMES MADDELL
137 CHESTNUT CIR
LINCOLN AR 72744

07/31/07

NO. 00291254

$ 4,500.00



# EXHIBIT 10

EX-99.28 24 d720157.htm POOL SUPPLEMENT (JPMORGAN CHASE)

**EXHIBIT 99.28**

### POOL SUPPLEMENT
### JPMORGAN CHASE BANK, N.A.

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Amended and Restated Note Purchase Agreement dated as of May 1, 2002, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (the "Agreement"), by and between The First Marblehead Corporation and JPMorgan Chase Bank, N.A., successor by merger to Bank One, N.A. (Columbus, Ohio) (the "Program Lender"). This Supplement is dated as of September 20, 2007. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank One Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any of the Program Lender's rights in or to the certain account pledged by TERI as collateral for its obligations under the Guaranty Agreement (the "Pledged Account"), in each case specifically relating to the Transferred Bank One Loans. The Depositor in turn will sell the Transferred Bank One Loans to a Purchaser Trust. The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank One Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.05 of the Agreement.

Article 3: Representations and Warranties.

3.01.        By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Purchaser Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02.        By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)        The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank One Loans.

(b)        The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)        The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank One Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4:  Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank One Loans included in the Pool.

### Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank One Loans described in Schedule 1, other than any right to obtain servicing after the date hereof.  It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement.  The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to the Pledged Account pledged under the Guaranty Agreement and under the Deposit and Security Agreement that relate to the Transferred Bank One Loans, and the Program Lender hereby releases any security interest it may have in such Pledged Account relating to the Transferred Bank One Loans.  The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

Unassociated Document

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By:/s/ John A. Foxgrover
_____
John A. Foxgrover
Senior Vice President

JPMORGAN CHASE BANK, N.A, as successor by
merger to BANK ONE, N.A. (Columbus, Ohio),

By:/s/ Joseph F. Sergi
_____
Name: Joseph F. Sergi
Title: Vice President

THE NATIONAL COLLEGIATE FUNDING LLC

By:GATE Holdings, Inc., Member

By:/s/ John A. Foxgrover
_____
John A. Foxgrover
Vice President

Unassociated Document

Schedule I

[Transferred JPMorgan Chase Bank Loans]

**National Collegiate Student Loan Trust 2007-3**

**Roster:** CHASE BANK

| Lender | Lender Code | Marketer | Loan Product | BSSN |
|--------|-------------|----------|--------------|------|
| CHASE BANK | 804976QT | Chase Bank | DTC - Ed One - Undergraduate | 4440 |

| GUARREF | Disb. Date | Tier | Repay Type | Margin |
|---------|-----------|------|-----------|--------|
| 5346549 | 7/18/2007 | 12 | DP | 7.25% |

| Fee to Borrower | TERI Admin Fee | Marketing Fee | Total Gross Disbursed | Total Net Disbursed |
|-----------------|----------------|---------------|----------------------|---------------------|
| 10.50% | 2.75% | 7.25% | 9497.21 | 8500.003 |

| Total Net Principal | Total Capitalized Interest | Total Outstanding Gross Principal | Total Outstanding Unpaid Interest | Administrative Fee Reimbursement on 0% Fee Loans |
|---------------------|---------------------------|-----------------------------------|-----------------------------------|--------------------------------------------------|
| 8500.003 | 0 | 9497.21 | 209.32 | 0 |

| | | | | **Final Reconciliation Settlement Figures** |
|---|---|---|---|---|
| Origination Fee Reimbursement Due Bank | Total Marketing Fees | Marketing Fees Due FMC | Marketing Fees Due Bank | Total Amount Due Bank |
| 100 | 616.2502 | 0 | 616.2502 | 10422.7802 |

# EXHIBIT 11

EX-99.4 9 d719503.htm DEPOSIT AND SALE AGREEMENT

EXHIBIT 99.4

## DEPOSIT AND SALE AGREEMENT

## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of September 20, 2007, between The National Collegiate Funding LLC, as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2007-4, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

### ARTICLE I
### TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

### ARTICLE II
### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of September 1, 2007 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

### ARTICLE III
### SALE AND PURCHASE

Section 3.01.       Sale of Loans.  The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.       Assignment of Rights.  The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.       Settlement of the Payment.  The Purchaser shall pay the Seller the purchase price set forth in Article 2 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.       Assistance by Seller.  Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

### ARTICLE IV
### REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.    General. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

    (a)    The Seller is duly organized and existing under the laws of the State of Delaware; and

    (b)    The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.    Loan Representations. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.    Covenants. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Controlling Party in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

ARTICLE V
PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee and Wilmington Trust Company (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

ARTICLE VI
LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

    (a)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

    (b)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION
## OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Controlling Party pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X

## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2007-4
> c/o Wilmington Trust Company, as Owner Trustee
> Rodney Square North
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street – 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street – 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto with the consent of the Note Insurer, but without the consent of the Noteholders, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of such Noteholders; provided that such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the percentage interest in the Certificates and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders,

or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Note Insurer and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

ARTICLE XII
ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

ARTICLE XIII
THIRD PARTY BENEFICIARY

The Noteholders and the Note Insurer are third party beneficiaries hereof.

ARTICLE XIV
GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

ARTICLE XV
LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC,
as Seller

By: GATE Holdings, Inc., Member


By: /s/ John A. Foxgrover
     Name:  John A. Foxgrover
     Title:  Vice President

THE NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2007-4, as Purchaser

By: Wilmington Trust Company, not in its
     individual capacity but solely as Owner
     Trustee

By: /s/ Patricia A. Evans
     Name:  Patricia A. Evans
     Title:  Vice President

## SCHEDULE A

### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Private Loan Program, TERI (School Channel) Loan Program and TERI ISLP Loan Program.

- RBS Citizens, N.A., successor by merger to Charter One Bank, N.A., dated September 20, 2007, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Citibank Education Assistance Loan Program, College Loan Corporation Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, Astrive Education (f/k/a START) Loan Program, AstriveAlliance Education (f/k/a START) Loan Program, Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program and ThinkFinancial Alternative Loan Program.

- RBS Citizens, N.A., successor by merger to Citizens Bank of Rhode Island, dated September 20, 2007, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, Navy Federal Alternative Loan Program, FinanSure Alternative Loan Program, Xanthus Alternative Loan Program and Penn State Undergraduate Loan Program.

- Comerica Bank, dated September 20, 2007, for loans that were originated under Comerica Bank's Private Loan Program.

- HSBC Bank USA, National Association, dated September 20, 2007, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated September 20, 2007, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated September 20, 2007, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.) dated September 20, 2007, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated September 20, 2007, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated September 20, 2007, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Bank Referral Loan Program, including the Astute Private Loan Program and Student Lending Works Private Loan Program.

- PNC Bank, N.A., dated September 20, 2007, for loans that were originated under PNC Bank's PNC Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated September 20, 2007, for loans that were originated under Sovereign Bank's Alternative Student Loan Program.

- SunTrust Bank, dated September 20, 2007, for loans that were originated under the SunTrust Loan Program.

- TCF National Bank, dated September 20, 2007, for loans that were originated under the TCF National Bank Alternative Loan Program.

- Union Federal Savings Bank, dated September 20, 2007, for loans that were originated under the UFSB Astrive Loan Program.

## SCHEDULE B

### *Note Purchase Agreements*

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education (f/k/a START) Loan Programs.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the Charter One Bank Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program, and ThinkFinancial Alternative Loan Program).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- Comerica Bank, dated June 30, 2006, for loans that were originated under Comerica Bank's Private Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated July 1, 2006, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A., (successor to Bank One, N.A.), dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under the National City Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under the National City Referral Loan Program, including the Astute Private Loan Program and Student Lending Works Private Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Student Loan

Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under the SunTrust Loan Program.

- TCF National Bank, dated July 22, 2005, for loans that were originated under the TCF National Bank Alternative Loan Program.

- Union Federal Savings Bank, dated March 26, 2007, for loans that were originated under the UFSB Astrive Loan Program.

# EXHIBIT 12

# Loan Payment History Report
## Date: 2017-05-10

| | | | |
|---|---|---|---|
| Account Number: | ███████1000 | | |
| Social Security Number: | ████4440 | Product: | DFU DIRECT TO CONSUMER UNDERGRAD |
| Name: | WADDELL, ALISHA | Officer Code: | 777074 |
| Birth Date: | 1989-███ | School: | CHRISTIAN BROTHERS UNIV |
| Address 1: | C/O MCGAHA  COREY | Program Year: | 2007-08 |
| Address 2: | | | |
| City: | LITTLE ROCK | Variable Rate Code: | F3 MONTHLY LIBOR |
| State: | AR | Interest Rate: | 8.23% |
| Zip Code: | ██████ | | |
| Cosigner Name: | WADDELL, JAMES | | |
| Social Security Number: | ████1764 | | |
| Address 1: | C/O MCGAHA  COREY | | |
| Address 2: | | | |
| City: | LITTLE ROCK | | |
| State: | AR | | |
| Zip Code: | █████ | | |
| | | Last Payment Date: | 2016-09-21 |
| | | Last Payment Amount: | $135.00 |
| Contract Date: | 2007-07-25 | Last Interest Date: | 2017-05-10 |
| Vendor Placement Date: | 2015-08-20 | Accrued Interest: | $2,863.30 |
| Charge Off Date: | 2011-02-01 | Recovered Interest: | $691.01 |
| Charge Off Amount: | $6,212.01 | Net Interest: | $2,172.29 |
| Recovered Principal: | $148.79 | Associated Costs: | $0.00 |
| Current Principle: | $6,063.22 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2007-07-25 | Net Costs: | $0.00 |
| Disbursement Amount: | $5,027.93 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2011-02-28 | 00:01 | 82 | $6,212.01 @ 7.510 / 02/01/2011 - 02/28/2011 | $34.51 |
| System | 2011-03-01 | 00:01 | 82 | $6,212.01 @ 7.510 / 02/28/2011 - 03/01/2011 | $1.28 |
| System | 2011-03-31 | 00:01 | 82 | $6,212.01 @ 7.510 / 03/01/2011 - 03/31/2011 | $38.34 |
| System | 2011-04-01 | 00:01 | 82 | $6,212.01 @ 7.510 / 03/31/2011 - 04/01/2011 | $1.28 |
| System | 2011-04-08 | 00:00 | 12 | Interest Office Payment | $75.41 |
| System | 2011-04-08 | 00:00 | 16 | Principal Office Payment | $28.19 |
| System | 2011-04-29 | 00:00 | 16 | Principal Office Payment | $51.80 |
| System | 2011-04-30 | 00:01 | 82 | $6,132.02 @ 7.510 / 04/01/2011 - 04/30/2011 | $36.59 |
| System | 2011-05-02 | 00:01 | 82 | $6,132.02 @ 7.490 / 04/30/2011 - 05/02/2011 | $2.52 |

| System | 2011-05-31 | 00:00 | 12 | Interest Office Payment | $51.80 |
|---|---|---|---|---|---|
| System | 2011-05-31 | 00:01 | 82 | $6,132.02 @ 7.490 / 05/02/2011 - 05/31/2011 | $36.49 |
| System | 2011-06-01 | 00:01 | 82 | $6,132.02 @ 7.490 / 05/31/2011 - 06/01/2011 | $1.26 |
| System | 2011-06-30 | 00:00 | 12 | Interest Office Payment | $51.80 |
| System | 2011-06-30 | 00:01 | 82 | $6,132.02 @ 7.460 / 06/01/2011 - 06/30/2011 | $36.35 |
| System | 2011-07-01 | 00:01 | 82 | $6,132.02 @ 7.460 / 06/30/2011 - 07/01/2011 | $1.25 |
| System | 2011-07-31 | 00:01 | 82 | $6,132.02 @ 7.440 / 07/01/2011 - 07/31/2011 | $37.50 |
| System | 2011-08-01 | 00:00 | 12 | Interest Office Payment | $49.61 |
| System | 2011-08-01 | 00:00 | 16 | Principal Office Payment | $2.19 |
| System | 2011-08-01 | 00:01 | 82 | $6,132.02 @ 7.440 / 07/31/2011 - 08/01/2011 | $1.25 |
| System | 2011-08-30 | 00:00 | 16 | Principal Office Payment | $51.80 |
| System | 2011-08-31 | 00:01 | 82 | $6,078.03 @ 7.440 / 08/01/2011 - 08/31/2011 | $37.17 |
| System | 2011-09-01 | 00:01 | 82 | $6,078.03 @ 7.440 / 08/31/2011 - 09/01/2011 | $1.24 |
| System | 2011-09-30 | 00:00 | 12 | Interest Office Payment | $51.80 |
| System | 2011-09-30 | 00:01 | 82 | $6,078.03 @ 7.440 / 09/01/2011 - 09/30/2011 | $35.93 |
| System | 2011-10-03 | 00:01 | 82 | $6,078.03 @ 7.440 / 09/30/2011 - 10/03/2011 | $3.72 |
| System | 2011-10-31 | 00:00 | 12 | Interest Office Payment | $51.80 |
| System | 2011-10-31 | 00:01 | 82 | $6,078.03 @ 7.470 / 10/03/2011 - 10/31/2011 | $34.83 |
| System | 2011-11-01 | 00:01 | 82 | $6,078.03 @ 7.470 / 10/31/2011 - 11/01/2011 | $1.24 |
| System | 2011-11-30 | 00:00 | 12 | Interest Office Payment | $46.70 |
| System | 2011-11-30 | 00:00 | 16 | Principal Office Payment | $5.10 |
| System | 2011-11-30 | 00:01 | 82 | $6,078.03 @ 7.490 / 11/01/2011 - 11/30/2011 | $36.17 |
| System | 2011-12-01 | 00:01 | 82 | $6,072.93 @ 7.490 / 11/30/2011 - 12/01/2011 | $1.25 |
| System | 2011-12-29 | 00:00 | 12 | Interest Office Payment | $1.25 |
| System | 2011-12-29 | 00:00 | 16 | Principal Office Payment | $50.55 |
| System | 2011-12-31 | 00:01 | 82 | $6,022.38 @ 7.500 / 12/01/2011 - 12/31/2011 | $37.12 |
| System | 2012-01-03 | 00:01 | 82 | $6,022.38 @ 7.520 / 12/31/2011 - 01/03/2012 | $3.71 |
| System | 2012-01-30 | 00:00 | 12 | Interest Office Payment | $40.84 |
| System | 2012-01-30 | 00:00 | 16 | Principal Office Payment | $10.96 |
| System | 2012-01-31 | 00:01 | 82 | $6,011.42 @ 7.520 / 01/03/2012 - 01/31/2012 | $34.58 |
| System | 2012-02-01 | 00:01 | 82 | $6,011.42 @ 7.520 / 01/31/2012 - 02/01/2012 | $1.24 |
| System | 2012-02-06 | 00:00 | 13 | NSF Principal Office Payment | $51.80 |
| System | 2012-02-29 | 00:01 | 82 | $6,063.22 @ 7.550 / 02/01/2012 - 02/29/2012 | $35.02 |
| System | 2012-03-01 | 00:01 | 82 | $6,063.22 @ 7.510 / 02/29/2012 - 03/01/2012 | $1.24 |
| System | 2012-03-31 | 00:01 | 82 | $6,063.22 @ 7.510 / 03/01/2012 - 03/31/2012 | $37.32 |
| System | 2012-04-02 | 00:01 | 82 | $6,063.22 @ 7.510 / 03/31/2012 - 04/02/2012 | $2.49 |
| System | 2012-04-30 | 00:01 | 82 | $6,063.22 @ 7.490 / 04/02/2012 - 04/30/2012 | $34.74 |
| System | 2012-05-02 | 00:01 | 82 | $6,063.22 @ 7.490 / 04/30/2012 - 05/02/2012 | $2.48 |
| System | 2012-05-31 | 00:01 | 82 | $6,063.22 @ 7.490 / 05/02/2012 - 05/31/2012 | $35.98 |
| System | 2012-06-01 | 00:01 | 82 | $6,063.22 @ 7.490 / 05/31/2012 - 06/01/2012 | $1.24 |
| System | 2012-06-30 | 00:01 | 82 | $6,063.22 @ 7.490 / 06/01/2012 - 06/30/2012 | $35.98 |
| System | 2012-07-01 | 00:01 | 82 | $6,063.22 @ 7.490 / 06/30/2012 - 07/01/2012 | $1.24 |
| System | 2012-07-02 | 00:01 | 82 | $6,063.22 @ 7.490 / 07/01/2012 - 07/02/2012 | $1.24 |
| System | 2012-07-31 | 00:01 | 82 | $6,063.22 @ 7.490 / 07/02/2012 - 07/31/2012 | $35.98 |
| System | 2012-08-01 | 00:01 | 82 | $6,063.22 @ 7.490 / 07/31/2012 - 08/01/2012 | $1.24 |
| System | 2012-08-31 | 00:01 | 82 | $6,063.22 @ 7.500 / 08/01/2012 - 08/31/2012 | $37.27 |
| System | 2012-09-04 | 00:01 | 82 | $6,063.22 @ 7.500 / 08/31/2012 - 09/04/2012 | $4.97 |
| System | 2012-09-30 | 00:01 | 82 | $6,063.22 @ 7.500 / 09/04/2012 - 09/30/2012 | $32.30 |

| System | 2012-10-01 | 00:01 | 82 | $6,063.22 @ 7.500 / 09/30/2012 - 10/01/2012 | $1.24 |
| System | 2012-10-31 | 00:01 | 82 | $6,063.22 @ 7.480 / 10/01/2012 - 10/31/2012 | $37.17 |
| System | 2012-11-06 | 00:01 | 82 | $6,063.22 @ 7.480 / 10/31/2012 - 11/06/2012 | $7.43 |
| System | 2012-11-08 | 00:00 | 47 | Check Charge/Fee Adjustment | $-102.52 |
| System | 2012-11-08 | 00:01 | 82 | $6,063.22 @ 7.460 / 11/06/2012 - 11/08/2012 | $2.47 |
| System | 2012-11-09 | 00:01 | 82 | $6,063.22 @ 7.460 / 11/08/2012 - 11/09/2012 | $1.24 |
| System | 2012-12-03 | 00:01 | 82 | $6,063.22 @ 7.460 / 11/09/2012 - 12/03/2012 | $29.66 |
| System | 2012-12-17 | 00:01 | 82 | $6,063.22 @ 7.460 / 12/03/2012 - 12/17/2012 | $17.30 |
| System | 2012-12-31 | 00:01 | 82 | $6,063.22 @ 7.460 / 12/17/2012 - 12/31/2012 | $17.30 |
| System | 2013-01-31 | 00:01 | 82 | $6,063.22 @ 7.460 / 12/31/2012 - 01/31/2013 | $38.42 |
| System | 2013-02-06 | 00:01 | 82 | $6,063.22 @ 7.460 / 01/31/2013 - 02/06/2013 | $7.44 |
| System | 2013-02-07 | 00:01 | 82 | $6,063.22 @ 7.460 / 02/06/2013 - 02/07/2013 | $1.24 |
| System | 2013-02-13 | 00:01 | 82 | $6,063.22 @ 7.460 / 02/07/2013 - 02/13/2013 | $7.44 |
| System | 2013-02-28 | 00:01 | 82 | $6,063.22 @ 7.460 / 02/13/2013 - 02/28/2013 | $18.59 |
| System | 2013-03-01 | 00:01 | 82 | $6,063.22 @ 7.460 / 02/28/2013 - 03/01/2013 | $1.24 |
| System | 2013-03-04 | 00:01 | 82 | $6,063.22 @ 7.450 / 03/01/2013 - 03/04/2013 | $3.71 |
| System | 2013-03-31 | 00:01 | 82 | $6,063.22 @ 7.450 / 03/04/2013 - 03/31/2013 | $33.41 |
| System | 2013-04-30 | 00:01 | 82 | $6,063.22 @ 7.450 / 03/31/2013 - 04/30/2013 | $37.13 |
| System | 2013-05-07 | 00:01 | 82 | $6,063.22 @ 7.450 / 04/30/2013 - 05/07/2013 | $8.66 |
| System | 2013-05-31 | 00:01 | 82 | $6,063.22 @ 7.450 / 05/07/2013 - 05/31/2013 | $29.70 |
| System | 2013-06-30 | 00:01 | 82 | $6,063.22 @ 7.450 / 05/31/2013 - 06/30/2013 | $37.13 |
| System | 2013-07-04 | 00:01 | 82 | $6,063.22 @ 7.450 / 06/30/2013 - 07/04/2013 | $4.95 |
| System | 2013-07-31 | 00:01 | 82 | $6,063.22 @ 7.440 / 07/04/2013 - 07/31/2013 | $33.37 |
| System | 2013-08-31 | 00:01 | 82 | $6,063.22 @ 7.440 / 07/31/2013 - 08/31/2013 | $38.31 |
| System | 2013-09-30 | 00:01 | 82 | $6,063.22 @ 7.440 / 08/31/2013 - 09/30/2013 | $37.08 |
| System | 2013-10-09 | 00:01 | 82 | $6,063.22 @ 7.440 / 09/30/2013 - 10/09/2013 | $11.12 |
| System | 2013-10-31 | 00:01 | 82 | $6,063.22 @ 7.430 / 10/09/2013 - 10/31/2013 | $27.15 |
| System | 2013-11-30 | 00:01 | 82 | $6,063.22 @ 7.430 / 10/31/2013 - 11/30/2013 | $37.03 |
| System | 2013-12-04 | 00:01 | 82 | $6,063.22 @ 7.430 / 11/30/2013 - 12/04/2013 | $4.94 |
| System | 2013-12-31 | 00:01 | 82 | $6,063.22 @ 7.420 / 12/04/2013 - 12/31/2013 | $33.28 |
| System | 2014-01-31 | 00:01 | 82 | $6,063.22 @ 7.420 / 12/31/2013 - 01/31/2014 | $38.21 |
| System | 2014-02-28 | 00:01 | 82 | $6,063.22 @ 7.420 / 01/31/2014 - 02/28/2014 | $34.51 |
| System | 2014-04-03 | 00:01 | 82 | $6,063.22 @ 7.420 / 02/28/2014 - 04/03/2014 | $41.91 |
| System | 2014-05-07 | 00:01 | 82 | $6,063.22 @ 7.410 / 04/03/2014 - 05/07/2014 | $41.85 |
| System | 2014-05-21 | 00:01 | 82 | $6,063.22 @ 7.400 / 05/07/2014 - 05/21/2014 | $17.21 |
| System | 2014-07-31 | 00:01 | 82 | $6,063.22 @ 7.400 / 05/21/2014 - 07/31/2014 | $87.28 |
| System | 2014-08-31 | 00:01 | 82 | $6,063.22 @ 7.400 / 07/31/2014 - 08/31/2014 | $38.11 |
| System | 2014-09-02 | 00:01 | 82 | $6,063.22 @ 7.400 / 08/31/2014 - 09/02/2014 | $2.46 |
| System | 2014-09-30 | 00:01 | 82 | $6,063.22 @ 7.410 / 09/02/2014 - 09/30/2014 | $34.47 |
| System | 2014-10-01 | 00:01 | 82 | $6,063.22 @ 7.410 / 09/30/2014 - 10/01/2014 | $1.23 |
| System | 2014-10-31 | 00:01 | 82 | $6,063.22 @ 7.410 / 10/01/2014 - 10/31/2014 | $36.93 |
| System | 2014-11-30 | 00:01 | 82 | $6,063.22 @ 7.410 / 10/31/2014 - 11/30/2014 | $36.93 |
| System | 2014-12-31 | 00:01 | 82 | $6,063.22 @ 7.410 / 11/30/2014 - 12/31/2014 | $38.16 |
| System | 2015-01-05 | 00:01 | 82 | $6,063.22 @ 7.410 / 12/31/2014 - 01/05/2015 | $6.15 |
| System | 2015-01-31 | 00:01 | 82 | $6,063.22 @ 7.400 / 01/05/2015 - 01/31/2015 | $31.96 |
| System | 2015-02-03 | 00:01 | 82 | $6,063.22 @ 7.400 / 01/31/2015 - 02/03/2015 | $3.69 |
| System | 2015-02-28 | 00:01 | 82 | $6,063.22 @ 7.420 / 02/03/2015 - 02/28/2015 | $30.81 |
| System | 2015-03-31 | 00:01 | 82 | $6,063.22 @ 7.420 / 02/28/2015 - 03/31/2015 | $38.21 |

| | | | | | |
|---|---|---|---|---|---|
| System | 2015-04-30 | 00:01 | 82 | $6,063.22 @ 7.420 / 03/31/2015 - 04/30/2015 | $36.98 |
| System | 2015-05-01 | 00:01 | 82 | $6,063.22 @ 7.420 / 04/30/2015 - 05/01/2015 | $1.23 |
| System | 2015-05-31 | 00:01 | 82 | $6,063.22 @ 7.430 / 05/01/2015 - 05/31/2015 | $37.03 |
| System | 2015-06-30 | 00:01 | 82 | $6,063.22 @ 7.430 / 05/31/2015 - 06/30/2015 | $37.03 |
| System | 2015-07-31 | 00:01 | 82 | $6,063.22 @ 7.430 / 06/30/2015 - 07/31/2015 | $38.26 |
| System | 2015-08-03 | 00:01 | 82 | $6,063.22 @ 7.430 / 07/31/2015 - 08/03/2015 | $3.70 |
| System | 2015-08-31 | 00:01 | 82 | $6,063.22 @ 7.440 / 08/03/2015 - 08/31/2015 | $34.61 |
| System | 2015-09-30 | 00:01 | 82 | $6,063.22 @ 7.440 / 08/31/2015 - 09/30/2015 | $37.08 |
| System | 2015-10-01 | 00:01 | 82 | $6,063.22 @ 7.440 / 09/30/2015 - 10/01/2015 | $1.24 |
| System | 2015-11-04 | 00:01 | 82 | $6,063.22 @ 7.450 / 10/01/2015 - 11/04/2015 | $42.08 |
| System | 2015-11-05 | 00:01 | 82 | $6,063.22 @ 7.450 / 11/04/2015 - 11/05/2015 | $1.24 |
| System | 2015-12-31 | 00:01 | 82 | $6,063.22 @ 7.440 / 11/05/2015 - 12/31/2015 | $69.21 |
| System | 2016-01-01 | 00:01 | 82 | $6,063.22 @ 7.440 / 12/31/2015 - 01/01/2016 | $1.23 |
| System | 2016-01-31 | 00:01 | 82 | $6,063.22 @ 7.490 / 01/01/2016 - 01/31/2016 | $37.22 |
| System | 2016-02-01 | 00:01 | 82 | $6,063.22 @ 7.490 / 01/31/2016 - 02/01/2016 | $1.24 |
| System | 2016-02-29 | 00:01 | 82 | $6,063.22 @ 7.680 / 02/01/2016 - 02/29/2016 | $35.62 |
| System | 2016-03-31 | 00:01 | 82 | $6,063.22 @ 7.680 / 02/29/2016 - 03/31/2016 | $39.44 |
| System | 2016-04-01 | 00:01 | 82 | $6,063.22 @ 7.680 / 03/31/2016 - 04/01/2016 | $1.27 |
| System | 2016-04-30 | 00:01 | 82 | $6,063.22 @ 7.677 / 04/01/2016 - 04/30/2016 | $36.88 |
| System | 2016-05-02 | 00:01 | 82 | $6,063.22 @ 7.677 / 04/30/2016 - 05/02/2016 | $2.54 |
| System | 2016-05-31 | 00:01 | 82 | $6,063.22 @ 7.690 / 05/02/2016 - 05/31/2016 | $36.94 |
| System | 2016-06-30 | 00:01 | 82 | $6,063.22 @ 7.690 / 05/31/2016 - 06/30/2016 | $38.22 |
| System | 2016-07-01 | 00:01 | 82 | $6,063.22 @ 7.690 / 06/30/2016 - 07/01/2016 | $1.27 |
| System | 2016-08-01 | 00:01 | 82 | $6,063.22 @ 7.720 / 07/01/2016 - 08/01/2016 | $39.65 |
| System | 2016-08-19 | 00:00 | 12 | Interest Office Payment | $135.00 |
| System | 2016-08-19 | 00:01 | 82 | $6,063.22 @ 7.720 / 08/01/2016 - 08/19/2016 | $23.02 |
| System | 2016-08-31 | 00:01 | 82 | $6,063.22 @ 7.720 / 08/19/2016 - 08/31/2016 | $15.35 |
| System | 2016-09-01 | 00:01 | 82 | $6,063.22 @ 7.720 / 08/31/2016 - 09/01/2016 | $1.28 |
| System | 2016-09-21 | 00:00 | 12 | Interest Office Payment | $135.00 |
| System | 2016-09-21 | 00:01 | 82 | $6,063.22 @ 7.750 / 09/01/2016 - 09/21/2016 | $25.68 |
| System | 2016-09-30 | 00:01 | 82 | $6,063.22 @ 7.750 / 09/21/2016 - 09/30/2016 | $11.55 |
| System | 2016-10-01 | 00:01 | 82 | $6,063.22 @ 7.750 / 09/30/2016 - 10/01/2016 | $1.28 |
| System | 2016-10-08 | 00:00 | 44 | Interest Adjustment | $-17.32 |
| System | 2016-10-08 | 00:01 | 82 | $6,063.22 @ 7.770 / 10/01/2016 - 10/08/2016 | $9.01 |
| System | 2016-10-19 | 00:00 | 34 | FILE SUMCOM CMKR | $165.00 |
| System | 2016-10-19 | 00:01 | 82 | $6,063.22 @ 7.770 / 10/08/2016 - 10/19/2016 | $14.16 |
| System | 2016-10-31 | 00:01 | 82 | $6,063.22 @ 7.770 / 10/19/2016 - 10/31/2016 | $15.45 |
| System | 2016-11-01 | 00:01 | 82 | $6,063.22 @ 7.770 / 10/31/2016 - 11/01/2016 | $1.29 |
| System | 2016-11-14 | 00:00 | 34 | SHERRIFF FEES | $60.00 |
| System | 2016-11-14 | 00:01 | 82 | $6,063.22 @ 7.780 / 11/01/2016 - 11/14/2016 | $16.76 |
| System | 2016-11-30 | 00:00 | 34 | SERV SUMM CMKR | $60.00 |
| System | 2016-11-30 | 00:01 | 82 | $6,063.22 @ 7.780 / 11/14/2016 - 11/30/2016 | $20.62 |
| System | 2016-12-31 | 00:01 | 82 | $6,063.22 @ 7.780 / 11/30/2016 - 12/31/2016 | $39.95 |
| System | 2017-01-01 | 00:01 | 82 | $6,063.22 @ 7.780 / 12/31/2016 - 01/01/2017 | $1.29 |
| System | 2017-01-31 | 00:01 | 82 | $6,063.22 @ 7.870 / 01/01/2017 - 01/31/2017 | $39.22 |
| System | 2017-02-01 | 00:01 | 82 | $6,063.22 @ 7.870 / 01/31/2017 - 02/01/2017 | $1.31 |
| System | 2017-02-22 | 00:00 | 34 | SERVING SUMMONS | $50.00 |
| System | 2017-02-22 | 00:01 | 82 | $6,063.22 @ 8.020 / 02/01/2017 - 02/22/2017 | $27.98 |

| System | 2017-02-28 | 00:01 | 82 | $6,063.22 @ 8.020 / 02/22/2017 - 02/28/2017 | $7.99 |
| System | 2017-03-01 | 00:01 | 82 | $6,063.22 @ 8.020 / 02/28/2017 - 03/01/2017 | $1.33 |
| System | 2017-03-31 | 00:01 | 82 | $6,063.22 @ 8.030 / 03/01/2017 - 03/31/2017 | $40.02 |
| System | 2017-04-01 | 00:00 | 39 | COST ADJUSTMENT | $-335.00 |
| System | 2017-04-01 | 00:01 | 82 | $6,063.22 @ 8.030 / 03/31/2017 - 04/01/2017 | $1.33 |
| System | 2017-04-30 | 00:01 | 82 | $6,063.22 @ 8.040 / 04/01/2017 - 04/30/2017 | $38.73 |
| System | 2017-05-01 | 00:01 | 82 | $6,063.22 @ 8.040 / 04/30/2017 - 05/01/2017 | $1.34 |
| System | 2017-05-10 | 00:01 | 82 | $6,063.22 @ 8.230 / 05/01/2017 - 05/10/2017 | $12.30 |

# EXHIBIT 13

# EXHIBIT 1

NATIONAL COLLEGIATE STUDENT )
LOAN TRUST 2007-3, A Delaware )
Statutory Trust )

Plaintiff )       Docket #
)
)
v. )
)
)
)
ALISHA  WADDELL )
)
)
Defendant(s) )
)

AFFIDAVIT AND VERIFICATION OF ACCOUNT

STATE OF GEORGIA                    )
                                    )
COUNTY OF  GWINNETT                 )

BEFORE ME, the undersigned authority, personally appeared Affiant _____Dudley Turner_____,

who being first duly sworn, deposes and states:

1.      I am employed by Transworld Systems Inc. (hereinafter TSI), the Subservicer for

Plaintiff pertaining to the educational loan forming the subject matter of this action.

2.      TSI has been contracted to perform the duties of the Subservicer for Plaintiff by

U.S. Bank, National Association, the Special Servicer of Plaintiff.  TSI, as the Subservicer of the

Plaintiff, is the designated custodian of records for the Defendant's educational loan.

Additionally, TSI maintains the dedicated system of record for electronic transactions pertaining

to the Defendant's educational loan, including, but not necessarily limited to, payments, credits,

interest accrual and any other transactions that could impact the Defendant's educational loan.

Attached hereto as Exhibit "A" is a true and correct copy of confirmation of TSI's capacity as Subservicer.

3.     I am over the age of 18 and competent to testify to the matters stated herein.  As an employee of TSI, I am duly authorized by Plaintiff and U.S. Bank, National Association to make the representations contained in this Affidavit.

4.     I have access and training on the system of record utilized by TSI to enter and maintain loan account records and documentation concerning the Defendant's educational loan for the Plaintiff.

5.     I am familiar with the process by which TSI receives prior account records, including origination records from the time the loan was requested and/or disbursed to the Defendant and/or the student's school on their behalf.

6.     As custodian of records it is TSI's regularly-conducted business practice to incorporate prior loan records and/or documentation into TSI's business records.

7.     I am further competent and authorized to testify regarding  this educational loan through personal knowledge of the business records maintained by TSI as custodian of records, including electronic data provided to TSI related to the Defendant's educational loan, and the business records attached to this Affidavit.

8.     This lawsuit concerns an unpaid loan owed by Defendant ALISHA  WADDELL to Plaintiff.  Specifically, Defendant entered into an educational loan agreement at Defendant's special instance and request.  A loan was extended for Defendant to use pursuant to the terms of the loan agreements.  Defendant has failed, refused, and/or neglected to pay the balance pursuant to the agreed terms.

9.    Educational loan records are created, compiled and recorded as part of regularly conducted business activity at or near the time of the event and from information transmitted from a person with personal knowledge of said event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described within the business record.  Such records are created, kept, maintained, and relied upon in the course of ordinary and regularly conducted business activity.

10.    I have reviewed the educational loan records described in this affidavit regarding account number xxxxx4440/001-001000.  No payment has been made since 9/21/2016.  After all payments, credits and offsets have been applied, Defendant ALISHA  WADDELL owes the principal sum of $11,495.04, together with accrued interest in the amount of $ 868.94, totaling the sum of $12,363.98 as of 3/21/2017.  Attached hereto and incorporated as Exhibit "B" is a true copy of the underlying Credit Agreement/Promissory Note and Note Disclosure Statement. In the event the Defendant(s) faxed the executed Credit Agreement/Promissory Note, per its terms they agreed their facsimile/electronic signature is deemed to be an original.

11.    The Defendant opened the educational loan described above and funds were first disbursed on 7/18/2007.  *See* Exhibit "B".  The Defendant's educational loan was then transferred, sold and assigned by the Lender directly to Plaintiff, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, or to an intermediary, National Collegiate Funding, LLC, who then immediately transferred, sold and assigned the Defendant's educational loan to Plaintiff, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3.  The Defendant's educational loan was in good standing and not in default on the date the Plaintiff acquired the Defendant's educational loan.  Attached hereto and incorporated as Exhibit "C" is a true and correct copy of the assignment Agreement(s) described herein.

12.   Based on custodial records, the Defendant is not a minor or incompetent.  A reasonable inquiry has been made to determine if the Defendant is in the military service of the United States of America, and to the best of my knowledge, Defendant is not in such military service and is therefore not entitled to the rights and privileges provided under the Soldiers and Sailors Civil Relief Act of 1940, as amended.

13.   I declare under the penalty of perjury under the laws of the forum state that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

AFFIANT

Print Name: _____Dudley Turner_____

Title: _____Legal Case Manager_____

SWORN AND SUBSCRIBED to before me this ___29___ day of ___March___, 20_17_

NOTARY PUBLIC

My Commission Expires on

# EXHIBIT 14

## IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

### CIVIL DIVISION

NATIONAL COLLEGIATE STUDENT                                    **PLAINTIFF**

**LOAN TRUST 2007-3**

VS.                              Case No.    72CV-17-1006

ALISHA  WADDELL                                              **DEFENDANT(S)**

### PLAINTIFF'S RESPONSES TO DEFENDANT'S INTERROGATORIES AND REQUESTS FOR PRODUCTION

Comes the Plaintiff, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, by and through counsel, and for its Responses to Defendant's Interrogatories and Requests for Production states as follows:

**INTERROGATORY NO. 1:** Identify each person answering these interrogatories, supplying information, or assisting in any way with the preparation of the answers to these interrogatories.

**RESPONSE**: Plaintiff states that Kelly C. Dicken, Sharon H. Kim, and Megan D. Duthie are preparing the herein responses.  Kelly C. Dicken is the attorney of record of this case, whose employer and job title is provided in the signature block of these responses.  Sharon H. Kim and Megan D. Duthie are the assisting attorneys, whose employer is provided in the signature block of these responses.  Further, Transworld Systems Inc. ("TSI"), the subservicer and designated custodian of Plaintiff's records, is assisting in the preparation of the herein responses.  Plaintiff objects to providing TSI's address as it can be contacted through Plaintiff's counsel.

**INTERROGATORY NO. 2:** Identify every person with knowledge of relevant facts and summarize each person's knowledge and opinions.

**RESPONSE:** Plaintiff objects to this request to the extent that it is unduly burdensome as to "every person." Subject to and not waiving this objection, Plaintiff states that James Waddell, Defendant's co-signer; Plaintiff's counsel (*see* signature block below for address); Transworld Systems Inc., Custodian of Records for Plaintiff pertaining to Defendant's student loan account;

JPMorgan Chase Bank, N.A.; and American Education Services are likely to have knowledge of the allegations and statements in Plaintiff's Complaint.

**INTERROGATORY NO. 3:** Identify all persons or entities that have possession, custody, or control of materials relevant to this suit and the materials over which they have possession, custody, or control.

**RESPONSE**: Plaintiff objects to this request to the extent that it is unduly burdensome as to "all persons." Subject to and not waiving this objection, Plaintiff states that Plaintiff's counsel (*see* signature block below for address); Transworld Systems Inc., Custodian of Records for Plaintiff pertaining to Defendant's student loan account; Defendant; and Defendant's co-signer, James Waddell, likely have materials relevant to this suit.

**INTERROGATORY NO. 4:** Identify Plaintiff's opinions and contentions about its claims relating to the facts or the application of law to the facts in this case.

**RESPONSE:** Plaintiff directs Defendant to Plaintiff's Complaint and the contentions made therein.

**INTERROGATORY NO. 5**: Identify any statements that have been taken from defendant, or taken on plaintiff's behalf, relating to the facts that are the subject of this litigation, and do the following:

a) Identify the person who gave or made the statement.

b) Specify the date when the statement was taken.

c) Identify the person who took the statement.

d) State whether the statement was recorded, regardless of the medium (e.g., paper or electronic), and if so, identify the material.

e) State whether Plaintiff will, without a formal request to produce, attach a copy of all statements described in the answer to this interrogatory.

**RESPONSE**: Plaintiff has taken the Affidavit and Verification of Account from Dudley Turner, attached to Plaintiff's Complaint as a part of Collective Exhibit 1. The affidavit was taken March 29, 2017, before James H. Cummins, Notary Public.

Defendant Alisha Waddell has conversed via telephone with Plaintiff's attorney's office on four occasions and on one occasion she left a message. Please see the responses to Request for Production 14 for details and a summary of those calls.

File no. 15-16290

**INTERROGATORY NO. 6**: Identify any steps taken to preserve materials relevant to this suit, including any alterations to routine operations of an electronic information system, and do the following:

a) Identify whether a specific litigation-hold policy or other similar suspension order was created.
b) Identify the person who created the litigation-hold policy.
c) Specify the date the litigation-hold policy was created.
d) State whether the litigation-hold policy was recorded, regardless of the medium (e.g., paper or electronic), and if so, identify the material.
e) Identify the persons who received the litigation-hold policy.
f) Specify the date when the persons received the litigation-hold policy.
g) State whether plaintiff will, without a formal request to produce, attach a copy of all materials described in the answer to this interrogatory.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 7**: Identify all agreements, whether or not reduced to writing, the plaintiff has with any party or potential party to this suit.

**RESPONSE**: Plaintiff directs Defendant to: (1) the student loan agreement at issue, executed between Defendant and Plaintiff's predecessor in interest, attached to Plaintiff's Complaint as Collective Exhibit B, and (2) the Payment Agreement entered into between Plaintiff and Alisha and James Waddell, attached hereto.

**INTERROGATORY NO. 8**: If plaintiff contends there was a written contract executed by plaintiff and the defendant, describe the terms of the contract and the negotiations for the contract, identify the persons involved in the negotiations, and specify the date and place the contract was executed.

**RESPONSE**: *See* response to Interrogatory No. 7.

**INTERROGATORY NO. 9**: Describe the facts and circumstances surrounding the alleged execution of the contract.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks documents or information that are readily more accessible to Defendant from Defendant's own files or from documents or information in Defendant's possession. Subject to and not waiving this objection, Defendant has admitted to her signature appearing on the contract at issue. *See* Defendant's Answer.

**INTERROGATORY NO. 10**: If plaintiff contends there was consideration for the contract, describe with particularity all facts supporting the contention.

**RESPONSE**: Plaintiff objects to this request to the extent that, as stated, the consideration requested is vague as to the parties between which consideration is conferred. Subject to and not waiving this objection, Plaintiff contends the consideration for this contract was the disbursement of student loan proceeds to Defendant. Plaintiff directs Defendant to the attached copy of the endorsed disbursement check.

**INTERROGATORY NO. 11**: If plaintiff contends defendant did not perform her contractual obligations, describe what part of defendant's contractual obligations she did not perform, including describing the obligation and specifying the exact time, date, and place of defendant's nonperformance.

**RESPONSE**: Defendant failed to repay the student loan account in a timely manner as required by the terms of the student loan. Defendant's deferment period began December 1, 2009 and ended on June 30, 2010. During the subsequent repayment period and before charge off, there were no payments made by Defendant toward the account. The Defendant was therefore in breach of the contractual agreement per the terms and conditions on July 10, 2010, the due date of the first payment following deferral.

**INTERROGATORY NO. 12**: State the amount of money plaintiff contends defendant owes to plaintiff on the alleged contract, and identify all documents supporting that amount.

**RESPONSE**: Accounting for all payments made by Defendant to Plaintiff, Defendant owes an outstanding balance of $12,363.98. In support thereof, Plaintiff directs Defendant to Plaintiff's Complaint, the attached exhibits thereto, and any pertinent information or documents that has been produced during discovery.

**REQUEST FOR PRODUCTION 1**: Produce all materials relating to the damages you are claiming in this civil action.

**RESPONSE**: Plaintiff directs Defendant to Plaintiff's Complaint, the attached exhibits thereto, and any pertinent information or documents that has been produced during discovery. Also please find attached the Loan Finance Agreement, Repayment Schedule, and Deferment/Forbearance Loan Detail.

**REQUEST FOR PRODUCTION 2**: Produce all materials supporting your calculation of your alleged damages in this civil action.

**RESPONSE**: Plaintiff directs Defendant to Plaintiff's Complaint, the attached exhibits thereto, and any pertinent information or documents that has been produced during discovery. Also please find attached Loan Finance Agreement, Repayment Schedule, and Deferment/Forbearance Loan Detail.

**REQUEST FOR PRODUCTION 3**: Produce all materials reviewed to create your alleged damages in this action.

**RESPONSE**: Plaintiff objects to this request to the extent that this request seeks information and/or documentation that is protected by the attorney client privilege and work product.

**REQUEST FOR PRODUCTION 4**: Produce all materials showing any demand on Alisha Waddell for the amounts alleged in the Complaint.

**RESPONSE**: Plaintiff directs Defendant to the attached Demand Letter sent to Alisha Waddell.

**REQUEST FOR PRODUCTION 5**: Produce all materials evidencing that Alisha Waddell was indebted to you as alleged in the Complaint.

**RESPONSE**: Plaintiff directs Defendant to Plaintiff's Complaint, the attached exhibits thereto, and any pertinent information or documents that has been produced during discovery.

**REQUEST FOR PRODUCTION 6:** Produce all materials containing any and all terms and conditions of the loan referenced in your Complaint.

**RESPONSE**: Plaintiff directs Defendant to the non-negotiable agreement and the associated terms and conditions, attached to Plaintiff's complaint as part of Collective Exhibit 1.

**REQUEST FOR PRODUCTION 7**: Produce a copy of the endorsed check which disbursed the loan proceeds.

**RESPONSE**: Plaintiff directs Defendant to the endorsed disbursement check, attached.

**REQUEST FOR PRODUCTION 8**: Produce all materials showing Alisha Waddell agreed to the terms of the loan at issue.

**RESPONSE:** Plaintiff directs Defendant to the non-negotiable agreement and the associated terms and conditions, attached to Plaintiff's complaint as part of Collective Exhibit 1. Plaintiff further directs Defendant to Defendant's own Answer, which admits Defendant's signature appears on this document. Plaintiff further directs Defendant to the attached Loan Financial Activity, Disbursement Check, Repayment Schedule, and Deferment/Forbearance Loan Detail.

**REQUEST FOR PRODUCTION 9:** Produce all materials relating to the alleged default by Alisha Waddell on the loan at issue.

**RESPONSE**: Plaintiff directs Defendant to the Affidavit attached as a part of Exhibit 1 to Plaintiff's Complaint, Loan Payment History Report attached as Exhibit 2 to Plaintiff's Complaint, Loan Financial Activity, Repayment Schedule, Terms and Conditions, and Deferment/Forbearance Loan Detail.

**REQUEST FOR PRODUCTION 10**: Produce the original written contract showing the terms and conditions for the student loan for which you are suing Alisha Waddell.

**RESPONSE**: Plaintiff objects to the production of the original contract. Under the Arkansas Rules of Evidence Best Evidence Rule, a duplicate is admissible to the same extent as an original. A.R.E. Rule 1003. Plaintiff directs Defendant to the non-negotiable agreement and the associated terms and conditions, attached to Plaintiff's complaint as part of Collective Exhibit 1.

**REQUEST FOR PRODUCTION 11:** Produce all materials relating to the loan application.

**RESPONSE**: Plaintiff directs Defendant to the non-negotiable agreement and the associated terms and conditions, as well as the Note Disclosure Statement, attached to Plaintiff's complaint as part of Collective Exhibit 1, and the Disbursement Check attached hereto.

**REQUEST FOR PRODUCTION 12**: Produce all materials relating to the loan origination.

**RESPONSE**: Plaintiff directs Defendant to the non-negotiable agreement and the associated terms and conditions, attached to Plaintiff's complaint as part of Collective Exhibit 1. Content regarding loan origination can be found at the top of the Loan Request/Credit Agreement page.

**REQUEST FOR PRODUCTION 13**: Produce all materials you received from J.P. Morgan Chase relating to Alisha Waddell.

**RESPONSE**: Please find attached the non-negotiable agreement, Note Disclosure Statement, Terms and Conditions and Disbursement Check.

**REQUEST FOR PRODUCTION 14:** Produce all communications between you and Alisha Waddell relating to Alisha Waddell.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks documents or information that are readily more accessible to Defendant from Defendant's own files or from documents or information in Defendant's possession. Subject to and not waiving this objection, Plaintiff directs Defendant to the following:

The following letters were sent to Alisha Waddell, and copies of each are attached:

Demand Letter (dated August 26, 2015), Lump Sum Settlement Offer (dated December 11, 2015), Check by Phone Letter, Installment Confirmation, and Electronic Debit Account Authorization Form (dated February 11, 2016), Post-Dated Check Acknowledgment Letters (dated March 4, 2016; April 4, 2016; May 4, 2016; June 6, 2016; July 5, 2016), Auto-Deduct Payment Expiration Letter (dated July 5, 2016), and an NSF Check Notice Letter (dated July 22, 2016).

The following calls were made to/from Alisha Waddell (when contact was made):

Alisha called into the office on December 10, 2015. She spoke with our collections department and was provided with settlement options.
Alisha called into the office on December 11, 2015. She spoke with our collections department and agreed to a settlement and payment plan. The Lump Sum Settlement Offer letter was sent as confirmation of this conversation.
Alisha called into the office on January 15, 2016. She left a message to make a payment and requested a return call.
Our office returned Alisha's call on January 15, 2016, and Alisha made a payment.
Alisha called into the office on February 11, 2016, and set up post-dated checks by phone for 6 months. The letters dated February 11, 2016 were sent as confirmation of this conversation.

**REQUEST FOR PRODUCTION 15**: Produce all materials you received from and Transworld Systems relating to Alisha Waddell.

**RESPONSE**: Plaintiff objects to the extent that this request is vague. Plaintiff does not receive documents from Transworld Systems, as they are the custodian of records for Plaintiff. Subject to and not withstanding this objection, Plaintiff directs Defendant to Plaintiff's Complaint, the attached exhibits thereto, and any pertinent information or documents that has been produced during discovery.

**REQUEST FOR PRODUCTION 16**: Produce all communications between you and Transworld Systems relating to Alisha Waddell.

**RESPONSE:** Plaintiff objects to the extent that this request asks for information protected by attorney client privilege and work product.

**REQUEST FOR PRODUCTION 17**: Produce the contract between Transworld Systems and U.S. Bank, National Association, referenced in Dudley Turner's Affidavit attached as Exhibit 1 to the Complaint.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Further, this request seeks information that is confidential and proprietary in nature.

**REQUEST FOR PRODUCTION 18:** Produce all materials regarding Dudley Turner's authorization by Plaintiff and U.S. Bank to make the representations in Dudley Turner's Affidavit.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Further, this request seeks information that is confidential and proprietary in nature. Subject to and without waiving said objections, Plaintiff refers the Defendant to Mr. Turner's Affidavit and exhibits attached thereto.

**REQUEST FOR PRODUCTION 19**: Produce all loan account records and documentation concerning Alisha Waddell's education loans referenced in Dudley Turner's Affidavit.

**RESPONSE**: Plaintiff directs Defendant to Plaintiff's Complaint, the attached exhibits thereto, and any pertinent information or documents that has been produced during discovery.

**REQUEST FOR PRODUCTION 20:** Produce all origination records referenced in Dudley Turner's Affidavit.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Further, this request seeks information that is confidential and proprietary in nature. Subject to and without waiving said objections, Plaintiff refers the Defendant to Mr. Turner's Affidavit and exhibits attached thereto.

**REQUEST FOR PRODUCTION 21**: Produce all business records referenced in Dudley Turner's Affidavit.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Further, this request seeks information that is confidential and proprietary in nature. Subject to and without waiving said objections, Plaintiff refers the Defendant to Mr. Turner's Affidavit and exhibits attached thereto.

**REQUEST FOR PRODUCTION 22**: Produce all electronic data referenced in Dudley Turner's Affidavit.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Further, this request seeks information that is confidential and proprietary in nature. Subject to and without waiving said objections, Plaintiff refers the Defendant to Mr. Turner's Affidavit and exhibits attached thereto.

**REQUEST FOR PRODUCTION 23**: Produce the loan agreements referenced in Dudley Turner's Affidavit.

**RESPONSE**: Asked & answered.

**REQUEST FOR PRODUCTION 24**: Produce the educational loan records referenced in Dudley Turner's Affidavit.

**RESPONSE**: Plaintiff objects to this request to the extent it seeks information which is irrelevant and immaterial to the issues in this lawsuit, and is not reasonably calculated to lead to the discovery of admissible evidence. Further, this request seeks information that is confidential and proprietary in nature. Subject to and without waiving said objections, Plaintiff refers the Defendant to Mr. Turner's Affidavit and exhibits attached thereto.

**REQUEST FOR PRODUCTION 25**: Produce all materials related to payments referenced in Dudley Turner's Affidavit.

**RESPONSE**: Plaintiff directs Defendant to the attached Loan Financial Activity and Loan Payment History Report.

**REQUEST FOR PRODUCTION 26**: Produce all materials showing that the education loan was disbursed on 07/18/2007 as stated in Dudley Turner's Affidavit.

**RESPONSE**: Plaintiff directs Defendant to the Loan Financial Activity, Note Disclosure Statement, Loan Financial Activity, and Disbursement Check.

**REQUEST FOR PRODUCTION 27**: Produce all materials relating to the transfer, sale, and assignment of the Defendant's educational loan to you.

**RESPONSE**: Plaintiff objects to this request as it seeks information that is confidential and proprietary. Subject to and not waiving this objection, Plaintiff directs Defendant to the Pool Supplement, redacted Schedule 1 and Deposit and Sale Agreement attached hereto.

**REQUEST FOR PRODUCTION 28**: Produce all materials relating to the transfer, sale, and assignment of the Defendant's educational loan to National Collegiate Funding, LLC.

**RESPONSE**: *See* response to Request for Production 27.

**REQUEST FOR PRODUCTION 29**: Produce all materials relating to the transfer, sale, and assignment of the Defendant's educational loan from National Collegiate Funding, LLC to National Collegiate Student Loan Trust 2007-3.

**RESPONSE**: *See* response to Request for Production 27.

**REQUEST FOR PRODUCTION 30**: Produce all materials showing that the Defendant's educational loan was in good standing and not in default on the date Plaintiff acquired the Defendant's education loan.

**RESPONSE**: Plaintiff directs Defendant to the Loan Financial Activity attached hereto.

Respectfully submitted this ____ day of November, 2017,

> FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.
> P. O. Box 1
> Knoxville, Tennessee 37901
>
> By: _____
> ☑ Kelly C. Dicken,   ABN # 2015096
> ☐ Linda Catron Noe, ABN # 2017010
> Attorney for Plaintiff

## CERTIFICATE OF SERVICE

Finkelstein, Kern, Steinberg & Cunningham, attorney of record for the Plaintiff in the above referenced case, does hereby certify that a true and correct copy of the above and foregoing pleading has been served upon the Defendant or Defendant's counsel via first class mail, as follows:

Corey McGaha
5507 Ranch Dr., Suite 202
Little Rock AR 72223

This ____ day of _____ Nov _____, 20 17

> ☐ Kelly C. Dicken     ABN #2015096
> ☐ Linda Catron Noe,  ABN # 2017010
> Attorney for Plaintiff

STATE OF ___GA_____ )
                      ) ss.
CITY OF Peachtree Corners )

## VERIFICATION

I, Brodley L-ke___, after first being duly sworn and under oath state as follows:

1. I am employed by Transworld Systems Inc., the servicer for Plaintiff National Collegiate Student Loan Trust 2007-3 pertaining to the Defendant's education loan.

2. I have read Plaintiff's Responses to Defendant's Requests for Production of Documents, and Interrogatories and know its contents.

3. I am familiar with the matters involved herein and am able to competently testify thereto.

4. To the best of my knowledge, Plaintiff's Responses to Defendant's Requests for Production of Documents, and Interrogatories are true and accurate.

Respectfully submitted,

Bradley Luke
Title: Sr. Litigation Paralegal
Transworld Systems Inc.,
Servicer for National Collegiate Student Loan Trust 2007-3

SWORN TO BEFORE ME, and subscribed in my presence this 30th day of October , 20 17 .

Notary Public

From: VSA DRUG #1033          Page: 1/9          Date: 7/16/2007 1:08:59 PM

---

**\* Cosigned \***   **Loan Request/Credit Agreement – Signature Page**

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

---

**LOAN PROGRAM INFORMATION**

Education One® Education One Undergraduate Loan                    Academic Period: 08/2007-05/2008

Lender: JPMorgan Chase Bank, N.A.          School: CHRISTIAN BROTHERS UNIVERSITY

Loan Amount Requested: $8500.00            Repayment Option: Full Deferral

Deferment Period Margin: 7.25              Repayment Period Margin: 7.25    Loan Origination Fee Percentage: 10.50

---

**STUDENT BORROWER INFORMATION**

Borrower Name: Alisha D Waddell          Home Address: 137 Chestnut Cir Lincoln, AR 72744
Social Security #: ███-██-4440           Date of Birth: ███ 1989    Home Telephone:
Mobile Telephone:                        E-mail Address:
Student Citizenship (check one box):  ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Glenda G Waddell          Reference Home Tel #:_____          Work Tel #:_____
Reference Street Address: 112 Old Crest Rd
Reference City/State/Zip: Farmington, AR 72730

---

**COSIGNER INFORMATION (Must be age of majority in state of residence – see Paragraph N of Credit Agreement)**

Cosigner Name: James Waddell             Home Address: 887 Madison 5635 Huntsville, AR 72740
Social Security #: ███-██-1764           Date of Birth: ███ 1938    Home Telephone:
Mobile Telephone:                        E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy in the last 10 years?...    ☒ No   ☐ Yes
Current Employer: Self-Employed/Own      Years There: 38 Years   ☐ Years "1 yrs ½ yr"    Employer Telephone:
Current Position: Other
Years at Previous Employment: 0 Years
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.
If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):   ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Borrower.
Personal Reference Name: James D Waddell          Reference Home Tel #:_____          Work Tel #:_____
Reference Street Address: 800 Castard
Reference City/State/Zip: Prairie Grove, AR 72753

---

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement EO.07-08.CSX1.10DC.1106 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fix my signature on this Credit Agreement and any related motions that require signature. If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend: (i) the fax signature to be an electronic signature under applicable federal and state law, (ii) any fax printout of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligation under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code. I, the Cosigner, have read the applicable cosigner notice(s).

For purposes of the following notices "you" means the Borrower and Cosigner, not the Lender.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.
FOR WISCONSIN RESIDENTS: NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) –
                                          FAX TO: 800-704-9407

Signature of Borrower _Alisha Waddell_                    Date _7-16-07_

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner _James W Waddell_                   Date _7-16-07_

---

EO.07-08.CSX1.10DC.1106                    LENDER COPY
PN01_EO_07-08_CSX1_F_X_WADDELL_A105346549.pdf                              EOXUDP

## Education One® Loan Request/Credit Agreement Instructions

You have been conditionally approved for an Education One Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

This is a Legal Document
Urgent Reply Requested

Please follow the instructions on the following page to complete your application. Be sure to include your Loan ID# and/or SSN# on ALL correspondence.

Your Loan ID# is located in the footer of this page. It is the eight digit number following "A1".

Once Completed -- RETURN all signed paperwork and all requested documents.

- For faster loan processing, fax all documents to [                    ].

- Return all information by mail to the address below.

  **For regular delivery, send to:**            **For overnight delivery, send to:**
  [            ]                                  [            ]
  P.O. Box 848108                                One Cabot Road, Second Floor
  Boston, MA  02284-8108                         Medford, MA  02155-5141

**Frequently Asked Questions:**

1. Q: What could cause my loan to be delayed?
   A: The most common delays are caused by unacceptable or incomplete proof of income as described in step 2 on the following page.
2. Q: How can I check the status of my loan and confirm the disbursement date of my funds?
   A: You can check the status of your loan and confirm the disbursement date at anytime. Simply visit us online at [                    ] or call us at [                    ].

Applications not completed within 90 days will be considered withdrawn.
Before returning this Credit Agreement, read the entire document and sign and date the Signature Page where indicated.

# Credit Agreement Instructions Checklist

*(For your reference only; you do not need to return this checklist)*

**Step 1:**

☐
Check Box

**REVIEW all pre-printed information, complete and SIGN the Credit Agreement**

- If you find any incorrect information, please correct the information and initial the change(s). Please note that certain changes may require the issuance of a new Credit Agreement for signature.
- **Legibly sign and date** by hand the bottom of the Signature Page of the Credit Agreement. The signatures of the borrower and cosigner must match the names pre-printed on the Credit Agreement.
- If you have made an error on the signature or date lines, either download another copy or contact us as you will need to complete a new Credit Agreement.

**Step 2:**

☐
Check Box

**ATTACH proof of enrollment**

- If this loan is for the current and/or an upcoming semester, please submit documentation in **one** of the following formats:

| 1. Current tuition bill **or** current class/ registration schedule that shows the following:<br>   • Student Name<br>   • School Name<br>   • Academic period that matches the period on the Credit Agreement | **OR** | 2. Acceptance letter from the school verifying enrollment that shows the following:<br>   • Student Name<br>   • School Name<br>   • Academic period that matches the period on the Credit Agreement |

- If this loan is for a past due balance, please submit a current invoice (less than 60 days old) indicating the name of the school, the name of the student, and the dates of and the amount owed for the specific academic period.

**Step 3:**

☐
Check Box

**ATTACH proof of income**

- For wage earners:  Provide **one** of the following documents:

| 1. Legible copy of the cosigner's current paystub that shows the following:<br>   • Dated within the last 60 days<br>   • Employer Name<br>   • Employee Name<br>   • Year-to-date earnings or date of hire | **OR** | 2. Signed letter from the cosigner's employer that shows the following:<br>   • Dated within the last 60 days<br>   • Employer Name and letterhead<br>   • Employee Name<br>   • Year-to-date earnings or annual salary<br>   • Employee's hire date |

- For self-employed individuals:  Provide the cosigner's complete federal tax returns (1040's) for the last 2 years, including all schedules and signatures (or IRS receipt confirmation for electronically filed returns).
- For retired individuals:  Provide the cosigner's pension statement (1099) or Social Security Statement (1099) for the last year or a current year award letter showing pension or retirement income.
- For individuals relying on alimony or child support payments to repay this loan:  Provide a complete copy of the divorce decree and a signed copy of the cosigner's federal tax return (1040's) for the past two years.

**Step 4:**

☐
Check Box

**ATTACH proof of immigration status (for eligible non-U.S. citizens only)**

- If the cosigner is an eligible non-citizen, the cosigner must provide a current Resident Alien Card, Form I-551 (i.e., Green Card) showing that the cosigner is a permanent resident alien of the United States.
- If the student Borrower is an eligible non-citizen, the student Borrower must provide one of the following forms demonstrating that the student Borrower has the legal right to remain in the United Stated for the academic period:
    1. Current Form I-20 showing F-1 or M-1 status;
    2. Current Form DS-2019 showing J-1 status;
    3. Permanent Resident Alien card, Form I-551 (i.e., Green Card)
    4. Current Form I-94 (Arrival-Departure record) issued from BCIS (Front/back copy) showing valid F, M or J status;
    5. Stamped passport along with a Notice of Action letter.

**If you have questions, please have your Loan ID# available and call:**

[                         ]

## *Cosigned* Loan Request/Credit Agreement – Signature Page

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

Loan Program: Education One® Loan Program

Academic Period:

Lender: JPMorgan Chase Bank, N.A.    School:

Loan Amount Requested:    Repayment Option:

Deferment Period Margin:    Repayment Period Margin:    Loan Origination Fee Percentage:

### STUDENT BORROWER INFORMATION

Borrower Name:    Home Address:
Social Security #:    Date of Birth:    Home Telephone:
Mobile Telephone:    E-mail Address:
Student Citizenship (check one box):    ☐ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name:_____    Reference Home Tel #:_____    Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

### COSIGNER INFORMATION (Must be age of majority in state of residence – see Paragraph N of Credit Agreement)

Cosigner Name:    Home Address:
Social Security #:    Date of Birth:    Home Telephone:
Mobile Telephone:    E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy in the last 10 years?    ☐ No    ☐ Yes
Current Employer:    Employer Telephone:
Current Position:    Years There:
Years at Previous Employment:
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.
If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):    ☐ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Borrower.
Personal Reference Name:_____    Reference Home Tel #:_____    Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement EO.07-08.CSX1.10DC.1106 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on this Credit Agreement and any related notices that require signature. If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend: (i) my fax signature to be an electronic signature under applicable federal and state law, (ii) any fax printout of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code. I, the Cosigner, have read the applicable cosigner notice(s).

For purposes of the following notices "you" means the Borrower and Cosigner, not the Lender.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS: NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) –
FAX TO: 800-704-9407

Signature of Borrower_____    Date_____

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner_____    Date_____

In this Credit Agreement, the words "I", "me", "my", and "mine" mean each and every Borrower and Cosigner, individually and collectively, who signed this Credit Agreement. The words "you", "your", "yours", and "Lender" mean the Lender named at the top of the first page of this Credit Agreement, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to your order, upon the terms and conditions of this Credit Agreement, the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum, and other charges set forth herein.

**B. LOAN; DISCLOSURE STATEMENT:**

1. By signing this Credit Agreement, and submitting it to you, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. When you receive my signed Application, you are not agreeing to lend me money. You have the right not to make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A).

2. If you agree to make a loan to me, you will mail me the disbursement check (the "Disbursement Check") and a statement disclosing certain information about the loan in accordance with the federal Truth-in-Lending Act (the "Disclosure Statement"). You have the right to disburse my Disbursement Check through an agent. At your option, you may also make any Disbursement Check co-payable to me and the Cosigner or to me and the School. In addition to other information, the Disclosure Statement will tell me the amount of my disbursement and the amount of the Loan Origination Fee. The Disclosure Statement is part of this Credit Agreement. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. My endorsement of the Disbursement Check or allowing the loan proceeds to be used by or on behalf of the student Borrower without objection will acknowledge receipt of the Disclosure Statement and my agreement to be legally bound by this Credit Agreement.

3. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice, together with my unused Disbursement Check or, if I have already endorsed and delivered the Disbursement Check to the School, a good check, payable to you, in the full amount of the Disbursement Check. In any event, I cannot cancel more than ten (10) days after I receive the Disclosure Statement. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.3, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date shown on any Disbursement Check you prepare for me (not the date I endorse or negotiate my check).

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Education One Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, a student who receives the first of joint or serial degrees (e.g., associates to bachelors) may continue in-school deferment while completing their second degree, up to the 5-year or 5½-year maximum.

(b) *Education One Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement

Date; provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends (or, if there is no Deferment Period, the day after the Disbursement Date for my loan). The Repayment Period is 20 years, unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest on the outstanding balance of this Credit Agreement (including any unpaid interest later added to principal according to Paragraph D.3) will accrue each day (including holidays and other days you are closed) at the Variable Rate (Paragraph D.2) divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The Index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H). In all cases, the sum of interest you capitalize plus the then-outstanding principal balance is thereafter considered the principal balance, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c)

following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe principal, interest, and/or late fees at the end of the Repayment Period. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full in a single payment.

5. Payments – Payments will be applied first to late fees and other fees and charges, then accrued interest, and the remainder to principal. If I have multiple loans processed by the servicer, and I submit a single payment that is not sufficient to pay all of the amounts I owe, such payment may be divided between or among the loans in accordance with applicable law and the servicer's customary procedures.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. I will pay only one late fee for any (monthly) payment, regardless of the number of days it is late. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: You may charge me an Origination Fee. If you charge me, at the time you issue any disbursement to me, or on my behalf, you may add the Origination Fee to my loan amount. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire Principal Sum would equal 6.9519% of the loan amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.3), I will not be entitled to a refund of any Loan Origination Fee after my Disbursement Check has been negotiated.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty or charge.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. I understand that if I default on my loan, disclosure of my loan information to consumer reporting agencies may adversely affect my credit rating. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. To the extent permitted by law, upon default, you will have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.
K. INFORMATION:

1. I must update any and all information related to this Credit Agreement or my loan application whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).
3. CREDIT BUREAU REPORTING

You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also provide the School with certain personally-identifiable information about me (such as my Social Security Number and my Loan ID number) and report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.
L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in OHIO and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement. If I fax my Credit Agreement, I have read and understand the prohibition regarding changes in Paragraph L.16.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. If I am in default at any time (including but not limited to a situation where I give an improper cancellation notice), you may exercise on my behalf any right that I may have to receive a full or partial refund of payments made to the School. I authorize the School to pay any or all of such amounts directly to you upon receipt of notice from you that I am in default under this Credit Agreement.

9. The Borrower and the Cosigner each agrees that any communication between you and the Borrower or the Cosigner will be binding on the Borrower and the Cosigner. The Borrower and Cosigner intend to be treated as principals of this Credit Agreement and not as sureties. To the extent the Borrower or the Cosigner may be treated as a surety, the Borrower and the Cosigner waive all notices otherwise required or available by law, and all suretyship defenses that might be available (including, without limitation, contribution, subrogation and exoneration). The Cosigner agrees that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on the Cosigner. It shall not be necessary for you to resort to or exhaust your remedies against the Borrower before calling upon the Cosigner to make repayment.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States dollars with no deduction for currency exchange.

11. The student Borrower's failure to complete the education program paid for with this loan will not relieve any Borrower of any obligation under this Credit Agreement.
12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy

contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement and I will refax the first page upon request by Lender. I may NOT amend the Credit Agreement by making changes to the Signature Page, which are then faxed to Lender. If the Borrower faxes the Signature Page, and the Lender approves the application, you and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

M. DISCLOSURE NOTICES

ALL APPLICANTS:
IMPORTANT FEDERAL LAW NOTICE—

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you (the Borrower and the Cosigner):*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA and UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. (For purposes of the following two notices, the word "you" refers to the Borrower and the Cosigner, not the Lender.)

IOWA RESIDENTS: If you are an Iowa resident and your amount financed is $25,000 or less, this is a consumer credit transaction.

IOWA, KANSAS and NEBRASKA RESIDENTS: (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender.) NOTICE TO CONSUMER: 1. Do not sign this Credit Agreement before you read it. 2. You are entitled to a copy of this Credit Agreement. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of OHIO, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.
NEVADA RESIDENTS: This is a loan for study.

NEW YORK, RHODE ISLAND, and VERMONT RESIDENTS: I understand and agree that you may obtain a consumer credit report in connection with updates, renewals or extensions of any credit as a result of this application. If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.
NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

OKLAHOMA RESIDENTS: If I am in default and only if the total amount disbursed under this Credit Agreement is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects my interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, a statement or a decree or have actual knowledge of the adverse provision. If the loan for which I am applying is granted, I will notify you if I have a spouse who needs to receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.
STATE AGE REQUIREMENTS: THE LEGAL AGE FOR ENTERING INTO CONTRACTS IS 18 YEARS OF AGE IN EVERY STATE IN THE UNITED STATES EXCEPT THE FOLLOWING: ALABAMA AND NEBRASKA 19 YEARS OLD, AND MISSISSIPPI AND PUERTO RICO 21 YEARS OLD.

By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the Lender.
FOR OBLIGORS COSIGNING IN VERMONT: For purposes of the following notice, the words "you" and "your" refer to any Cosigner, not to the Lender. "Credit Agreement" means this Credit Agreement.
*NOTICE TO COSIGNER:*
YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

## FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

### NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley):

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the Borrower. The holder of the loan can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

### AVISO PARA EL FIADOR (Spanish Translation Required by Law):

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

## NOTE DISCLOSURE STATEMENT

$ 9,497.21
05346549
Loan No.

Borrower(s)   ALISHA D WADDELL
              JAMES WADDELL

Student:      ALISHA D WADDELL
Date:         July 18, 2007

ALISHA D WADDELL
137 CHESTNUT CIR
LINCOLN , AR 72744   USA

Lender Name and Address:
JPMORGAN CHASE BANK, N.A.
100 EAST BROAD STREET
COLUMBUS, OH 43125

This disclosure statement relates to your Loan Note disbursed on         July 18, 2007
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 13.602     % | $    36,063.20 | $    8,500.00 | $    44,563.20 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due | |
|---|---|---|---|
| 240 | $    185.68 | On the   20th day of each month beginning | 12/2011 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ Prime Rate Index Adjusted Monthly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ Prime Rate Index Adjusted Quarterly - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☐ LIBOR Index Adjusted Quarterly - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☒ LIBOR Index Adjusted Monthly - The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of the preceding calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)          $          9,497.21

Itemization of Amount Financed
Amount paid to   ALISHA D WADDELL  and          $
Amount paid to   JAMES WADDELL                  $          8,500.00
Total Amount Financed                                                          $          8,500.00

Itemization of Prepaid Finance Charge
Origination Fee                                 $          997.21
Total Prepaid Finance Charge(s)                                                $          997.21



This is a LEGAL COPY of your check. You can use it the same way you would use the original check.



EX-99.28 24 d720157.htm POOL SUPPLEMENT (JPMORGAN CHASE)

**EXHIBIT 99.28**

**POOL SUPPLEMENT
JPMORGAN CHASE BANK, N.A.**

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Amended and Restated Note Purchase Agreement dated as of May 1, 2002, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (the "Agreement"), by and between The First Marblehead Corporation and JPMorgan Chase Bank, N.A., successor by merger to Bank One, N.A. (Columbus, Ohio) (the "Program Lender"). This Supplement is dated as of September 20, 2007. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank One Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any of the Program Lender's rights in or to the certain account pledged by TERI as collateral for its obligations under the Guaranty Agreement (the "Pledged Account"), in each case specifically relating to the Transferred Bank One Loans. The Depositor in turn will sell the Transferred Bank One Loans to a Purchaser Trust. The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank One Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.05 of the Agreement.

Article 3: Representations and Warranties.

3.01.          By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Purchaser Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02.          By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)          The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank One Loans.

(b)          The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)          The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank One Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)         This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)         The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)         There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4:  Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank One Loans included in the Pool.

Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

     The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank One Loans described in Schedule 1, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to the Pledged Account pledged under the Guaranty Agreement and under the Deposit and Security Agreement that relate to the Transferred Bank One Loans, and the Program Lender hereby releases any security interest it may have in such Pledged Account relating to the Transferred Bank One Loans. The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By:/s/ John A. Foxgrover
_____

    John A. Foxgrover
    Senior Vice President

JPMORGAN CHASE BANK, N.A, as successor by
merger to BANK ONE, N.A. (Columbus, Ohio),

By:/s/ Joseph F. Sergi
_____

    Name: Joseph F. Sergi
    Title: Vice President

THE NATIONAL COLLEGIATE FUNDING LLC

By:GATE Holdings, Inc., Member

    By:/s/ John A. Foxgrover
    _____

        John A. Foxgrover
        Vice President

Schedule 1

[Transferred JPMorgan Chase Bank Loans]

| National Collegiate Student Loan Trust 2007-3 | | | | |
|---|---|---|---|---|
| Roster: | CHASE BANK | | | |
| Lender | Lender Code | Marketer | Loan Product | BSSN |
| CHASE BANK | 804976QT | Chase Bank | DTC - Ed One - Undergraduate | 4440 |

| GUARREF | Disb. Date | Tier | Repay Type | Margin |
|---|---|---|---|---|
| 5346549 | 7/18/2007 | 12 | DP | 7.25% |

| Fee to Borrower | TERI Admin Fee | Marketing Fee | Total Gross Disbursed | Total Net Disbursed |
|---|---|---|---|---|
| 10.50% | 2.75% | 7.25% | 9497.21 | 8500.003 |

| Total Net Principal | Total Capitalized Interest | Total Outstanding Gross Principal | Total Outstanding Unpaid Interest | Administrative Fee Reimbursement on 0% Fee Loans |
|---|---|---|---|---|
| 8500.003 | 0 | 9497.21 | 209.32 | 0 |

| | | | | Final Reconciliation Settlement Figures |
|---|---|---|---|---|
| Origination Fee Reimbursement Due Bank | Total Marketing Fees | Marketing Fees Due FMC | Marketing Fees Due Bank | Total Amount Due Bank |
| 100 | 616.2502 | 0 | 616.2502 | 10422.7802 |

EX-99.4 9 d719472.htm DEPOSIT AND SALE AGREEMENT

**EXHIBIT 99.4**

## DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of September 20, 2007, between The National Collegiate Funding LLC, as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2007-3, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

### ARTICLE I
### TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

### ARTICLE II
### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of September 1, 2007 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

### ARTICLE III
### SALE AND PURCHASE

Section 3.01.      Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.      Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.      Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Article 2 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.      Assistance by Seller. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

### ARTICLE IV
### REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.      General. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)    The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)    The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.    Loan Representations.  The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.    Covenants.  The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement.  The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Controlling Party in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee and Wilmington Trust Company (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan.  In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)    The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation.  If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION

OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

## ARTICLE VIII
## LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

## ARTICLE IX
## SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Controlling Party pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

## ARTICLE X
## COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the

Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

        The National Collegiate Student Loan Trust 2007-3
        c/o Wilmington Trust Company, as Owner Trustee
        Rodney Square North
        100 North Market Street
        Wilmington, Delaware 19890-0001
        Attention: Corporate Trust Department

If to the Seller, to:

        The National Collegiate Funding LLC
        c/o First Marblehead Data Services, Inc.
        The Prudential Tower
        800 Boylston Street - 34th Floor
        Boston, MA 02199-8157
        Attention: Ms. Rosalyn Bonaventure

with a copy to:

        First Marblehead Corporation
        The Prudential Tower
        800 Boylston Street - 34th Floor
        Boston, MA 02199-8157
        Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

## ARTICLE XI
## AMENDMENT

This Sale Agreement may be amended by the parties hereto with the consent of the Note Insurer, but without the consent of the Noteholders, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of such Noteholders; providedthat such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the percentage interest in the Certificates and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Note Insurer and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## THIRD PARTY BENEFICIARY

The Noteholders and the Note Insurer are third party beneficiaries hereof.

## ARTICLE XIV
## GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

## ARTICLE XV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By:  GATE Holdings, Inc., Member


By:  /s/ John A. Foxgrover
_____
    Name:       John A. Foxgrover
    Title:        Vice President

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, as Purchaser

By:  Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By:  /s/ Patricia A. Evans
_____
    Name:       Patricia A. Evans
    Title:        Vice President

## SCHEDULE A

### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Private Loan Program, TERI (School Channel) Loan Program and TERI ISLP Loan Program.

- RBS Citizens, N.A., successor by merger to Charter One Bank, N.A., dated September 20, 2007, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Citibank Education Assistance Loan Program, College Loan Corporation Loan Program, EdFinancial Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, Astrive Education (f/k/a START) Loan Program, AstriveAlliance Education (f/k/a START) Loan Program, Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program and ThinkFinancial Alternative Loan Program.

- RBS Citizens, N.A., successor by merger to Citizens Bank of Rhode Island, dated September 20, 2007, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, Navy Federal Alternative Loan Program, FinanSure Alternative Loan Program, Xanthus Alternative Loan Program and Penn State Undergraduate Loan Program.

- Comerica Bank, dated September 20, 2007, for loans that were originated under Comerica Bank's Private Loan Program.

- First National Bank Northeast, dated September 20, 2007, for loans that were originated under First National Bank Northeast's Nelnet Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated September 20, 2007, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated September 20, 2007, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated September 20, 2007, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.) dated September 20, 2007, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated September 20, 2007, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated September 20, 2007, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Bank Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated September 20, 2007, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated September 20, 2007, for loans that were originated under Sovereign Bank's Alternative Student Loan Program.

- SunTrust Bank, dated September 20, 2007, for loans that were originated under the SunTrust Loan Program.

- Union Federal Savings Bank, dated September 20, 2007, for loans that were originated under the UFSB Astrive Loan Program.

- U.S. Bank National Association, dated September 20, 2007, for loans that were originated under the U.S Bank Alternative Loan Program.

## SCHEDULE B

### *Note Purchase Agreements*

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's EdFinancial Loan Program.

- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).

- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education (f/k/a START) Loan Programs.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the Charter One Bank Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program, and ThinkFinancial Alternative Loan Program).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- Comerica Bank, dated June 30, 2006, for loans that were originated under Comerica Bank's Private Loan Program.

- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's Nelnet Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated July 1, 2006, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A., (successor to Bank One, N.A.), dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under the National City Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under the National City Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Student Loan Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under the SunTrust Loan Program.

- Union Federal Savings Bank, dated March 26, 2007, for loans that were originated under the UFSB Astrive Loan Program.

- U.S. Bank National Association, dated May 1, 2005, for loans that were originated under the U.S Bank Alternative Loan Program.

```
   ITS2C      4440;;                    AES/PA        VTAM NAPV      TSX2D
   DATE 10/26/17 15:33:41    LOAN FINANCIAL ACTIVITY           PAGE  1 OF  4

   BORROWER SSN:         -4440  NAME: WADDELL, ALISHA D
   1ST DISB: 07/18/07 LN SEQ: 0001   LN PGM: ALPLN      OWN: 122962QT-NCT
   GUARANTOR: TERI - DTC             CUST ACCT:  LT14   ORIG BAL:   9,497.21
   BOND ISSUE: NCT20073    PD AHEAD:     STATUS: ACTIVE    CURR BAL:      0.00
```

|    | REV REA | EFFECTIVE DATE | POSTED DATE | TRAN TYPE | TRAN AMOUNT | INTEREST ACCRUED | PRINCIPAL BALANCE |
|----|---------|----------------|-------------|-----------|-------------|------------------|-------------------|
| 1  |         | 02/02/11       | 02/02/11    | 5003A     | 16.52CR     | 0.00             | 0.00              |
| 2  |         | 02/01/11       | 02/01/11    | 1030A     | 11,777.07CR | 13.92            | 0.00              |
| 3  |         | 01/26/11       |             | 2601A     | 2.36        | 71.90            | 11,276.19         |
| 4  |         | 12/26/10       |             | 2601A     | 2.36        | 69.52            | 11,276.19         |
| 5  |         | 11/26/10       |             | 2601A     | 2.36        | 71.92            | 11,276.19         |
| 6  |         | 10/26/10       |             | 2601A     | 2.36        | 69.68            | 11,276.19         |
| 7  |         | 09/26/10       |             | 2601A     | 2.36        | 72.47            | 11,276.19         |
| 8  |         | 08/26/10       |             | 2601A     | 2.36        | 72.78            | 11,276.19         |
| 9  |         | 07/26/10       |             | 2601A     | 2.36        | 58.69            | 11,276.19         |
| 10 |         | 07/01/10       | 07/01/10    | 7001A     | 0.00        | 380.03           | 11,276.19         |

```
       SELECTION ___

   F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
   ITS2C     4440;;                    AES/PA        VTAM NAPV        TSX2D
   DATE 10/26/17 15:33:52       LOAN FINANCIAL ACTIVITY        PAGE  2 OF  4

   BORROWER SSN:      -4440  NAME: WADDELL, ALISHA D
   1ST DISB: 07/18/07 LN SEQ: 0001   LN PGM: ALPLN        OWN: 122962QT-NCT
   GUARANTOR: TERI - DTC              CUST ACCT:  LT14   ORIG BAL:   9,497.21
   BOND ISSUE: NCT20073   PD AHEAD:    STATUS: ACTIVE      CURR BAL:      0.00
```

| | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|---|-----|-----------|--------|------|------|----------|-----------|
| | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 01/11/10 | 01/11/10 | 1010C | 101.82CR | 102.19 | 10,825.01 |
| 2 | | 11/26/09 | | 2601A | 5.00 | 48.93 | 10,825.01 |
| 3 | | 11/04/09 | 11/04/09 | 1010C | 101.82CR | 20.03 | 10,825.01 |
| 4 | | 10/26/09 | | 2601A | 5.00 | 93.64 | 10,825.01 |
| 5 | | 09/14/09 | 09/14/09 | 1010C | 203.64CR | 42.70 | 10,825.01 |
| 6 | | 08/26/09 | | 2601A | 5.00 | 99.22 | 10,881.73 |
| 7 | | 07/13/09 | 07/14/09 | 1010C | 101.82CR | 57.00 | 10,881.73 |
| 8 | | 06/18/09 | 06/19/09 | 1010C | 101.82CR | 71.65 | 10,926.55 |
| 9 | | 05/18/09 | 05/19/09 | 1010C | 101.82CR | 65.14 | 10,956.72 |
| 10 | | 04/20/09 | 04/20/09 | 1010C | 101.82CR | 48.80 | 10,957.07 |

```
        SELECTION __

   F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
      ITS2C     4440;;                          AES/PA        VTAM NAPV        TSX2D
      DATE 10/26/17 15:33:55        LOAN FINANCIAL ACTIVITY            PAGE   3 OF  4

      BORROWER SSN:      -4440   NAME: WADDELL, ALISHA D
      1ST DISB: 07/18/07 LN SEQ: 0001   LN PGM: ALPLN         OWN: 122962QT-NCT
      GUARANTOR: TERI - DTC              CUST ACCT:  LT14   ORIG BAL:   9,497.21
      BOND ISSUE: NCT20073   PD AHEAD:    STATUS: ACTIVE       CURR BAL:       0.00
```

| | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|---|---|---|---|---|---|---|---|
| | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 03/30/09 | 03/30/09 | 1015C | 101.82CR | 9.20 | 10,957.07 |
| 2 | | 03/26/09 | | 2601A | 5.00 | 48.35 | 10,957.07 |
| 3 | | 03/05/09 | 03/05/09 | 1015C | 101.82CR | 16.13 | 10,957.07 |
| 4 | | 02/26/09 | | 2601A | 5.00 | 46.16 | 10,957.07 |
| 5 | | 02/06/09 | 02/06/09 | 1010C | 105.09CR | 268.24 | 10,957.07 |
| 6 | | 11/07/08 | 11/07/08 | 7001A | 0.00 | 109.37 | 10,957.07 |
| 7 | | 10/01/08 | 10/01/08 | 7001A | 0.00 | 258.45 | 10,847.70 |
| 8 | | 07/01/08 | 07/01/08 | 7001A | 0.00 | 259.85 | 10,589.25 |
| 9 | | 04/01/08 | 04/01/08 | 7001A | 0.00 | 288.85 | 10,329.40 |
| 10 | | 01/01/08 | 01/02/08 | 7001A | 0.00 | 334.02 | 10,040.55 |

```
          SELECTION __

      F1=HELP  F3=EXIT  F5=RFR  F7=BKWD  F8=FWD  F9=PRT  F12=CAN
```

```
ITS2C        4440;;                        AES/PA        VTAM NAPV        TSX2D
DATE 10/26/17 15:33:59        LOAN FINANCIAL ACTIVITY              PAGE   4 OF  4

BORROWER SSN:          -4440  NAME: WADDELL, ALISHA D
1ST DISB: 07/18/07 LN SEQ: 0001    LN PGM: ALPLN        OWN: 122962QT-NCT
GUARANTOR: TERI - DTC                CUST ACCT:  LT14   ORIG BAL:   9,497.21
BOND ISSUE: NCT20073     PD AHEAD:       STATUS: ACTIVE      CURR BAL:      0.00
```

| | REV | EFFECTIVE | POSTED | TRAN | TRAN | INTEREST | PRINCIPAL |
|---|---|---|---|---|---|---|---|
| | REA | DATE | DATE | TYPE | AMOUNT | ACCRUED | BALANCE |
| 1 | | 09/20/07 | 09/20/07 | 0390A | 9,706.53 | 0.00 | 9,497.21 |
| 2 | | 09/20/07 | 09/20/07 | 0395A | 9,706.53CR | 209.32 | 0.00 |
| 3 | | 07/18/07 | 07/18/07 | 0101A | 9,497.21 | 0.00 | 9,497.21 |

```
     SELECTION __
90007 NO MORE DATA TO DISPLAY
F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN
```

```
ITS31      4440;                    AES/PA        VTAM NAPV        TSX31
DATE 10/26/17 15:34:17 DEFERMENT/FORBEARANCE LOAN DETAIL

BORROWER SSN:       -4440 NAME: ALISHA D WADDELL
1ST DISB DATE: 07/18/07    OWNER: NCT              LOAN PGM: ALPLN
LOAN SEQ: 001         GUARANTOR: TERI - DTC
```

|                     | BEGIN    | END      | GRACE        | CAP | DAYS | DAYS | TOTL MOS | CERT     |
|---------------------|----------|----------|--------------|-----|------|------|----------|----------|
| DEFER/FORB TYP      | DATE     | DATE     | END DATE IND |     | USED | LEFT | USED     | DATE     |
| F - GEN/TEMP        | 12 01 09 | 06 30 10 |              | Y   | 212  | 153  | 7.0      | 06 04 10 |

```
F1=HELP  F3=EXIT  F5=RFR  F6=ELG  F7=BKWD  F8=FWD  F9=PRT  F10=HIST  F12=CAN
```

ITS2X       4440;                        AES/PA           VTAM NAPV          TSX2Y
DATE 10/26/17 15:34:35 REPAYMENT SCHEDULE SUMMARY SELECTION      PAGE  1 OF  1

BORROWER SSN       -4440    NAME ALISHA D WADDELL

|     | SCHED | INSTALL | REPAY | REPAY | 1ST DUE | 1ST DISB | LOAN |       |
| SEL STA TYPE | | AMOUNT | LVLS | TERM | DATE | DATE | PGM | OWNER |
|     |     |       |     |     |          |          |       | NCT |
| 2 I | TG  | 47.14 | 4   | 221 | 07/10/10 | 07/18/07 | ALPLN | NCT |
| 3 I | L   | 90.30 | 2   | 226 | 01/10/10 | 07/18/07 | ALPLN | NCT |
|     |     |       |     |     |          |          |       | NCT |
| 5 I | L   | 101.82 | 2   | 237 | 02/10/09 | 07/18/07 | ALPLN | NCT |
|     |     |       |     |     |          |          |       | NCT |
| 7 I | L   | 105.09 | 2   | 238 | 01/22/09 | 07/18/07 | ALPLN | NCT |
|     |     |       |     |     |          |          |       | NCT |

SELECTION  __

F1=HELP   F3=EXIT   F5=RFR   F7=BKWD   F8=FWD   F9=PRT   F12=CAN

Oct 26, 2017 3:34:39 PM

## Loan Payment History Report
### Date: 2017-10-26

| Account Number: | 4440/001-001000 | | |
|---|---|---|---|
| Social Security Number: | 4440 | Product: | EOU EDUCATION ONE UNDERGRAD |
| Name: | WADDELL, ALISHA | Officer Code: | 777073 |
| Birth Date: | 1989 | School: | CHRISTIAN BROTHERS UNIV |
| Address 1: | C/O COREY MCGAHA | Program Year: | 2007-08 |
| Address 2: | 5507 RANCH DR #202 | | |
| City: | LITTLE ROCK | Variable Rate Code: | F3 MONTHLY LIBOR |
| State: | AR | Interest Rate: | 8.48% |
| Zip Code: | 72223 | | |
| Cosigner Name: | WADDELL, JAMES | | |
| Social Security Number: | 1764 | | |
| Address 1: | PO BOX 524 | | |
| Address 2: | | | |
| City: | LINCOLN | | |
| State: | AR | | |
| Zip Code: | 72744-0524 | | |
| | | Last Payment Date: | 2016-09-21 |
| | | Last Payment Amount: | $215.00 |
| Contract Date: | 2007-07-18 | Last Interest Date: | 2017-10-26 |
| Vendor Placement Date: | 2015-08-20 | Accrued Interest: | $5,874.05 |
| Charge Off Date: | 2011-02-01 | Recovered Interest: | $3,058.17 |
| Charge Off Amount: | $11,777.07 | Net Interest: | $2,815.88 |
| Recovered Principal: | $282.03 | Associated Costs: | $0.00 |
| Current Principal: | $11,495.04 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2007-07-18 | Net Costs: | $0.00 |
| Disbursement Amount: | $9,497.21 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2011-02-28 | 00:01 | 82 | $11,777.07 @ 7.510 / 02/01/2011 - 02/28/2011 | $65.43 |
| System | 2011-03-01 | 00:01 | 82 | $11,777.07 @ 7.510 / 02/28/2011 - 03/01/2011 | $2.42 |
| System | 2011-03-31 | 00:01 | 82 | $11,777.07 @ 7.510 / 03/01/2011 - 03/31/2011 | $72.70 |
| System | 2011-04-01 | 00:01 | 82 | $11,777.07 @ 7.510 / 03/31/2011 - 04/01/2011 | $2.42 |
| System | 2011-04-08 | 00:00 | 12 | Interest Office Payment | $142.97 |
| System | 2011-04-08 | 00:00 | 16 | Principal Office Payment | $53.43 |
| System | 2011-04-29 | 00:00 | 16 | Principal Office Payment | $98.20 |
| System | 2011-04-30 | 00:01 | 82 | $11,625.44 @ 7.510 / 04/01/2011 - 04/30/2011 | $69.37 |
| System | 2011-05-02 | 00:01 | 82 | $11,625.44 @ 7.490 / 04/30/2011 - 05/02/2011 | $4.77 |

| System | 2011-05-31 | 00:00 | 12 | Interest Office Payment | $98.20 |
|--------|-----------|-------|-----|-------------------------|--------|
| System | 2011-05-31 | 00:01 | 82 | $11,625.44 @ 7.490 / 05/02/2011 - 05/31/2011 | $69.18 |
| System | 2011-06-01 | 00:01 | 82 | $11,625.44 @ 7.490 / 05/31/2011 - 06/01/2011 | $2.39 |
| System | 2011-06-30 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-06-30 | 00:01 | 82 | $11,625.44 @ 7.460 / 06/01/2011 - 06/30/2011 | $68.91 |
| System | 2011-07-01 | 00:01 | 82 | $11,625.44 @ 7.460 / 06/30/2011 - 07/01/2011 | $2.38 |
| System | 2011-07-31 | 00:01 | 82 | $11,625.44 @ 7.440 / 07/01/2011 - 07/31/2011 | $71.09 |
| System | 2011-08-01 | 00:00 | 12 | Interest Office Payment | $94.06 |
| System | 2011-08-01 | 00:00 | 16 | Principal Office Payment | $4.14 |
| System | 2011-08-01 | 00:01 | 82 | $11,625.44 @ 7.440 / 07/31/2011 - 08/01/2011 | $2.37 |
| System | 2011-08-30 | 00:00 | 16 | Principal Office Payment | $98.20 |
| System | 2011-08-31 | 00:01 | 82 | $11,523.10 @ 7.440 / 08/01/2011 - 08/31/2011 | $70.46 |
| System | 2011-09-01 | 00:01 | 82 | $11,523.10 @ 7.440 / 08/31/2011 - 09/01/2011 | $2.35 |
| System | 2011-09-30 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-09-30 | 00:01 | 82 | $11,523.10 @ 7.440 / 09/01/2011 - 09/30/2011 | $68.12 |
| System | 2011-10-03 | 00:01 | 82 | $11,523.10 @ 7.440 / 09/30/2011 - 10/03/2011 | $7.05 |
| System | 2011-10-31 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-10-31 | 00:01 | 82 | $11,523.10 @ 7.470 / 10/03/2011 - 10/31/2011 | $66.03 |
| System | 2011-11-01 | 00:01 | 82 | $11,523.10 @ 7.470 / 10/31/2011 - 11/01/2011 | $2.36 |
| System | 2011-11-30 | 00:00 | 12 | Interest Office Payment | $88.54 |
| System | 2011-11-30 | 00:00 | 16 | Principal Office Payment | $9.66 |
| System | 2011-11-30 | 00:01 | 82 | $11,523.10 @ 7.490 / 11/01/2011 - 11/30/2011 | $68.57 |
| System | 2011-12-01 | 00:01 | 82 | $11,513.44 @ 7.490 / 11/30/2011 - 12/01/2011 | $2.36 |
| System | 2011-12-29 | 00:00 | 12 | Interest Office Payment | $2.36 |
| System | 2011-12-29 | 00:00 | 16 | Principal Office Payment | $95.84 |
| System | 2011-12-31 | 00:01 | 82 | $11,417.60 @ 7.500 / 12/01/2011 - 12/31/2011 | $70.38 |
| System | 2012-01-03 | 00:01 | 82 | $11,417.60 @ 7.520 / 12/31/2011 - 01/03/2012 | $7.04 |
| System | 2012-01-30 | 00:00 | 12 | Interest Office Payment | $77.44 |
| System | 2012-01-30 | 00:00 | 16 | Principal Office Payment | $20.76 |
| System | 2012-01-31 | 00:01 | 82 | $11,396.84 @ 7.520 / 01/03/2012 - 01/31/2012 | $65.57 |
| System | 2012-02-01 | 00:01 | 82 | $11,396.84 @ 7.520 / 01/31/2012 - 02/01/2012 | $2.34 |
| System | 2012-02-06 | 00:00 | 13 | NSF Principal Office Payment | $98.20 |
| System | 2012-02-29 | 00:01 | 82 | $11,495.04 @ 7.550 / 02/01/2012 - 02/29/2012 | $66.39 |
| System | 2012-03-01 | 00:01 | 82 | $11,495.04 @ 7.510 / 02/29/2012 - 03/01/2012 | $2.36 |
| System | 2012-03-31 | 00:01 | 82 | $11,495.04 @ 7.510 / 03/01/2012 - 03/31/2012 | $70.76 |
| System | 2012-04-02 | 00:01 | 82 | $11,495.04 @ 7.510 / 03/31/2012 - 04/02/2012 | $4.72 |
| System | 2012-04-30 | 00:01 | 82 | $11,495.04 @ 7.490 / 04/02/2012 - 04/30/2012 | $65.87 |
| System | 2012-05-02 | 00:01 | 82 | $11,495.04 @ 7.490 / 04/30/2012 - 05/02/2012 | $4.70 |
| System | 2012-05-31 | 00:01 | 82 | $11,495.04 @ 7.490 / 05/02/2012 - 05/31/2012 | $68.22 |
| System | 2012-06-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 05/31/2012 - 06/01/2012 | $2.35 |
| System | 2012-06-30 | 00:01 | 82 | $11,495.04 @ 7.490 / 06/01/2012 - 06/30/2012 | $68.22 |
| System | 2012-07-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 06/30/2012 - 07/01/2012 | $2.35 |
| System | 2012-07-02 | 00:01 | 82 | $11,495.04 @ 7.490 / 07/01/2012 - 07/02/2012 | $2.35 |
| System | 2012-07-31 | 00:01 | 82 | $11,495.04 @ 7.490 / 07/02/2012 - 07/31/2012 | $68.22 |
| System | 2012-08-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 07/31/2012 - 08/01/2012 | $2.35 |
| System | 2012-08-31 | 00:01 | 82 | $11,495.04 @ 7.500 / 08/01/2012 - 08/31/2012 | $70.67 |
| System | 2012-09-04 | 00:01 | 82 | $11,495.04 @ 7.500 / 08/31/2012 - 09/04/2012 | $9.42 |
| System | 2012-09-30 | 00:01 | 82 | $11,495.04 @ 7.500 / 09/04/2012 - 09/30/2012 | $61.24 |

| System | 2012-10-01 | 00:01 | 82 | $11,495.04 @ 7.500 / 09/30/2012 - 10/01/2012 | $2.36 |
|--------|------------|-------|-----|------------------------------------------------|-------|
| System | 2012-10-31 | 00:01 | 82 | $11,495.04 @ 7.480 / 10/01/2012 - 10/31/2012 | $70.48 |
| System | 2012-11-06 | 00:01 | 82 | $11,495.04 @ 7.480 / 10/31/2012 - 11/06/2012 | $14.10 |
| System | 2012-11-08 | 00:00 | 47 | Check Charge/Fee Adjustment | $-194.38 |
| System | 2012-11-08 | 00:01 | 82 | $11,495.04 @ 7.460 / 11/06/2012 - 11/08/2012 | $4.69 |
| System | 2012-11-09 | 00:01 | 82 | $11,495.04 @ 7.460 / 11/08/2012 - 11/09/2012 | $2.34 |
| System | 2012-12-03 | 00:01 | 82 | $11,495.04 @ 7.460 / 11/09/2012 - 12/03/2012 | $56.23 |
| System | 2012-12-17 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/03/2012 - 12/17/2012 | $32.80 |
| System | 2012-12-21 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/17/2012 - 12/21/2012 | $9.37 |
| System | 2012-12-31 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/21/2012 - 12/31/2012 | $23.43 |
| System | 2013-01-11 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/31/2012 - 01/11/2013 | $25.84 |
| System | 2013-01-14 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/11/2013 - 01/14/2013 | $7.05 |
| System | 2013-01-18 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/14/2013 - 01/18/2013 | $9.40 |
| System | 2013-01-21 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/18/2013 - 01/21/2013 | $7.05 |
| System | 2013-01-22 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/21/2013 - 01/22/2013 | $2.35 |
| System | 2013-01-24 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/22/2013 - 01/24/2013 | $4.70 |
| System | 2013-01-25 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/24/2013 - 01/25/2013 | $2.35 |
| System | 2013-01-30 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/25/2013 - 01/30/2013 | $11.75 |
| System | 2013-01-31 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/30/2013 - 01/31/2013 | $2.35 |
| System | 2013-02-01 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/31/2013 - 02/01/2013 | $2.35 |
| System | 2013-02-04 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/01/2013 - 02/04/2013 | $7.05 |
| System | 2013-02-06 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/04/2013 - 02/06/2013 | $4.70 |
| System | 2013-02-07 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/06/2013 - 02/07/2013 | $2.35 |
| System | 2013-02-08 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/07/2013 - 02/08/2013 | $2.35 |
| System | 2013-02-11 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/08/2013 - 02/11/2013 | $7.05 |
| System | 2013-02-12 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/11/2013 - 02/12/2013 | $2.35 |
| System | 2013-02-14 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/12/2013 - 02/14/2013 | $4.70 |
| System | 2013-02-15 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/14/2013 - 02/15/2013 | $2.35 |
| System | 2013-02-18 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/15/2013 - 02/18/2013 | $7.05 |
| System | 2013-02-28 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/18/2013 - 02/28/2013 | $23.49 |
| System | 2013-03-01 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/28/2013 - 03/01/2013 | $2.35 |
| System | 2013-03-04 | 00:01 | 82 | $11,495.04 @ 7.450 / 03/01/2013 - 03/04/2013 | $7.04 |
| System | 2013-03-31 | 00:01 | 82 | $11,495.04 @ 7.450 / 03/04/2013 - 03/31/2013 | $63.35 |
| System | 2013-04-30 | 00:01 | 82 | $11,495.04 @ 7.450 / 03/31/2013 - 04/30/2013 | $70.39 |
| System | 2013-05-07 | 00:01 | 82 | $11,495.04 @ 7.450 / 04/30/2013 - 05/07/2013 | $16.42 |
| System | 2013-05-31 | 00:01 | 82 | $11,495.04 @ 7.450 / 05/07/2013 - 05/31/2013 | $56.31 |
| System | 2013-06-30 | 00:01 | 82 | $11,495.04 @ 7.450 / 05/31/2013 - 06/30/2013 | $70.39 |
| System | 2013-07-04 | 00:01 | 82 | $11,495.04 @ 7.450 / 06/30/2013 - 07/04/2013 | $9.38 |
| System | 2013-07-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 07/04/2013 - 07/31/2013 | $63.26 |
| System | 2013-08-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 07/31/2013 - 08/31/2013 | $72.64 |
| System | 2013-09-30 | 00:01 | 82 | $11,495.04 @ 7.440 / 08/31/2013 - 09/30/2013 | $70.29 |
| System | 2013-10-09 | 00:01 | 82 | $11,495.04 @ 7.440 / 09/30/2013 - 10/09/2013 | $21.09 |
| System | 2013-10-31 | 00:01 | 82 | $11,495.04 @ 7.430 / 10/09/2013 - 10/31/2013 | $51.48 |
| System | 2013-11-30 | 00:01 | 82 | $11,495.04 @ 7.430 / 10/31/2013 - 11/30/2013 | $70.20 |
| System | 2013-12-04 | 00:01 | 82 | $11,495.04 @ 7.430 / 11/30/2013 - 12/04/2013 | $9.36 |
| System | 2013-12-31 | 00:01 | 82 | $11,495.04 @ 7.420 / 12/04/2013 - 12/31/2013 | $63.09 |
| System | 2014-01-31 | 00:01 | 82 | $11,495.04 @ 7.420 / 12/31/2013 - 01/31/2014 | $72.44 |
| System | 2014-02-28 | 00:01 | 82 | $11,495.04 @ 7.420 / 01/31/2014 - 02/28/2014 | $65.43 |

| System | 2014-04-03 | 00:01 | 82 | $11,495.04 @ 7.420 / 02/28/2014 - 04/03/2014 | $79.45 |
| System | 2014-05-07 | 00:01 | 82 | $11,495.04 @ 7.410 / 04/03/2014 - 05/07/2014 | $79.34 |
| System | 2014-05-21 | 00:01 | 82 | $11,495.04 @ 7.400 / 05/07/2014 - 05/21/2014 | $32.63 |
| System | 2014-07-31 | 00:01 | 82 | $11,495.04 @ 7.400 / 05/21/2014 - 07/31/2014 | $165.47 |
| System | 2014-08-31 | 00:01 | 82 | $11,495.04 @ 7.400 / 07/31/2014 - 08/31/2014 | $72.25 |
| System | 2014-09-02 | 00:01 | 82 | $11,495.04 @ 7.400 / 08/31/2014 - 09/02/2014 | $4.66 |
| System | 2014-09-30 | 00:01 | 82 | $11,495.04 @ 7.410 / 09/02/2014 - 09/30/2014 | $65.34 |
| System | 2014-10-01 | 00:01 | 82 | $11,495.04 @ 7.410 / 09/30/2014 - 10/01/2014 | $2.33 |
| System | 2014-10-31 | 00:01 | 82 | $11,495.04 @ 7.410 / 10/01/2014 - 10/31/2014 | $70.01 |
| System | 2014-11-30 | 00:01 | 82 | $11,495.04 @ 7.410 / 10/31/2014 - 11/30/2014 | $70.01 |
| System | 2014-12-31 | 00:01 | 82 | $11,495.04 @ 7.410 / 11/30/2014 - 12/31/2014 | $72.34 |
| System | 2015-01-05 | 00:01 | 82 | $11,495.04 @ 7.410 / 12/31/2014 - 01/05/2015 | $11.66 |
| System | 2015-01-31 | 00:01 | 82 | $11,495.04 @ 7.400 / 01/05/2015 - 01/31/2015 | $60.59 |
| System | 2015-02-03 | 00:01 | 82 | $11,495.04 @ 7.400 / 01/31/2015 - 02/03/2015 | $6.99 |
| System | 2015-02-28 | 00:01 | 82 | $11,495.04 @ 7.420 / 02/03/2015 - 02/28/2015 | $58.42 |
| System | 2015-03-31 | 00:01 | 82 | $11,495.04 @ 7.420 / 02/28/2015 - 03/31/2015 | $72.44 |
| System | 2015-04-30 | 00:01 | 82 | $11,495.04 @ 7.420 / 03/31/2015 - 04/30/2015 | $70.10 |
| System | 2015-05-01 | 00:01 | 82 | $11,495.04 @ 7.420 / 04/30/2015 - 05/01/2015 | $2.34 |
| System | 2015-05-31 | 00:01 | 82 | $11,495.04 @ 7.430 / 05/01/2015 - 05/31/2015 | $70.20 |
| System | 2015-06-30 | 00:01 | 82 | $11,495.04 @ 7.430 / 05/31/2015 - 06/30/2015 | $70.20 |
| System | 2015-07-31 | 00:01 | 82 | $11,495.04 @ 7.430 / 06/30/2015 - 07/31/2015 | $72.54 |
| System | 2015-08-03 | 00:01 | 82 | $11,495.04 @ 7.430 / 07/31/2015 - 08/03/2015 | $7.02 |
| System | 2015-08-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 08/03/2015 - 08/31/2015 | $65.61 |
| System | 2015-09-30 | 00:01 | 82 | $11,495.04 @ 7.440 / 08/31/2015 - 09/30/2015 | $70.29 |
| System | 2015-10-01 | 00:01 | 82 | $11,495.04 @ 7.440 / 09/30/2015 - 10/01/2015 | $2.34 |
| System | 2015-11-04 | 00:01 | 82 | $11,495.04 @ 7.450 / 10/01/2015 - 11/04/2015 | $79.77 |
| System | 2015-11-05 | 00:01 | 82 | $11,495.04 @ 7.450 / 11/04/2015 - 11/05/2015 | $2.35 |
| System | 2015-12-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 11/05/2015 - 12/31/2015 | $131.21 |
| System | 2016-01-01 | 00:01 | 82 | $11,495.04 @ 7.440 / 12/31/2015 - 01/01/2016 | $2.34 |
| System | 2016-01-19 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-01-19 | 00:01 | 82 | $11,495.04 @ 7.490 / 01/01/2016 - 01/19/2016 | $42.34 |
| System | 2016-01-31 | 00:01 | 82 | $11,495.04 @ 7.490 / 01/19/2016 - 01/31/2016 | $28.23 |
| System | 2016-02-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 01/31/2016 - 02/01/2016 | $2.35 |
| System | 2016-02-12 | 00:00 | 12 | Interest Office Payment | $-305.00 |
| System | 2016-02-12 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-02-12 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/01/2016 - 02/12/2016 | $26.53 |
| System | 2016-02-16 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-02-16 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/12/2016 - 02/16/2016 | $9.65 |
| System | 2016-02-29 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/16/2016 - 02/29/2016 | $31.36 |
| System | 2016-03-16 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-03-16 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/29/2016 - 03/16/2016 | $38.59 |
| System | 2016-03-31 | 00:01 | 82 | $11,495.04 @ 7.680 / 03/16/2016 - 03/31/2016 | $36.18 |
| System | 2016-04-01 | 00:01 | 82 | $11,495.04 @ 7.680 / 03/31/2016 - 04/01/2016 | $2.41 |
| System | 2016-04-18 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-04-18 | 00:01 | 82 | $11,495.04 @ 7.677 / 04/01/2016 - 04/18/2016 | $40.99 |
| System | 2016-04-30 | 00:01 | 82 | $11,495.04 @ 7.677 / 04/18/2016 - 04/30/2016 | $28.93 |
| System | 2016-05-02 | 00:01 | 82 | $11,495.04 @ 7.677 / 04/30/2016 - 05/02/2016 | $4.82 |
| System | 2016-05-17 | 00:00 | 12 | Interest Office Payment | $305.00 |

| System | 2016-05-17 | 00:01 | 82 | $11,495.04 @ 7.690 / 05/02/2016 - 05/17/2016 | $36.23 |
| System | 2016-05-31 | 00:01 | 82 | $11,495.04 @ 7.690 / 05/17/2016 - 05/31/2016 | $33.81 |
| System | 2016-06-16 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-06-16 | 00:01 | 82 | $11,495.04 @ 7.690 / 05/31/2016 - 06/16/2016 | $38.64 |
| System | 2016-06-30 | 00:01 | 82 | $11,495.04 @ 7.690 / 06/16/2016 - 06/30/2016 | $33.81 |
| System | 2016-07-01 | 00:01 | 82 | $11,495.04 @ 7.690 / 06/30/2016 - 07/01/2016 | $2.42 |
| System | 2016-07-18 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-07-18 | 00:01 | 82 | $11,495.04 @ 7.720 / 07/01/2016 - 07/18/2016 | $41.22 |
| System | 2016-07-25 | 00:00 | 12 | Interest Office Payment | $-305.00 |
| System | 2016-07-25 | 00:01 | 82 | $11,495.04 @ 7.720 / 07/18/2016 - 07/25/2016 | $16.97 |
| System | 2016-08-01 | 00:01 | 82 | $11,495.04 @ 7.720 / 07/25/2016 - 08/01/2016 | $16.97 |
| System | 2016-08-19 | 00:00 | 12 | Interest Office Payment | $215.00 |
| System | 2016-08-19 | 00:01 | 82 | $11,495.04 @ 7.720 / 08/01/2016 - 08/19/2016 | $43.64 |
| System | 2016-08-31 | 00:01 | 82 | $11,495.04 @ 7.720 / 08/19/2016 - 08/31/2016 | $29.10 |
| System | 2016-09-01 | 00:01 | 82 | $11,495.04 @ 7.720 / 08/31/2016 - 09/01/2016 | $2.42 |
| System | 2016-09-21 | 00:00 | 12 | Interest Office Payment | $215.00 |
| System | 2016-09-21 | 00:01 | 82 | $11,495.04 @ 7.750 / 09/01/2016 - 09/21/2016 | $48.68 |
| System | 2016-09-30 | 00:01 | 82 | $11,495.04 @ 7.750 / 09/21/2016 - 09/30/2016 | $21.91 |
| System | 2016-10-01 | 00:01 | 82 | $11,495.04 @ 7.750 / 09/30/2016 - 10/01/2016 | $2.43 |
| System | 2016-10-08 | 00:00 | 44 | Interest Adjustment | $-32.86 |
| System | 2016-10-08 | 00:01 | 82 | $11,495.04 @ 7.770 / 10/01/2016 - 10/08/2016 | $17.08 |
| System | 2016-10-31 | 00:01 | 82 | $11,495.04 @ 7.770 / 10/08/2016 - 10/31/2016 | $56.13 |
| System | 2016-11-01 | 00:01 | 82 | $11,495.04 @ 7.770 / 10/31/2016 - 11/01/2016 | $2.44 |
| System | 2016-11-30 | 00:01 | 82 | $11,495.04 @ 7.780 / 11/01/2016 - 11/30/2016 | $70.86 |
| System | 2016-12-31 | 00:01 | 82 | $11,495.04 @ 7.780 / 11/30/2016 - 12/31/2016 | $75.75 |
| System | 2017-01-01 | 00:01 | 82 | $11,495.04 @ 7.780 / 12/31/2016 - 01/01/2017 | $2.45 |
| System | 2017-01-31 | 00:01 | 82 | $11,495.04 @ 7.870 / 01/01/2017 - 01/31/2017 | $74.36 |
| System | 2017-02-01 | 00:01 | 82 | $11,495.04 @ 7.870 / 01/31/2017 - 02/01/2017 | $2.48 |
| System | 2017-02-28 | 00:01 | 82 | $11,495.04 @ 8.020 / 02/01/2017 - 02/28/2017 | $68.20 |
| System | 2017-03-01 | 00:01 | 82 | $11,495.04 @ 8.020 / 02/28/2017 - 03/01/2017 | $2.53 |
| System | 2017-03-31 | 00:01 | 82 | $11,495.04 @ 8.030 / 03/01/2017 - 03/31/2017 | $75.87 |
| System | 2017-04-01 | 00:01 | 82 | $11,495.04 @ 8.030 / 03/31/2017 - 04/01/2017 | $2.53 |
| System | 2017-04-30 | 00:01 | 82 | $11,495.04 @ 8.040 / 04/01/2017 - 04/30/2017 | $73.43 |
| System | 2017-05-01 | 00:01 | 82 | $11,495.04 @ 8.040 / 04/30/2017 - 05/01/2017 | $2.53 |
| System | 2017-05-18 | 00:00 | 33 | FILE SUMCOM CMKR | $167.50 |
| System | 2017-05-18 | 00:01 | 82 | $11,495.04 @ 8.230 / 05/01/2017 - 05/18/2017 | $44.06 |
| System | 2017-05-31 | 00:01 | 82 | $11,495.04 @ 8.230 / 05/18/2017 - 05/31/2017 | $33.69 |
| System | 2017-06-01 | 00:01 | 82 | $11,495.04 @ 8.230 / 05/31/2017 - 06/01/2017 | $2.59 |
| System | 2017-06-02 | 00:00 | 33 | SHERRIFF FEES | $60.00 |
| System | 2017-06-02 | 00:01 | 82 | $11,495.04 @ 8.250 / 06/01/2017 - 06/02/2017 | $2.60 |
| System | 2017-06-30 | 00:01 | 82 | $11,495.04 @ 8.250 / 06/02/2017 - 06/30/2017 | $72.75 |
| System | 2017-07-01 | 00:01 | 82 | $11,495.04 @ 8.250 / 06/30/2017 - 07/01/2017 | $2.60 |
| System | 2017-07-31 | 00:01 | 82 | $11,495.04 @ 8.310 / 07/01/2017 - 07/31/2017 | $78.51 |
| System | 2017-08-01 | 00:01 | 82 | $11,495.04 @ 8.310 / 07/31/2017 - 08/01/2017 | $2.62 |
| System | 2017-08-31 | 00:01 | 82 | $11,495.04 @ 8.470 / 08/01/2017 - 08/31/2017 | $80.02 |
| System | 2017-09-01 | 00:01 | 82 | $11,495.04 @ 8.470 / 08/31/2017 - 09/01/2017 | $2.67 |
| System | 2017-09-30 | 00:01 | 82 | $11,495.04 @ 8.480 / 09/01/2017 - 09/30/2017 | $77.45 |
| System | 2017-10-26 | 00:01 | 82 | $11,495.04 @ 8.480 / 09/30/2017 - 10/26/2017 | $69.44 |

# FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

A Professional Corporation

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KENNETH S. CHRISTIANSEN
KELLY C. DICKEN * / **** / *****
LINDA C. NOE
JESSICA COX *
ANGELA D. SIMMONS **
MICHAEL D. BEACH ***
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM

ATTORNEYS AT LAW
1810 AILOR AVENUE
KNOXVILLE, TN 37921

www.fksclaw.com

August 26, 2015

P. O. BOX 1
KNOXVILLE, TENNESSEE 37801

TELEPHONE (865) 525-0239
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Alabama
**** Admitted in Arkansas
***** Admitted in Kentucky

ALISHA  WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

Re:  ALISHA  WADDELL
Creditor:                        NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
Creditor Account No.    XXXXX-XXXX-XXXX-1000
Current Balance Due:   $14,623.98
Our File No.:                15-16290

Dear ALISHA WADDELL:

Please be advised that the above account has been assigned to our office for collection efforts.  It is our hope that an effort will be made to voluntarily resolve this outstanding obligation.  As of the date of this letter, the amount owed is $14,623.98.  At this time, no attorney with this firm has personally reviewed the particular circumstances of this account, and this letter is not a threat of suit.  Because of interest that may vary from day to day, the amount due on the day payment is made may be greater.  Hence, if the amount shown above is paid, an adjustment may be necessary after we receive the payment check, in which event we may attempt to advise before depositing the payment check for collection.

Please contact our office so that we can discuss payment of this account.  For further information, write the undersigned or call 1-888-200-6501 between the hours of 8:30 a.m. and 7:00 p.m. (EST) Monday through Friday.

Sincerely,

FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

NOTICE

This communication is from a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.

VALIDATION NOTICE

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that the debt or any portion thereof is disputed, this office will obtain verification of the debt or obtain a copy of a judgment, if any, and mail you a copy of such verification or judgment. If you so request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

LDR_DMD Initial Retail     File No.: 15-16290

## FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

A Professional Corporation

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KENNETH S. CHRISTIANSEN
KELLY C. DICKEN * / **** / *****
LINDA C. NOE
JESSICA COX *
ANGELA D. SIMMONS **
MICHAEL D. BEACH ***
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM

ATTORNEYS AT LAW
1810 AILOR AVENUE
KNOXVILLE, TN 37921

www.fkscdaw.com


December 11, 2015

P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Alabama
**** Admitted in Arkansas
***** Admitted in Kentucky

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

> Re:   ALISHA WADDELL
> Creditor:          NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
> Orig. Creditor Ref No.  XXXXX-XXXX-XXXX-1000
> Our File No.:      15-16290

Dear ALISHA WADDELL:

This letter will serve to confirm our client has agreed to accept $7,315.00 as full and final settlement in the above styled matter in installments as outlined below. Please send certified funds directly to this office at the above address made payable to Finkelstein, Kern, Steinberg & Cunningham.  Note that this settlement agreement is void if not paid exactly as set forth in this letter and you may be responsible to pay the balance in full.  Upon receipt of complete and timely payment of $7,315.00, we will submit the satisfaction of judgment and lien release to be entered by the court. We will close the account as satisfied in full and notify our client to update the credit report accordingly. I look forward to hearing from you.

Stipulated Settlement Installment Agreement

| | |
|---|---|
| Down Payment Amount and Date: | $305.00 due 01/15/2016 |
| Monthly Payment Amount: | $305.00 |
| Date Due: | 15th |
| Number of Payments: | (24) |
| Total Amount of Settlement: | $7,315.00 |

Whenever $600.00 or more of a debt is forgiven as a result of settling a debt for less than the balance owed, it may be considered taxable income.  The creditor is required to report the amount of the debt forgiven to the Internal Revenue Service on Form 1099C, a copy of which will be mailed to you. If you are uncertain of the tax consequences, consult your tax advisor.

If you have any questions, do not hesitate to contact us at 865 525-0238 or toll free at 888-200-6501.   We look forward to hearing from you soon.

Sincerely,
Jonnesha Brown ext 202
Legal Assistant
FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

NOTICE

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

# FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

A Professional Corporation

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KENNETH S. CHRISTIANSEN
KELLY C. DICKEN * / **** / *****
LINDA C. NOE
JESSICA COX *
ANGELA D. SIMMONS **
MICHAEL D. BEACH ***
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM

ATTORNEYS AT LAW
1810 AILOR AVENUE
KNOXVILLE, TN 37921

www.fksclaw.com

February 11, 2016

P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Alabama
**** Admitted in Arkansas
***** Admitted in Kentucky

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

Re: ALISHA WADDELL
Creditor: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
Orig Creditor Ref No. XXXXX-XXXX-XXXX-1000
Our File No.: 15-16290

Dear ALISHA WADDELL:

Please find enclosed the electronic debit authorization form for payment on the above referenced file. The enclosed form contains the account and authentication information you provided by telephone. You have signed this form electronically, meaning that you gave this office permission by telephone or other electronic means to enroll you in this payment plan. Your electronic signature is confirmation that the information you gave us is accurately reflected on the form as well as confirmation that we have the authority to draft your account accordingly. If anything on the form is incorrect or if any of the information changes, please contact us at 1-888-200-6501 so that the records can be updated.

Thank you for your time and attention to this matter. If you have any questions, or we may assist you in any way, please do not hesitate to contact us at 865 525-0238 or toll free at 1-888-200-6501.

Sincerely,
Missy Dalton ext 202
Legal Assistant
FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

## NOTICE

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_CHECK BY PHONE LTR

## FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

A PROFESSIONAL CORPORATION

**ATTORNEYS AT LAW**

1810 AILOR AVENUE
KNOXVILLE, TN 37921

www.fksclaw.com

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KENNETH S. CHRISTIANSEN
KELLY C. DICKEN * / **** / *****
LINDA C. NOE
JESSICA COX *
ANGELA D. SIMMONS **
MICHAEL B. BEACH ***
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM

P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

TELEPHONE: (865) 525-0238
TOLL FREE: (865) 200-8501
FAX: (865) 523-5138

* Admitted in Tennessee and
  Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Alabama
**** Admitted in Arkansas
***** Admitted in Kentucky

February 11, 2016

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

Re:  ALISHA WADDELL

|  |  |
|---|---|
| Creditor: | NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3 |
| Creditor Acct. No.: | XXXXX-XXXX-XXXX-1000 |
| Current Balance Due: | $14,318.98 |
| Our File No: | 15-16290 |

**Terms of Installment Agreement**

| First Payment: | $305.00 |
|---|---|
| First Payment Due Date: | February 15, 2016 |
| Monthly Payment Amount: | $305.00 |
| Day Payments Are Due: | 15th |
| Payment Frequency: | Monthly |
| Number of Payments: | (6) SIX |

Dear ALISHA WADDELL:

### INSTALLMENT CONFIRMATION

Thank you for contacting our office to set up a payment arrangement. This notice is to confirm that you have authorized our office to accept payments on the referenced account by way of electronic transfer of funds pursuant to an Electronic Debit Account Authorization Form that you have provided to our office. The schedule for payments is stated above. All payments must be on time when the account comes due for payment. Funds in your account that are insufficient to complete any electronic transfer when it comes due will VOID this agreement and will default your payment arrangement. If the payment arrangement is voided our office will void all post-dated checks. Certified or secured funds will be required for the next six (6) months or until the debt is satisfied, whichever may occur first.

We request that you update our office if there should be any change in your address or your banking information. If you have any questions, or we may assist you in any way, please do not hesitate to contact us at 865 525-0238 or toll free at 1-888-200-6501.

Sincerely,
Missy Dalton ext 202
Legal Assistant
FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

### NOTICE

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_PPA  Check By Phone

# ELECTRONIC DEBIT ACCOUNT AUTHORIZATION FORM

**Finkelstein, Kern, Steinberg & Cunningham**
**P. O. Box 1**
**Knoxville, Tennessee 37901**

## ENROLLEE'S INFORMATION

| Name (First, Middle, Last) | | ENROLLEE'S SOCIAL SECURITY NUMBER |
|---|---|---|
| ALISHA WADDELL | | XXX-XX-4440 |
| STREET ADDRESS | | TELEPHONE NUMBER |
| | | |
| CITY | STATE | ZIP CODE |
| SPRINGDALE | AR | |

## ACCOUNT INFORMATION

| BANK NAME | | BANK TELEPHONE NUMBER(Area Code and Number) |
|---|---|---|
| GREAT SOUTHERN BANK, FSB | | |

| BANK ROUTING NUMBER | ACCOUNT NUMBER | ACCOUNT HOLDER'S NAME |
|---|---|---|
| XXXXX3322 | XXXXXX9696 | ALISHA WADDELL |

### TYPE OF ACCOUNT (Check One)

☒ CHECKING ACCOUNT          ☐ SAVINGS ACCOUNT

## AUTHORIZATION

I hereby authorize Finkelstein, Kern, Steinberg & Cunningham to initiate a deduction from my account and the financial institution named above to debit such account. I understand I will be notified if the debit amount needs to be adjusted, either to be increased or decreased. I also understand that I have the right to stop automatic payment by notifying my financial institution in writing three (3) days prior to the time my account is charged.

| SIGNATURE | DATE |
|---|---|
| ALISHA WADDELL | 02/11/2016 |
| ELECTRONIC SIGNATURE BY APPROVAL | |

### Paperwork Reduction Act and Privacy Act Statement

The following information is provided to comply with the Privacy Act of 1974 (P.L. 93-579). The information requested is required under various provisions of title 15 U.S.C. 1601, 12 CFR 205 and 31 CFR 202, for the purpose of providing authority to the Department of Treasury to designate financial institutions to collect payments, by electronic means, from your account. The information will be used for identification with the records of the government agency and the financial institution to direct your payments to the point you authorize. No deduction may be made unless a signed authorization form is received. Failure to furnish this information may delay or prevent the collection of these payments through the Automated Clearing House System.

## NOTICE

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_CHECK BY PHONE AUTH    15-16290    02/11/2016

## FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

A Professional Corporation

**ATTORNEYS AT LAW**

1810 AILOR AVENUE
KNOXVILLE, TN 37921

www.fksclaw.com

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KENNETH S. CHRISTIANSEN
KELLY C. DICKEN * / **** / *****
LINDA C. NOE
JESSICA COX *
ANGELA D. SIMMONS **
MICHAEL D. BEACH ***
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM

March 04, 2016

P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Alabama
**** Admitted in Arkansas
***** Admitted in Kentucky

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

      Re:    ALISHA WADDELL
          Creditor:         NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
          Orig Creditor Ref No.   XXXXX-XXXX-XXXX-1000
          Our File No.:       15-16290

Dear ALISHA WADDELL:

Please be advised that we are in receipt of your post-dated check sent to our office as a payment for the above-named creditor. Please note that we will deposit your check on the date indicated on the check. Please notate your records accordingly. Thank you for your time and attention to this matter.

If you have any questions, or we may assist you in any way, please do not hesitate to contact us at 865 525-0238 or toll free at 1-888-200-6501.

Sincerely,

Legal Assistant
FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

**NOTICE**

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_Post Dated Check Ack   File No.: 15-16290

# FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

A Professional Corporation

ATTORNEYS AT LAW

1810 AILOR AVENUE
KNOXVILLE, TN 37921

www.fksclaw.com

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KENNETH S. CHRISTIANSEN
KELLY C. DICKEN * / **** / *****
LINDA C. NOE
JESSICA COX *
ANGELA D. SIMMONS **
MICHAEL D. BEACH ***
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM

April 04, 2016

P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Alabama
**** Admitted in Arkansas
***** Admitted in Kentucky

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

Re:     ALISHA WADDELL
        Creditor:              NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
        Orig Creditor Ref No.  XXXXX-XXXX-XXXX-1000
        Our File No.:          15-16290

Dear ALISHA WADDELL:

Please be advised that we are in receipt of your post-dated check sent to our office as a payment for the above-named creditor. Please note that we will deposit your check on the date indicated on the check. Please notate your records accordingly. Thank you for your time and attention to this matter.

If you have any questions, or we may assist you in any way, please do not hesitate to contact us at 865 525-0238 or toll free at 1-888-200-6501.

Sincerely,

Legal Assistant
FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

NOTICE

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_Post Dated Check Ack   File No.: 15-16290

# FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KELLY C. DICKEN * / *** / ****
LINDA C. NOE
ANGELA D. SIMMONS **
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM
SHAWN SCHOLEM *

A Professional Corporation
ATTORNEYS AT LAW
1810 AILOR AVENUE
KNOXVILLE, TN 37921

Mailing Address:
P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

www.fksclaw.com

May 04, 2016

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Arkansas
**** Admitted in Kentucky

Of Counsel:
KENNETH S. CHRISTIANSEN

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

Re:     ALISHA WADDELL
        Creditor:              NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
        Orig Creditor Ref No.  XXXXX-XXXX-XXXX-1000
        Our File No.:          15-16290

Dear ALISHA WADDELL:

Please be advised that we are in receipt of your post-dated check sent to our office as a payment for the above-named creditor. Please note that we will deposit your check on the date indicated on the check. Please notate your records accordingly. Thank you for your time and attention to this matter.

If you have any questions, or we may assist you in any way, please do not hesitate to contact us at 865 525-0238 or toll free at 1-888-200-6501.

Sincerely,

Legal Assistant
FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

## NOTICE

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_Post Dated Check Ack   File No.: 15-16290

# FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KELLY C. DICKEN * / *** / ****
LINDA C. NOE
ANGELA D. SIMMONS **
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM
SHAWN SCHOLEM *

A Professional Corporation
ATTORNEYS AT LAW
1810 AILOR AVENUE
KNOXVILLE, TN 37921

Mailing Address:
P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

www.fksclaw.com

June 06, 2016

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5136

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Arkansas
**** Admitted in Kentucky

Of Counsel:
KENNETH S. CHRISTIANSEN

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

Re:     ALISHA  WADDELL
Creditor:              NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
Orig Creditor Ref No.  XXXXX-XXXX-XXXX-1000
Our File No.:          15-16290

Dear ALISHA  WADDELL:

Please be advised that we are in receipt of your post-dated check sent to our office as a payment for the above-named creditor. Please note that we will deposit your check on the date indicated on the check. Please notate your records accordingly. Thank you for your time and attention to this matter.

If you have any questions, or we may assist you in any way, please do not hesitate to contact us at 865 525-0238 or toll free at 1-888-200-6501.

Sincerely,

Legal Assistant
FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

**NOTICE**
This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_Post Dated Check Ack   File No.: 15-16290

## FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KELLY C. DICKEN * / *** / ****
LINDA C. NOE
ANGELA D. SIMMONS **
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM
SHAWN SCHOLEM *

A Professional Corporation
ATTORNEYS AT LAW
1810 AILOR AVENUE
KNOXVILLE, TN 37921

Mailing Address:
P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

www.fksclaw.com

July 05, 2016

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Arkansas
**** Admitted in Kentucky

Of Counsel:
KENNETH S. CHRISTIANSEN

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

Re: ALISHA WADDELL
Creditor: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
Orig Creditor Ref No. XXXXX-XXXX-XXXX-1000
Our File No.: 15-16290

Dear ALISHA WADDELL:

Your previously authorized automatic payment arrangement is expiring. We are in receipt of your last payment dated July 15, 2016. Please call our office immediately to set up future automatic payment arrangements on this account or you may also mail in your payment by check or money order to P. O. Box 1, Knoxville, TN 37901. If you have already set up your payments, please disregard this letter. Thank you for your time and attention to this matter.

If you have any questions, or we may assist you in any way, please do not hesitate to contact us at 865 525-0238 or toll free at 1-888-200-6501.

Sincerely,

FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

NOTICE
This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_PPA Auto Deduct Expiring    File No.: 15-16290

## FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KELLY C. DICKEN * / *** / ****
LINDA C. NOE
ANGELA D. SIMMONS **
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM
SHAWN SCHOLEM *

A Professional Corporation
ATTORNEYS AT LAW
1810 AILOR AVENUE
KNOXVILLE, TN 37921

Mailing Address:
P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

www.fksclaw.com

July 05, 2016

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Arkansas
**** Admitted in Kentucky

Of Counsel:
KENNETH S. CHRISTIANSEN

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

Re:    ALISHA  WADDELL
Creditor:    NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
Orig Creditor Ref No.    XXXXX-XXXX-XXXX-1000
Our File No.:    15-16290

Dear ALISHA WADDELL:

Please be advised that we are in receipt of your post-dated check sent to our office as a payment for the above-named creditor. Please note that we will deposit your check on the date indicated on the check. Please notate your records accordingly. Thank you for your time and attention to this matter.

If you have any questions, or we may assist you in any way, please do not hesitate to contact us at 865 525-0238 or toll free at 1-888-200-6501.

Sincerely,

FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

### NOTICE
This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_Post Dated Check Ack    File No.: 15-16290

# FINKELSTEIN, KERN, STEINBERG & CUNNINGHAM

RON CUNNINGHAM
KENNETH W. HOLBERT
D. VANCE MARTIN
KELLY C. DICKEN * / *** / ****
LINDA C. NOE
ANGELA D. SIMMONS **
MARK B. CUNNINGHAM
DANIEL J. CHUNG
PETER D. VAN DE VATE
SHARON H. KIM
SHAWN SCHOLEM *

A Professional Corporation
ATTORNEYS AT LAW
1810 AILOR AVENUE
KNOXVILLE, TN 37921

Mailing Address:
P. O. BOX 1
KNOXVILLE, TENNESSEE 37901

www.fksclaw.com

July 22, 2016

TELEPHONE (865) 525-0238
TOLL FREE (888) 200-6501
FAX: (865) 523-5138

* Admitted in Tennessee and
Mississippi
** TN Supreme Court Rule 31
Listed Mediator (General Civil)
*** Admitted in Arkansas
**** Admitted in Kentucky

Of Counsel:
KENNETH S. CHRISTIANSEN

ALISHA WADDELL

SPRINGDALE AR
ADDRESS SERVICE REQUESTED

Re: ALISHA WADDELL
Creditor: NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3
Orig. Creditor Ref No. XXXXX-XXXX-XXXX-1000
Our File No.: 15-16290

Dear ALISHA WADDELL:

We received your recent payment; however, your bank has returned your check number #9005 to our office as insufficient. Please note we will no longer accept any personal checks on this debt until the matter is resolved, including any post-dated checks or EFTs (Electronic Funds Transfers) on this account. Any future post-dated checks we may be holding will not be processed until this matter is resolved.

Please contact our office immediately to make arrangements to replace this insufficient check. You may contact us toll free at 1-888-200-6501.

Sincerely,
Jonnesha Brown
FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C.

**NOTICE**

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

LDR_NSF Check Notice    File No.: 15-16290

**COVER SHEET**
**STATE OF ARKANSAS**
**CIRCUIT COURT: CIVIL**

The civil reporting form and the information contained herein shall not be admissible as evidence in any
court proceeding or replace or supplement the filing and service of pleadings, orders, or other papers as
required by law or Supreme Court Rule. This form is required pursuant to Administrative Order Number 8.
Instructions are available at https://courts.arkansas.gov.                                1/1/2017

| County: WASHINGTON | District: | Filing Date: 5/23/17 |
|---|---|---|
| Judge: | Division: | Case ID: 72CV - 17 - 1002 - 1 |

Type of case (select one that best describes the subject matter):

**Torts**
☐ (NM) Automobile
☐ (IT) Intentional
☐ (MP) Malpractice - Medical
☐ (MO) Malpractice - Other
☐ (LP) Premises - Liability
☐ (PL) Product Liability
☐ (DF) Slander/Libel
  Defamation
☐ (OD) Torts - Other

**Contracts**
☐ (BP) Buyer Plaintiff
☐ (EM) Employment Discrimination
☐ (EO) Employment - Other
☐ (DO) Seller Plaintiff (Debt Collection)
☒ (OC) Contract - Other

**Real Property**
☐ (CD) Condemnation/Eminent
  Domain
☐ (UD) Landlord/Tenant
  Unlawful Detainer
☐ (UO Landlord/Tenant -
  Other
☐ (FC) Mortgage Foreclosure
☐ (QT) Real Property - Other

**Miscellaneous Civil**
☐ (AP) Administrative Appeal
☐ (EL) Election
☐ (FV) Foreign Judgment - Civil
☐ (FR) Fraud
☐ (IJ) Injunction
☐ (CF) Property Forfeiture
☐ (RF) Register Arkansas
  Judgment
☐ (WT) Writ - Other
☐ (OM) Civil - Other

| | Plaintiff | | Defendant |
|---|---|---|---|
| Company/ Last Name | NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3 | Company/ Last Name | WADDELL |
| Suffix | | Suffix | |
| First Name | | First Name | ALISHA |
| DL/State ID | | DL/State ID | |
| Address | c/o Finkelstein Kern Steinberg & Cunningham, P.C. | Address | 2204 JEAN ST |
| City, State ZIP | P.O. Box 1 Knoxville TN 37901 | City, State ZIP | Springdale AR 72762 |
| Phone | 888-200-8501 Toll Free | Phone | |
| Email | | Email | |
| Self-represented | ☐ Yes   ☒ No | Self-represented | ☐ Yes   ☐ No |
| DOB | | DOB | May 01, 1989 |
| Interpreter needed? | ☐ Yes: _____ (language) ☒ No | Interpreter needed? | ☐ Yes: _____ (language) ☐ No |

Attorney of Record:   ☐ Kelly C. Dicken   ☐ Linda Catron Noe   Bar #:   ☐ 2015096   ☐ 2017010
For the: ☒ Plaintiff   ☐ Defendant   ☐ Intervenor   Email Address: kelly@fksclaw.com
Related Case(s): Judge _____   Case ID(s): _____

Manner of filing (choose one):       ☒ (MFO) Original          ☐ (MFR+case type) Re-open
                          ☐ (MFT) Transfer          ☐ (MFF) Reactivate

1                                                                                  1/1/2017

RECEIVED MAY 2 6 2017

THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS
CIVIL DIVISION [Civil, Probate, etc.]

NATIONAL COLLEGIATE STUDENT LOAN TRUST
2007-3
Plaintiff

v.                                      No. _17 - 1006 - 1_

ALISHA WADDELL
Defendant

SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:
ALISHA WADDELL                          [Defendant's name and address]
**2204 JEAN ST**
**SPRINGDALE, AR 72762**

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) -- or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas -- you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: FINKELSTEIN, KERN, STEINBERG, & CUNNINGHAM, P.C., P. O. Box 1, Knoxville, TN 37901.

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Address of Clerk's Office

Washington County Circuit Court
280 N. College, #302
Fayetteville AR 72701

CLERK OF COURT

[Signature of Clerk or Deputy Clerk]

Date: _5/23/17_

[SEAL]

AR CIRCUIT SUM 3 PG DEF1        FILE NO. 15-16290

No. _____     **This summons is for ALISHA WADDELL** *(name of Defendant).*

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____
_____ [place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of
abode at _____ [address] with _____ [name], a person
at least 14 years of age who resides there, on _____ [date]; or

☐ I delivered the summons and complaint to _____ [name of individual], an
agent authorized by appointment or by law to receive service of summons on behalf of
_____ [name of defendant] on _____ [date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and served
the summons and complaint on the defendant by certified mail, return receipt requested, restricted
delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a
copy of the summons and complaint by first-class mail to the defendant together with two copies
of a notice and acknowledgment and received the attached notice and
acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $_____

AR CIRCUIT SUM 3 PG DEF1     FILE NO. 15-16290

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

By: _____
[Signature of server]

_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

AR CIRCUIT SUM 3 PG DEF1      FILE NO. 15-16290

[Signature of Clerk or Deputy Clerk]

Date:_____

[SEAL]

AR CIRCUIT SUM 3 PG DEF2          FILE NO. 15-16290

FILED FOR RECORD

2017 MAY 23 AM 8:39

WASHINGTON CO. AR
CIRCUIT CLERK
K. SYLVESTER

**CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS**
**FAYETTEVILLE CIVIL DIVISION**

NATIONAL COLLEGIATE STUDENT LOAN TRUST
2007-3                                                                                    **PLAINTIFF**

VS.                                     Case No. 17 - 1006 - 1

ALISHA  WADDELL
2204 JEAN ST                                                               **DEFENDANT(S)**
SPRINGDALE AR 72762

---

## COMPLAINT

---

Comes the Plaintiff, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, by and through

counsel, its attorneys, and submits its Complaint in the above-captioned matter and states the following for its cause

of action against Defendant(s), ALISHA  WADDELL.

### PARTIES

1.    Plaintiff in this lawsuit is NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, a

Delaware Statutory Trust (hereinafter "Plaintiff).

Defendant in this lawsuit is ALISHA  WADDELL  (hereinafter "Defendant"), and service of

process may be perfected upon Defendant at the following address:

2.    ALISHA  WADDELL
2204 JEAN ST
SPRINGDALE AR 72762

### VENUE

3.    The Defendant is subject to personal jurisdiction of this Court pursuant to Ark. Code Ann.

Section 17-24-510 consistent with all traditional notices of due process. Venue in this action

is proper as it is believed by the Plaintiff to be the county of residence of the Defendant as of

the date of commencement of this action, and such residence is located within the

geographical bounds of the Court's jurisdiction.

### FACTUAL BACKGROUND

4.    The National Collegiate Student Loan Trusts (collectively, the "NCSLT Trusts") are a series of

Delaware statutory trusts formed in connection with securitization transactions associated with

the financing of educational loans.

5.    Transworld Systems Inc. is the subservicer of the account for Plaintiff as evidenced by the

documents attached hereto as Collective Exhibit "1" (consisting of an Affidavit and Verification of Account ("Affidavit"), a letter of acknowledgement (Exhibit A to Affidavit), a Loan Request/Credit Agreement and a Note Disclosure Statement (Exhibit B to Affidavit), and a Pool Supplement and a Deposit and Sale Agreement (Exhibit C to Affidavit)), in particular, a letter of acknowledgement (*See* Collective Exhibit "1", Exhibit A).

6.     Defendant entered into an agreement for a student loan, account number XXXXX-XXXX-XXXX-1000, in connection with Defendant's education (the "Student Loan") and Defendant is obligated to repay the Student Loan according to its terms and conditions, as evidenced by the Loan Request/Credit Agreement and a Note Disclosure Statement attached hereto (*See* Collective Exhibit "1", Exhibit B).

7.     Plaintiff is part of the NCSLT Trusts and is the owner and holder of the individual student loan made the subject of this litigation as a result of a financing arrangement between the NCSLT Trusts and NATIONAL COLLEGIATE TRUST as evidenced by the Pool Supplement and Deposit and Sale Agreement attached hereto (*See* Collective Exhibit "1", Exhibit C).

8.     Defendant has defaulted on the Student Loan, and as of the date of the filing of this Complaint, there continues to be owed by Defendant to the Plaintiff an unpaid balance of $11,495.04 plus accrued and unpaid interest of $868.94 as evidenced by the documents attached hereto as Exhibit "2".

9.     Credit has been given for any and all payments that may have been received subsequent to the execution of the Affidavit and Verification of Account contained within Collective Exhibit "1".

### CAUSE OF ACTION - BREACH OF CONTRACT

10.     Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

11.     Defendant's failure to repay the Student Loan according to its terms and conditions constitutes breach of contract.

12.     As a result of Defendant's breach of contract, as of the date of the filing of this Complaint, Plaintiff is owed by Defendant an unpaid total balance of $12,363.98, as evidenced by Collective Exhibit "1" and Exhibit "2" attached hereto.

**WHEREFORE,** Plaintiff prays for a judgment against the Defendant in the amount of $12,363.98, post judgment interest at the rate of ten percent (10%) per annum, for its cost incurred in this cause, and for all other proper and legal relief to which it may be entitled.

Respectfully submitted this ___10___ day of _____, 20___.

By: _____

     ☑ Kelly C. Dicken,   ABN # 2015096
     ☐ Linda Catron Noe, ABN #2017010
     Attorney for Plaintiff
     Finkelstein, Kern, Steinberg, & Cunningham, P.C.

P. O. Box 1
Knoxville, Tennessee 37901
Phone:          (865) 525-0238
Fax:            (865) 523-5138

# EXHIBIT 1

NATIONAL COLLEGIATE STUDENT )
LOAN TRUST 2007-3, A Delaware )
Statutory Trust )

Plaintiff )      Docket #
)
)
)
v. )
)
)
ALISHA  WADDELL )
)
)
)
Defendant(s) )

### AFFIDAVIT AND VERIFICATION OF ACCOUNT

STATE OF GEORGIA )
)
COUNTY OF  GWINNETT )

BEFORE ME, the undersigned authority, personally appeared Affiant ___Dudley Turner___,
who being first duly sworn, deposes and states:

    1.    I am employed by Transworld Systems Inc. (hereinafter TSI), the Subservicer for
Plaintiff pertaining to the educational loan forming the subject matter of this action.

    2.    TSI has been contracted to perform the duties of the Subservicer for Plaintiff by
U.S. Bank, National Association, the Special Servicer of Plaintiff.  TSI, as the Subservicer of the
Plaintiff, is the designated custodian of records for the Defendant's educational loan.
Additionally, TSI maintains the dedicated system of record for electronic transactions pertaining
to the Defendant's educational loan, including, but not necessarily limited to, payments, credits,
interest accrual and any other transactions that could impact the Defendant's educational loan.

Attached hereto as Exhibit "A" is a true and correct copy of confirmation of TSI's capacity as Subservicer.

3.   I am over the age of 18 and competent to testify to the matters stated herein. As an employee of TSI, I am duly authorized by Plaintiff and U.S. Bank, National Association to make the representations contained in this Affidavit.

4.   I have access and training on the system of record utilized by TSI to enter and maintain loan account records and documentation concerning the Defendant's educational loan for the Plaintiff.

5.   I am familiar with the process by which TSI receives prior account records, including origination records from the time the loan was requested and/or disbursed to the Defendant and/or the student's school on their behalf.

6.   As custodian of records it is TSI's regularly-conducted business practice to incorporate prior loan records and/or documentation into TSI's business records.

7.   I am further competent and authorized to testify regarding this educational loan through personal knowledge of the business records maintained by TSI as custodian of records, including electronic data provided to TSI related to the Defendant's educational loan, and the business records attached to this Affidavit.

8.   This lawsuit concerns an unpaid loan owed by Defendant ALISHA WADDELL to Plaintiff. Specifically, Defendant entered into an educational loan agreement at Defendant's special instance and request. A loan was extended for Defendant to use pursuant to the terms of the loan agreements. Defendant has failed, refused, and/or neglected to pay the balance pursuant to the agreed terms.

9.      Educational loan records are created, compiled and recorded as part of regularly conducted business activity at or near the time of the event and from information transmitted from a person with personal knowledge of said event and a business duty to report it, or from information transmitted by a person with personal knowledge of the accounts or events described within the business record. Such records are created, kept, maintained, and relied upon in the course of ordinary and regularly conducted business activity.

10.      I have reviewed the educational loan records described in this affidavit regarding account number xxxxx4440/001-001000. No payment has been made since 9/21/2016. After all payments, credits and offsets have been applied, Defendant ALISHA WADDELL owes the principal sum of $11,495.04, together with accrued interest in the amount of $ 868.94, totaling the sum of $12,363.98 as of 3/21/2017. Attached hereto and incorporated as Exhibit "B" is a true copy of the underlying Credit Agreement/Promissory Note and Note Disclosure Statement. In the event the Defendant(s) faxed the executed Credit Agreement/Promissory Note, per its terms they agreed their facsimile/electronic signature is deemed to be an original.

11.      The Defendant opened the educational loan described above and funds were first disbursed on 7/18/2007. *See* Exhibit "B". The Defendant's educational loan was then transferred, sold and assigned by the Lender directly to Plaintiff, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, or to an intermediary, National Collegiate Funding, LLC, who then immediately transferred, sold and assigned the Defendant's educational loan to Plaintiff, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3. The Defendant's educational loan was in good standing and not in default on the date the Plaintiff acquired the Defendant's educational loan. Attached hereto and incorporated as Exhibit "C" is a true and correct copy of the assignment Agreement(s) described herein.

12. Based on custodial records, the Defendant is not a minor or incompetent. A reasonable inquiry has been made to determine if the Defendant is in the military service of the United States of America, and to the best of my knowledge, Defendant is not in such military service and is therefore not entitled to the rights and privileges provided under the Soldiers and Sailors Civil Relief Act of 1940, as amended.

13. I declare under the penalty of perjury under the laws of the forum state that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

AFFIANT
Print Name: ___Dudley Turner___
Title: ___Legal Case Manager___

SWORN AND SUBSCRIBED to before me this ___29___ day of ___March___, 20 _17_

NOTARY PUBLIC
My Commission Expires on

**Exhibit A**

*National Collegiate Trust*

Date: 11/3/14

RE:

National Collegiate Master Student Loan Trust-I
National Collegiate Student Loan Trust-2004-1
National Collegiate Student Loan Trust-2005-1
National Collegiate Student Loan Trust-2005-3
National Collegiate Student Loan Trust-2006-2
National Collegiate Student Loan Trust-2006-4
National Collegiate Student Loan Trust-2007-2
National Collegiate Student Loan Trust-2007-4

National Collegiate Student Loan Trust-2003-1
National Collegiate Student Loan Trust-2004-2
National Collegiate Student Loan Trust-2005-2
National Collegiate Student Loan Trust-2006-1
National Collegiate Student Loan Trust-2006-3
National Collegiate Student Loan Trust-2007-1
National Collegiate Student Loan Trust-2007-3

To whom it may concern:

U.S. Bank, as Special Servicer for the above referenced Trust(s), confirms that Transworld Systems Inc. is its Subservicer, authorized to file Proofs of Claim (POC) on behalf of the above Trust(s) with respect of student loans owned by the Trust(s). Transworld Systems Inc. is also the dedicated record custodian with respect to all student loan accounts owned by the Trust(s) and is fully authorized to execute affidavits regarding account documents, verify responses to discovery and provide testimony on behalf of the Trust(s).

Any questions regarding the above referenced processes should be directed to Transworld Systems Inc. at 1-800-209-9161

Sincerely,

U.S. Bank National Association
As Special Servicer to the National Collegiate Student Loan Trust(s)

By: _____

   Brian C Trí
   Vice President
Title

Acknowledged,
By: GSS Data Services, Inc.
Not in its individual capacity and solely as
administrator for and on behalf of the Trust(s)

By: Kenneth L. Ruggiero

President and CEO
Title

**Exhibit B**

From: VSA DRUG #1033        Page: 1/9        Date: 7/16/2007 1:08:59 PM

## * Cosigned *    Loan Request/Credit Agreement – Signature Page

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

Education One® Education One Undergraduate Loan

Academic Period: 08/2007-05/2008

Lender: JPMorgan Chase Bank, N.A.

School: CHRISTIAN BROTHERS UNIVERSITY

Loan Amount Requested: $8500.00

Repayment Option: Full Deferral

Deferment Period Margin: 7.25

Repayment Period Margin: 7.25    Loan Origination Fee Percentage: 10.50

### STUDENT BORROWER INFORMATION

Borrower Name: Alisha D Waddell
Social Security #:    4440
Mobile Telephone:
Student Citizenship (check one box):    ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Gravis D Waddell
Reference Street Address:
Reference City/State/Zip:

Home Address:                Lincoln, AR
Date of Birth:    1989        Home Telephone:
E-mail Address:
Reference Home Tel #:            Work Tel #:

### COSIGNER INFORMATION (Must be age of majority in state of residence – see Paragraph 31 of Credit Agreement)

Cosigner Name: James Waddell
Social Security #:    1764
Mobile Telephone:
Have you ever defaulted on a student loan or declared bankruptcy in the last 10 years?...    ☒ No    ☐ Yes
Current Employer:
Current Position: Clief
Years at Previous Employment: 0 Years
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.
If you are relying on such additional income, please provide details on a separate sheet of paper.

Home Address:                AR
Date of Birth:    1938        Home Telephone:
E-mail Address:
                    Employer Telephone:
Years There: 38

Cosigner Citizenship (check one box):    ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Borrower.
Personal Reference Name: James D Waddell            Reference Home Tel #:            Work Tel #:
Reference Street Address:
Reference City/State/Zip:

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement EO.07-08 CSX1.10DC.1106 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on this Credit Agreement and any related notices that require signature. If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend: (i) that this signature to be an related notices that require signature. If I choose to fax my signature on this printout of this Credit Agreement and related notices to be an original document, (iii) to conduct business electronic signature under applicable federal and state law, (ii) any fax printout of this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and any with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code. I, the Cosigner, obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code. I, the Cosigner, have read the applicable cosigner notice(s).

For purposes of the following notices "you" means the Borrower and Cosigner, not the Lender.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.
FOR WISCONSIN RESIDENTS: NOTICE TO CUSTOMER:
(a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) –
                    FAX TO: 800-704-9407

Signature of Borrower: Alisha Waddell                    Date  7-16 07

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner: James W Waddell                    Date  7-16-07

EO.07-08.CSX1.10DC.1106        LENDER COPY
PN01_EO_07-08_CSX1_F_X_WADDELL_A105346549.pdf                    EOXUDP

In this Credit Agreement, the words "I", "me", "my", and "mine" mean each and every Borrower and Cosigner, individually and collectively, who signed this Credit Agreement. The words "you", "your", "yours", and "Lender" mean the Lender named at the top of the first page of this Credit Agreement, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

A. PROMISE TO PAY: I promise to pay to your order, upon the terms and conditions of this Credit Agreement, the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum, and other charges set forth herein.

B. LOAN; DISCLOSURE STATEMENT:

1. By signing this Credit Agreement, and submitting it to you, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. When you receive my signed Application, you are not agreeing to lend me money. You have the right not to make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A).

2. If you agree to make a loan to me, you will mail me the disbursement check (the "Disbursement Check") and a statement disclosing certain information about the loan in accordance with the federal Truth-in-Lending Act (the "Disclosure Statement"). You have the right to disburse my Disbursement Check through an agent. At your option, you may also make any Disbursement Check co-payable to me and the Cosigner or to me and the School. In addition to other information, the Disclosure Statement will tell me the amount of my disbursement and the amount of the Loan Origination Fee. The Disclosure Statement is part of this Credit Agreement. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. My endorsement of the Disbursement Check or allowing the loan proceeds to be used by or on behalf of the student Borrower without objection will acknowledge receipt of the Disclosure Statement and my agreement to be legally bound by this Credit Agreement.

3. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice, together with any unused Disbursement Check or, if I have already endorsed and delivered the Disbursement Check to the School, a good check, payable to you, in the full amount of the Disbursement Check. In any event, I cannot cancel more than ten (10) days after I receive the Disclosure Statement. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.3, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

C. DEFINITIONS:

1. "Disbursement Date" means the date shown on any Disbursement Check you prepare for me (not the date I endorse or negotiate my check).

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) Education One Undergraduate Alternative Loan Program: If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, a student who receives the first of joint or serial degrees (e.g., associates to bachelors) may continue in-school deferment while completing their second degree, up to the 5-year or 5½-year maximum.

(b) Education One Graduate Professional Education Loan Program: The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement

Date; provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment End Date ends (or, if there is no Deferment Period, the day after the Disbursement Date for my loan). The Repayment Period is 20 years, unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

D. INTEREST:

1. Accrual – Beginning on the Disbursement Date, interest on the outstanding balance of this Credit Agreement (including any unpaid interest later added to principal according to Paragraph D.3) will accrue each day (including holidays and other days you are closed) at the Variable Rate (Paragraph D.2) divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of The Wall Street Journal (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If The Wall Street Journal (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H). In all cases, the sum of interest you capitalize plus the then-outstanding principal balance is thereafter considered the principal balance, and interest will accrue on the new principal balance.

E. TERMS OF REPAYMENT:

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c)

following any subsequent deferment or forbearance period or (d) following any request by the Borrower or the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe principal, interest, and/or late fees at the end of the Repayment Period. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full in a single payment.

5. Payments – Payments will be applied first to late fees and other fees and charges, then accrued interest, and the remainder to principal. If I have multiple loans processed by the servicer, and I submit a single payment that is not sufficient to pay all of the amounts I owe, such payment may be divided between or among the loans in accordance with applicable law and the servicer's customary procedures.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. I will pay only one late fee for any (monthly) payment, regardless of the number of days it is late. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: You may charge me an Origination Fee. If you charge me, at the time you issue any disbursement to me, or on my behalf, you may add the Origination Fee to my loan amount. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire Principal Sum would equal 6.9519% of the loan amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.3), I will not be entitled to a refund of any Loan Origination Fee after my Disbursement Check has been negotiated.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty or charge.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. I understand that if I default on my loan, disclosure of my loan information to consumer reporting agencies may adversely affect my credit rating. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. To the extent permitted by law, upon default, you will have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

K. INFORMATION:

1. I must update any and all information related to this Credit Agreement or my loan application whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also provide the School with certain personally-identifiable information about me (such as my Social Security Number and my Loan ID number) and report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in OHIO and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement. If I fax my Credit Agreement, I have read and understand the prohibition regarding changes in Paragraph L.16.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. If I am in default at any time (including but not limited to a situation where I give an improper cancellation notice), you may exercise on my behalf any right that I may have to receive a full or partial refund of payments made to the School. I authorize the School to pay any or all of such amounts directly to you upon receipt of notice from you that I am in default under this Credit Agreement.

9. The Borrower and the Cosigner each agrees that any communication between you and the Borrower or the Cosigner will be binding on the Borrower and the Cosigner. The Borrower and Cosigner intend to be treated as principals of this Credit Agreement and not as sureties. To the extent the Borrower or the Cosigner may be treated as a surety, the Borrower and the Cosigner waive all notices otherwise required or available by law, and all suretyship defenses that might be available (including, without limitation, contribution, subrogation and exoneration). The Cosigner agrees that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on the Cosigner. It shall not be necessary for you to resort to or exhaust your remedies against the Borrower before calling upon the Cosigner to make repayment.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States dollars with no deduction for currency exchange.

11. The student Borrower's failure to complete the education program paid for with this loan will not relieve any Borrower of any obligation under this Credit Agreement.

12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy

contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement and I will retax the first page upon request by Lender. I may NOT amend the Credit Agreement by making changes to the Signature Page, which are then faxed to Lender. If the Borrower faxes the Signature Page, and the Lender approves the application, you and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

M. DISCLOSURE NOTICES

**ALL APPLICANTS:**
IMPORTANT FEDERAL LAW NOTICE—

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you (the Borrower and the Cosigner):*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA and UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. (For purposes of the following two notices, the word "you" refers to the Borrower and the Cosigner, not the Lender.)

IOWA RESIDENTS: If you are an Iowa resident and your amount financed is $25,000 or less, this is a consumer credit transaction.

IOWA, KANSAS and NEBRASKA RESIDENTS: (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender.) NOTICE TO CONSUMER: 1. Do not sign this Credit Agreement before you read it. 2. You are entitled to a copy of this Credit Agreement. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of OHIO, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEVADA RESIDENTS: This is a loan for study.

NEW YORK, RHODE ISLAND, and VERMONT RESIDENTS: I understand and agree that you may obtain a consumer credit report in connection with updates, renewals of extensions of any credit as a result of this application. If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

OKLAHOMA RESIDENTS: If I am in default and only if the total amount disbursed under this Credit Agreement is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, a statement or a decree or have actual knowledge of the adverse provision. If the loan for which I am applying is granted, I will notify you if I have a spouse who needs to receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

STATE AGE REQUIREMENTS:  THE LEGAL AGE FOR ENTERING INTO CONTRACTS IS 18 YEARS OF AGE IN EVERY STATE IN THE UNITED STATES EXCEPT THE FOLLOWING:  ALABAMA AND NEBRASKA 19 YEARS OLD, AND MISSISSIPPI AND PUERTO RICO 21 YEARS OLD.

By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the Lender.

FOR OBLIGORS COSIGNING IN VERMONT: For purposes of the following notice, the words "you" and "your" refer to any Cosigner, not to the Lender. "Credit Agreement" means this Credit Agreement.

*NOTICE TO COSIGNER:*
YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

## FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley):**
You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the Borrower. The holder of the loan can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito *de usted*.

Este aviso no es el contrato mismo en que se le echa a usted la responsibilidad de la deuda.

[W0675646.3]**EO.07-08.CSX1.10DC.1106.FD**

## NOTE DISCLOSURE STATEMENT

$ 9,497.21
~~6589~~
Loan No.

Borrower(s): **ALISHA D WADDELL**
**JAMES WADDELL**

Student: **ALISHA D WADDELL**
Date: **July 18, 2007**

**ALISHA D WADDELL**

**LINCOLN , AR**        **USA**

Lender Name and Address:
**JPMORGAN CHASE BANK, N.A.**
**100 EAST BROAD STREET**
**COLUMBUS, OH 43125**

This disclosure statement relates to your Loan Note disbursed on        July 18, 2007
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 13.602 % | $ 96,069.20 | $ 8,500.00 | $ 44,563.20 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due | |
|---|---|---|---|
| 240 | $ 185.68 | On the 20th day of each month beginning | 12/2011 |
| | | | |
| | | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ **Prime Rate Index Adjusted Monthly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar month.

☐ **Prime Rate Index Adjusted Quarterly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the last business day of each calendar quarter.

☐ **LIBOR Index Adjusted Quarterly** - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

☒ **LIBOR Index Adjusted Monthly** - The one-month London Interbank Offered Rate published in the "Money Rates" section of The Wall Street Journal (Eastern Edition) on the first business day of the preceding calendar month.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $91.01, and your monthly principal and interest payments would increase by $9.37.

**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge)                    $_____ 9,497.21

Itemization of Amount Financed
Amount paid to  ALISHA D WADDELL  and        $_____
Amount paid to  JAMES WADDELL                 $_____ 8,500.00
Total Amount Financed                                                       $_____ 8,500.00

Itemization of Prepaid Finance Charge
Origination Fee                                            $_____ 997.21
Total Prepaid Finance Charge(s)                                    $_____ 997.21

Exhibit C

Unassociated Document

EX-99.28 24 d720157.htm POOL SUPPLEMENT (JPMORGAN CHASE)

**EXHIBIT 99.28**

**POOL SUPPLEMENT**
**JPMORGAN CHASE BANK, N.A.**

This Pool Supplement (the "Supplement") is entered into pursuant to and forms a part of that certain Amended and Restated Note Purchase Agreement dated as of May 1, 2002, as amended or supplemented from the date of execution of the Agreement through the date of this Supplement (the "Agreement"), by and between The First Marblehead Corporation and JPMorgan Chase Bank, N.A., successor by merger to Bank One, N.A. (Columbus, Ohio) (the "Program Lender"). This Supplement is dated as of September 20, 2007. Capitalized terms used in this Supplement without definitions have the meanings set forth in the Agreement.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price, the Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each student loan set forth on the attached Schedule 1 (the "Transferred Bank One Loans") along with all of the Program Lender's rights under the Guaranty Agreement, and any of the Program Lender's rights in or to the certain account pledged by TERI as collateral for its obligations under the Guaranty Agreement (the "Pledged Account"), in each case specifically relating to the Transferred Bank One Loans. The Depositor in turn will sell the Transferred Bank One Loans to a Purchaser Trust. The Program Lender hereby transfers and delivers to the Depositor each Note evidencing such Transferred Bank One Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said Notes on said terms and conditions.

Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.05 of the Agreement.

Article 3: Representations and Warranties.

3.01.      By Program Lender.

The Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Purchaser Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02.      By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a)      The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred Bank One Loans.

(b)      The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)      The Depositor has the power and authority to execute and deliver this Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred Bank One Loans and rights relating thereto as provided herein from the Program Lender, and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

Unassociated Document

(d)     This Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of the Agreement or this Supplement, (ii) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Supplement, or (iii) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Supplement.

Article 4: Cross Receipt.

The Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred Bank One Loans included in the Pool.

Unassociated Document

### Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

The Program Lender hereby assigns and sets over to the Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement and the Servicing Agreement to the extent the same relate to the Transferred Bank One Loans described in Schedule 1, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in the Depositor any claim of the Program Lender relating to defects in origination, guaranty or servicing of the loans purchased hereunder in order to permit the Depositor to assert such claims directly and obviate any need to make the same claims against the Program Lender under this Supplement. The Program Lender also hereby assigns and sets over to the Depositor any claims it may now have or hereafter have to the Pledged Account pledged under the Guaranty Agreement and under the Deposit and Security Agreement that relate to the Transferred Bank One Loans, and the Program Lender hereby releases any security interest it may have in such Pledged Account relating to the Transferred Bank One Loans. The Program Lender hereby authorizes the Depositor, its successors and assigns, to file in any public filing office where a Uniform Commercial Code Filing with respect to collateral pledged by TERI is of record, any partial release or assignment that it deems necessary or appropriate to reflect in the public records the conveyance and assignment effected hereby.

[Remainder of page intentionally blank]

Unassociated Document

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By:/s/ John A. Foxgrover
_____
    John A. Foxgrover
    Senior Vice President

JPMORGAN CHASE BANK, N.A, as successor by
merger to BANK ONE, N.A. (Columbus, Ohio),

By:/s/ Joseph F. Sergi
_____
    Name: Joseph F. Sergi
    Title: Vice President

THE NATIONAL COLLEGIATE FUNDING LLC

By:GATE Holdings, Inc., Member

    By: /s/ John A. Foxgrover
    _____
        John A. Foxgrover
        Vice President

EX-99.4 9 d719472.htm DEPOSIT AND SALE AGREEMENT

EXHIBIT 99.4

## DEPOSIT AND SALE AGREEMENT
## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3

This DEPOSIT AND SALE AGREEMENT (the "Sale Agreement"), dated as of September 20, 2007, between The National Collegiate Funding LLC, as seller (in such capacity, the "Seller"), and The National Collegiate Student Loan Trust 2007-3, as purchaser (the "Purchaser"), shall be effective upon execution by the parties hereto.

WHEREAS, the Seller is the owner of certain student loans; and

WHEREAS, the Seller desires to sell its interest in such student loans and the Purchaser desires to purchase such loans from the Seller.

NOW, THEREFORE, in connection with the mutual promises contained herein, the parties hereto agree as follows:

### ARTICLE I
### TERMS

This Sale Agreement sets forth the terms under which the Seller is selling and the Purchaser is purchasing the student loans listed on Schedule 1 or Schedule 2 to each of the Pool Supplements set forth on Schedule A attached hereto (the "Transferred Student Loans").

### ARTICLE II
### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the definitions set forth in Appendix A of the Indenture dated as of September 1, 2007 between U.S. Bank National Association (the "Indenture Trustee") and the Purchaser.

### ARTICLE III
### SALE AND PURCHASE

Section 3.01.    Sale of Loans. The Seller hereby sells and the Purchaser hereby purchases the Transferred Student Loans.

Section 3.02.    Assignment of Rights. The Seller hereby assigns to the Purchaser and the Purchaser hereby accepts all of the Seller's rights and interests under each of the Pool Supplements listed on Schedule A attached hereto and the related Student Loan Purchase Agreements listed on Schedule B attached hereto.

Section 3.03.    Settlement of the Payment. The Purchaser shall pay the Seller the purchase price set forth in Article 2 of each of the Pool Supplements by wire transfer in immediately available funds to the account specified by the Seller.

Section 3.04.    Assistance by Seller. Following the execution of this Sale Agreement, the Seller shall provide any reasonable assistance requested by the Purchaser in determining that all required documentation on the Transferred Student Loans is present and correct.

### ARTICLE IV
### REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER

Section 4.01.    General. The Seller represents and warrants to the Purchaser that as of the date of this Sale Agreement:

(a)     The Seller is duly organized and existing under the laws of the State of Delaware; and

(b)     The Seller has all requisite power and authority to enter into and to perform the terms of this Sale Agreement.

Section 4.02.     Loan Representations. The Seller represents and warrants to the Purchaser that with respect to each Transferred Student Loan purchased by the Purchaser pursuant to this Sale Agreement, the Seller is making the same representations and warranties made by the respective program lender with respect to each Transferred Student Loan pursuant to the respective Student Loan Purchase Agreement listed on Schedule B attached hereto.

Section 4.03.     Covenants. The Seller, in its capacity as purchaser of the Transferred Student Loans pursuant to the Pool Supplements, hereby covenants that it will enforce the covenants and agreements of each program lender in the respective Student Loan Purchase Agreement and related Pool Supplement. The Seller further covenants that it will not waive, amend, modify, supplement or terminate any Student Loan Purchase Agreement or Pool Supplement or any provision thereof without the consent of the Purchaser, which consent the Purchaser hereby agrees not to provide without the prior written consent of the Indenture Trustee and the Controlling Party in accordance with the Purchaser's covenant in Section 3.07(c) of the Indenture.

## ARTICLE V
## PURCHASE OF LOANS; REIMBURSEMENT

Each party to this Sale Agreement shall give notice to the other such parties and to the Servicers, First Marblehead Data Services, Inc., the Indenture Trustee and Wilmington Trust Company (the "Owner Trustee") promptly, in writing, upon the discovery of any breach of the Seller's representations and warranties made pursuant to this Sale Agreement which has a materially adverse effect on the interest of the Purchaser in any Transferred Student Loan. In the event of such a material breach, the Seller shall cure or repurchase the Transferred Student Loan in accordance with the remedies set forth in the respective Student Loan Purchase Agreement.

## ARTICLE VI
## LIABILITY OF SELLER; INDEMNITIES

The Seller shall be liable in accordance herewith only to the extent of the obligations specifically undertaken by the Seller under this Sale Agreement.

(a)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any taxes that may at any time be asserted against any such Person with respect to the transactions contemplated herein and in the other Basic Documents (except any such income taxes arising out of fees paid to the Owner Trustee), including any sales, gross receipts, general corporation, tangible and intangible personal property, privilege or license taxes and costs and expenses in defending against the same.

(b)     The Seller shall indemnify, defend and hold harmless the Purchaser and the Owner Trustee in its individual capacity and their officers, directors, employees and agents from and against any and all costs, expenses, losses, claims, damages and liabilities arising out of, or imposed upon such Person through, the Seller's willful misfeasance, bad faith or gross negligence in the performance of its duties under this Sale Agreement, or by reason of reckless disregard of its obligations and duties under this Sale Agreement.

Indemnification under this Section shall survive the termination of this Sale Agreement and shall include reasonable fees and expenses of counsel and expenses of litigation. If the Seller shall have made any indemnity payments pursuant to this Section and the Person to or for the benefit of whom such payments are made thereafter shall collect any of such amounts from others, such Person shall promptly repay such amounts to the Seller, without interest.

## ARTICLE VII
## MERGER OR CONSOLIDATION OF, OR ASSUMPTION

### OF THE OBLIGATIONS OF, SELLER

Any Person (a) into which the Seller may be merged or consolidated, (b) which may result from any merger or consolidation to which the Seller shall be a party or (c) which may succeed to the properties and assets of the Seller substantially as a whole, shall be the successor to the Seller without the execution or filing of any document or any further act by any of the parties to this Sale Agreement; provided, however, that the Seller hereby covenants that it will not consummate any of the foregoing transactions except upon satisfaction of the following: (i) the surviving Person, if other than the Seller, executes an agreement of assumption to perform every obligation of the Seller under this Sale Agreement, (ii) immediately after giving effect to such transaction, no representation or warranty made pursuant to this Sale Agreement shall have been breached, (iii) the surviving Person, if other than the Seller, shall have delivered an Officers' Certificate and an opinion of counsel each stating that such consolidation, merger or succession and such agreement of assumption comply with this Section and that all conditions precedent, if any, provided for in this Sale Agreement relating to such transaction have been complied with, and that the Rating Agency Condition shall have been satisfied with respect to such transaction and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, (iv) if the Seller is not the surviving entity, such transaction will not result in a material adverse federal or state tax consequence to the Purchaser or the Noteholders, and (v) if the Seller is not the surviving entity, the Seller shall have delivered an opinion of counsel either (A) stating that, in the opinion of such counsel, all financing statements and continuation statements and amendments thereto have been executed and filed that are necessary fully to preserve and protect the interest of the Purchaser in the Transferred Student Loans and reciting the details of such filings, or (B) stating that, in the opinion of such counsel, no such action shall be necessary to preserve and protect such interests.

### ARTICLE VIII
### LIMITATION ON LIABILITY OF SELLER AND OTHERS

The Seller and any director or officer or employee or agent thereof may rely in good faith on the advice of counsel or on any document of any kind, prima facie properly executed and submitted by any Person respecting any matters arising hereunder (provided that such reliance shall not limit in any way the Seller's obligations under this Sale Agreement). The Seller shall not be under any obligation to appear in, prosecute or defend any legal action that shall not be incidental to its obligations under this Sale Agreement or the Student Loan Purchase Agreements, and that in its opinion may involve it in any expense or liability.

### ARTICLE IX
### SURVIVAL OF COVENANTS

All covenants, agreements, representations and warranties made herein shall survive the consummation of the purchase of the Transferred Student Loans; provided, however, that to the extent any of the same relate to a corresponding covenant, agreement, representation or warranty contained in a Student Loan Purchase Agreement, the same shall survive to the extent that such corresponding covenant, agreement, representation or warranty survives the applicable Student Loan Purchase Agreement. All covenants, agreements, representations and warranties made or furnished pursuant hereto by or for the benefit of the Seller (including without limitation, under Article VI) shall bind and inure to the benefit of any successors or assigns of the Purchaser, including the Indenture Trustee. This Sale Agreement may be changed, modified or discharged, and any rights or obligations hereunder may be waived, only by a written instrument signed by a duly authorized officer of the party against whom enforcement of any such waiver, change, modification or discharge is sought. The waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any covenant, agreement, representation or warranty required to be made or furnished by the Seller or the waiver by the Indenture Trustee, at the direction of the Controlling Party or otherwise pursuant to the Indenture, of any provision herein contained shall not be deemed to be a waiver of any breach of any other covenant, agreement, representation, warranty or provision herein contained, nor shall any waiver or any custom or practice which may evolve between the parties in the administration of the terms hereof, be construed to lessen the right of the Indenture Trustee, at the direction of the Controlling Party pursuant to the Indenture, to insist upon the performance by the Seller in strict accordance with said terms.

### ARTICLE X
### COMMUNICATION AND NOTICE REQUIREMENTS

All communications, notices and approvals provided for hereunder shall be in writing and mailed or delivered to the

Seller or the Purchaser, as the case may be. Notice given in any such communication, mailed to the Seller or the Purchaser by appropriately addressed registered mail, shall be deemed to have been given on the day following the date of such mailing and shall be addressed as follows:

If to the Purchaser, to:

> The National Collegiate Student Loan Trust 2007-3
> c/o Wilmington Trust Company, as Owner Trustee
> Rodney Square North
> 100 North Market Street
> Wilmington, Delaware 19890-0001
> Attention: Corporate Trust Department

If to the Seller, to:

> The National Collegiate Funding LLC
> c/o First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

with a copy to:

> First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

or to such other address as either party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand delivered to the address of such party as provided above.

### ARTICLE XI
### AMENDMENT

This Sale Agreement may be amended by the parties hereto with the consent of the Note Insurer, but without the consent of the Noteholders, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of such Noteholders; provided that such action will not, in the opinion of counsel reasonably satisfactory to the Indenture Trustee, materially affect the interest of any such Noteholder.

In addition, this Sale Agreement may also be amended from time to time by the Seller and the Purchaser, with the consent of the Noteholders of the Notes evidencing a majority of the Outstanding Amount of the Notes and the consent of the Certificateholders of the Certificates evidencing a majority of the percentage interest in the Certificates and, so long as any of the Notes are outstanding or any amounts are owed to the Note Insurer, the consent of the Note Insurer, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Sale Agreement or of modifying in any manner the rights of the Noteholders or the Certificateholders, respectively; provided, however, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the time of, collections of payments with respect to Transferred Student Loans or distributions that shall be required to be made for the benefit of the Noteholders, or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes or the Certificates, the Noteholders or the Certificateholders of which are required to consent to any such amendment, without the consent of all outstanding Noteholders or Certificateholders, respectively.

Promptly after the execution of any such amendment or consent (or, in the case of the Rating Agencies, five Business Days prior thereto), the Purchaser shall furnish written notification of the substance of such amendment or consent to the Indenture Trustee, the Note Insurer and each of the Rating Agencies.

It shall not be necessary for the consent of Noteholders pursuant to this Section to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof.

Prior to the execution of any amendment to this Sale Agreement, the Owner Trustee shall be entitled to receive and rely upon an opinion of counsel stating that execution of such amendment is authorized or permitted by this Sale Agreement. The Owner Trustee may, but shall not be obligated to, enter into any such amendment which affects the Owner Trustee's own rights, duties or immunities under this Sale Agreement or otherwise.

## ARTICLE XII
## ASSIGNMENT

The Seller hereby assigns its entire right, title and interest as purchaser under this Sale Agreement and each Student Loan Purchase Agreement to the Purchaser as of the date hereof and acknowledges that the Purchaser will assign the same, together with the right, title and interest of the Purchaser hereunder, to the Indenture Trustee under the Indenture.

## ARTICLE XIII
## THIRD PARTY BENEFICIARY

The Noteholders and the Note Insurer are third party beneficiaries hereof.

## ARTICLE XIV
## GOVERNING LAW

THIS SALE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT OTHERWISE WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

## ARTICLE XV
## LIMITATION OF LIABILITY OF OWNER TRUSTEE

Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of the Purchaser, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Purchaser have any liability for the representations, warranties, covenants, agreements or other obligations of the Purchaser hereunder, as to all of which recourse shall be had solely to the assets of the Purchaser. For all purposes of this Sale Agreement, in the performance of any duties or obligations of the Purchaser hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Sale Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

THE NATIONAL COLLEGIATE FUNDING LLC, as Seller

By:  GATE Holdings, Inc., Member

By:  /s/ John A. Foxgrover
      Name:       John A. Foxgrover
      Title:        Vice President

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3, as Purchaser

By:  Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By:  /s/ Patricia A. Evans
      Name:       Patricia A. Evans
      Title:        Vice President

## SCHEDULE A

### *Pool Supplements*

Each of the following Pool Supplements was entered into by and among The First Marblehead Corporation, The National Collegiate Funding LLC and:

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Bank of America, N.A., dated September 20, 2007, for loans that were originated under Bank of America's Private Loan Program, TERI (School Channel) Loan Program and TERI ISLP Loan Program.

- RBS Citizens, N.A., successor by merger to Charter One Bank, N.A., dated September 20, 2007, for loans that were originated under the following Charter One programs: AAA Southern New England Bank, AES EducationGAIN Loan Program, Citibank Education Assistance Loan Program, College Loan Corporation Loan Program, EdFinancial Loan Program, Extra Credit II Loan Program (North Texas Higher Education), M&I Alternative Loan Program, National Education Loan Program, NextStudent Alternative Loan Program, Astrive Education (f/k/a START) Loan Program, AstriveAlliance Education (f/k/a START) Loan Program, Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program and ThinkFinancial Alternative Loan Program.

- RBS Citizens, N.A., successor by merger to Citizens Bank of Rhode Island, dated September 20, 2007, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, Navy Federal Alternative Loan Program, FinanSure Alternative Loan Program, Xanthus Alternative Loan Program and Penn State Undergraduate Loan Program.

- Comerica Bank, dated September 20, 2007, for loans that were originated under Comerica Bank's Private Loan Program.

- First National Bank Northeast, dated September 20, 2007, for loans that were originated under First National Bank Northeast's Nelnet Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated September 20, 2007, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated September 20, 2007, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated September 20, 2007, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A. (successor to Bank One, N.A.) dated September 20, 2007, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated September 20, 2007, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated September 20, 2007, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Loan Program.

- National City Bank, dated September 20, 2007, for loans that were originated under the National City Bank Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated September 20, 2007, for loans that were originated under PNC Bank's PNC Bank Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated September 20, 2007, for loans that were originated under Sovereign Bank's Alternative Student Loan Program.

- SunTrust Bank, dated September 20, 2007, for loans that were originated under the SunTrust Loan Program.

- Union Federal Savings Bank, dated September 20, 2007, for loans that were originated under the UFSB Astrive Loan Program.

- U.S. Bank National Association, dated September 20, 2007, for loans that were originated under the U.S Bank Alternative Loan Program.

## SCHEDULE B

### *Note Purchase Agreements*

Each of the Note Purchase Agreements, as amended or supplemented, was entered into by and between The First Marblehead Corporation and:

- Bank of America, N.A., dated April 30, 2001, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated June 30, 2006, for loans that were originated under Bank of America's Private Loan Program, TERI School Channel Loan Program and ISLP Loan Program.

- Bank of America, N.A., dated April 1, 2006, for loans that were originated under Bank of America's Direct to Consumer Loan Program.

- Charter One Bank, N.A., dated as of December 29, 2003 for loans that were originated under Charter One's AAA Southern New England Bank Loan Program.

- Charter One Bank, N.A., dated October 31, 2003, for loans that were originated under Charter One's AES EducationGAIN Loan Program.

- Charter One Bank, N.A., dated June 30, 2003, for loans that were originated under Charter One's Citibank Education Assistance Loan Program.

- Charter One Bank, N.A., dated July 1, 2002, for loans that were originated under Charter One's College Loan Corporation Loan Program.

- Charter One Bank, N.A., dated May 10, 2004, for loans that were originated under Charter One's EdFinancial Loan Program.

- Charter One Bank, N.A., dated September 15, 2003, for loans that were originated under Charter One's Extra Credit II Loan Program (North Texas Higher Education).

- Charter One Bank, N.A., dated September 20, 2003, for loans that were originated under Charter One's M&I Alternative Loan Program.

- Charter One Bank, N.A., dated November 17, 2003, for loans that were originated under Charter One's National Education Loan Program.

- Charter One Bank, N.A., dated May 15, 2002, for loans that were originated under Charter One's NextStudent Alternative Loan Program.

- Charter One Bank, N.A., dated March 25, 2004, for loans that were originated under Charter One's Astrive and AstriveAlliance Education (f/k/a START) Loan Programs.

- Charter One Bank, N.A., dated February 15, 2005, for loans that were originated under Charter One's Referral Loan Program (including loans in the Charter One Bank Alternative Loan Program, E-Loan Private Loan Program, UPromise Alternative Loan Program, Collegiate Solutions Alternative Loan Program, College Board Alternative Loan Program, Axiom Alternative Loan Program, American Student Loan Services Private Loan Program, nBuy Private Loan Program, and ThinkFinancial Alternative Loan Program).

- Citizens Bank of Rhode Island, dated April 30, 2004, for loans that were originated under Citizens Bank of Rhode Island's Alternative Loan Program, ISLP Loan Program, Compass Bank Loan Program, FinanSure Alternative Loan Program, Navy Federal Alternative Loan Program, and Xanthus Alternative Loan Program.

- Citizens Bank of Rhode Island, dated October 1, 2002, for loans that were originated under Citizens Bank of Rhode Island's Penn State Undergraduate Loan Program.

- Comerica Bank, dated June 30, 2006, for loans that were originated under Comerica Bank's Private Loan Program.

- First National Bank Northeast, dated August 1, 2001, for loans that were originated under First National Bank Northeast's Nelnet Undergraduate Alternative Loan Program.

- HSBC Bank USA, National Association, dated April 17, 2002, as amended on June 2, 2003 and August 1, 2003, for loans that were originated under the HSBC Loan Program.

- The Huntington National Bank, dated May 20, 2003, for loans that were originated under the Huntington Education Loan Program.

- InsurBanc, dated July 1, 2006, for loans that were originated under the InsurBanc Loan Program.

- JPMorgan Chase Bank, N.A,, (successor to Bank One, N.A.), dated May 1, 2002, for loans that were originated under Bank One's CORPORATE ADVANTAGE Loan Program, EDUCATION ONE Loan Program, and Campus One Loan Program.

- KeyBank National Association, dated May 12, 2006, for loans that were originated under KeyBank's Private Education Loan Program.

- Manufacturers and Traders Trust Company, dated April 29, 2004, for loans that were originated under the M&T Alternative Loan Program.

- National City Bank, dated November 13, 2002, for loans that were originated under the National City Loan Program.

- National City Bank, dated July 21, 2006, for loans that were originated under the National City Referral Loan Program, including the Astute Private Loan Program.

- PNC Bank, N.A., dated April 22, 2004, for loans that were originated under PNC Bank's Alternative Loan Program, Brazos Alternative Loan Program, Edvisors Alternative Loan Program, Fondo Futuro Loan Program, GE Money Bank Student Loan Program, Old National Bank Private Loan Program, and Regions Bank Private Loan Program.

- Sovereign Bank, dated April 30, 2004, for loans that were originated under Sovereign Bank's Alternative Student Loan Program.

- SunTrust Bank, dated March 1, 2002, for loans that were originated under the SunTrust Loan Program.

- Union Federal Savings Bank, dated March 26, 2007, for loans that were originated under the UFSB Astrive Loan Program.

- U.S. Bank National Association, dated May 1, 2005, for loans that were originated under the U.S Bank Alternative Loan Program.

Department of Defense Manpower Data Center

Results as of : Mar-19-2017 09:55:46 PM

SCRA 3.6



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN: XXX-XX-4440
Birth Date:
Last Name: WADDELL
First Name: ALISHA
Middle Name:
Active Duty Status As Of: Mar-19-2017

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |

This response reflects the individuals' active duty status based on the Active Duty Status Date

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |

This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |

This response reflects whether the individual or his/her unit has received early notification to report for active duty

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More Information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(c)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Certificate ID: U0L99D11Q5E1R00

# EXHIBIT 2

## Loan Payment History Report
### Date: 2017-05-03

| | | | |
|---|---|---|---|
| Account Number: | 4440/001-001000 | | |
| Social Security Number: | 4440 | Product: | EOU EDUCATION ONE UNDERGRAD |
| Name: | WADDELL, ALISHA | Officer Code: | 777073 |
| Birth Date: | 1989 | School: | CHRISTIAN BROTHERS UNIV |
| Address 1: | | Program Year: | 2007-08 |
| Address 2: | | | |
| City: | SPRINGDALE | Variable Rate Code: | F3 MONTHLY LIBOR |
| State: | AR | Interest Rate: | 8.23% |
| Zip Code: | | | |
| Cosigner Name: | WADDELL, JAMES | | |
| Social Security Number: | 1764 | | |
| Address 1: | | | |
| Address 2: | | | |
| City: | LINCOLN | | |
| State: | AR | | |
| Zip Code: | | | |

| | | | |
|---|---|---|---|
| | | Last Payment Date: | 2016-09-21 |
| | | Last Payment Amount: | $215.00 |
| Contract Date: | 2007-07-18 | Last Interest Date: | 2017-05-03 |
| Vendor Placement Date: | 2015-08-20 | Accrued Interest: | $2,352.06 |
| Charge Off Date: | 2011-02-01 | Recovered Interest: | $0.00 |
| Charge Off Amount: | $11,777.07 | Net Interest: | $2,352.06 |
| Recovered Principal: | $0.00 | Associated Costs: | $0.00 |
| Current Principle: | $11,495.04 | Recovered Costs: | $0.00 |
| Disbursement Date: | 2007-07-18 | Net Costs: | $0.00 |
| Disbursement Amount: | $9,497.21 | | |

## Transaction History

| User | Date | Time | Code | Description | Amount |
|---|---|---|---|---|---|
| System | 2011-02-28 | 00:01 | 82 | $11,777.07 @ 7.510 / 02/01/2011 - 02/28/2011 | $65.43 |
| System | 2011-03-01 | 00:01 | 82 | $11,777.07 @ 7.510 / 02/28/2011 - 03/01/2011 | $2.42 |
| System | 2011-03-31 | 00:01 | 82 | $11,777.07 @ 7.510 / 03/01/2011 - 03/31/2011 | $72.70 |
| System | 2011-04-01 | 00:01 | 82 | $11,777.07 @ 7.510 / 03/31/2011 - 04/01/2011 | $2.42 |
| System | 2011-04-08 | 00:00 | 12 | Interest Office Payment | $142.97 |
| System | 2011-04-08 | 00:00 | 16 | Principal Office Payment | $53.43 |
| System | 2011-04-29 | 00:00 | 16 | Principal Office Payment | $98.20 |
| System | 2011-04-30 | 00:01 | 82 | $11,625.44 @ 7.510 / 04/01/2011 - 04/30/2011 | $69.37 |
| System | 2011-05-02 | 00:01 | 82 | $11,625.44 @ 7.490 / 04/30/2011 - 05/02/2011 | $4.77 |

| System | 2011-05-31 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-05-31 | 00:01 | 82 | $11,625.44 @ 7.490 / 05/02/2011 - 05/31/2011 | $69.18 |
| System | 2011-06-01 | 00:01 | 82 | $11,625.44 @ 7.490 / 05/31/2011 - 06/01/2011 | $2.39 |
| System | 2011-06-30 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-06-30 | 00:01 | 82 | $11,625.44 @ 7.460 / 06/01/2011 - 06/30/2011 | $68.91 |
| System | 2011-07-01 | 00:01 | 82 | $11,625.44 @ 7.460 / 06/30/2011 - 07/01/2011 | $2.38 |
| System | 2011-07-31 | 00:01 | 82 | $11,625.44 @ 7.440 / 07/01/2011 - 07/31/2011 | $71.09 |
| System | 2011-08-01 | 00:00 | 12 | Interest Office Payment | $94.06 |
| System | 2011-08-01 | 00:00 | 16 | Principal Office Payment | $4.14 |
| System | 2011-08-01 | 00:01 | 82 | $11,625.44 @ 7.440 / 07/31/2011 - 08/01/2011 | $2.37 |
| System | 2011-08-30 | 00:00 | 16 | Principal Office Payment | $98.20 |
| System | 2011-08-31 | 00:01 | 82 | $11,523.10 @ 7.440 / 08/01/2011 - 08/31/2011 | $70.46 |
| System | 2011-09-01 | 00:01 | 82 | $11,523.10 @ 7.440 / 08/31/2011 - 09/01/2011 | $2.35 |
| System | 2011-09-30 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-09-30 | 00:01 | 82 | $11,523.10 @ 7.440 / 09/01/2011 - 09/30/2011 | $68.12 |
| System | 2011-10-03 | 00:01 | 82 | $11,523.10 @ 7.440 / 09/30/2011 - 10/03/2011 | $7.05 |
| System | 2011-10-31 | 00:00 | 12 | Interest Office Payment | $98.20 |
| System | 2011-10-31 | 00:01 | 82 | $11,523.10 @ 7.470 / 10/03/2011 - 10/31/2011 | $66.03 |
| System | 2011-11-01 | 00:01 | 82 | $11,523.10 @ 7.470 / 10/31/2011 - 11/01/2011 | $2.36 |
| System | 2011-11-30 | 00:00 | 12 | Interest Office Payment | $88.54 |
| System | 2011-11-30 | 00:00 | 16 | Principal Office Payment | $9.66 |
| System | 2011-11-30 | 00:01 | 82 | $11,523.10 @ 7.490 / 11/01/2011 - 11/30/2011 | $68.57 |
| System | 2011-12-01 | 00:01 | 82 | $11,513.44 @ 7.490 / 11/30/2011 - 12/01/2011 | $2.36 |
| System | 2011-12-29 | 00:00 | 12 | Interest Office Payment | $2.36 |
| System | 2011-12-29 | 00:00 | 16 | Principal Office Payment | $95.84 |
| System | 2011-12-31 | 00:01 | 82 | $11,417.60 @ 7.500 / 12/01/2011 - 12/31/2011 | $70.38 |
| System | 2012-01-03 | 00:01 | 82 | $11,417.60 @ 7.520 / 12/31/2011 - 01/03/2012 | $7.04 |
| System | 2012-01-30 | 00:00 | 12 | Interest Office Payment | $77.44 |
| System | 2012-01-30 | 00:00 | 16 | Principal Office Payment | $20.76 |
| System | 2012-01-31 | 00:01 | 82 | $11,396.84 @ 7.520 / 01/03/2012 - 01/31/2012 | $65.57 |
| System | 2012-02-01 | 00:01 | 82 | $11,396.84 @ 7.520 / 01/31/2012 - 02/01/2012 | $2.34 |
| System | 2012-02-06 | 00:00 | 13 | NSF Principal Office Payment | $98.20 |
| System | 2012-02-29 | 00:01 | 82 | $11,495.04 @ 7.550 / 02/01/2012 - 02/29/2012 | $66.39 |
| System | 2012-03-01 | 00:01 | 82 | $11,495.04 @ 7.510 / 02/29/2012 - 03/01/2012 | $2.36 |
| System | 2012-03-31 | 00:01 | 82 | $11,495.04 @ 7.510 / 03/01/2012 - 03/31/2012 | $70.76 |
| System | 2012-04-02 | 00:01 | 82 | $11,495.04 @ 7.510 / 03/31/2012 - 04/02/2012 | $4.72 |
| System | 2012-04-30 | 00:01 | 82 | $11,495.04 @ 7.490 / 04/02/2012 - 04/30/2012 | $65.87 |
| System | 2012-05-02 | 00:01 | 82 | $11,495.04 @ 7.490 / 04/30/2012 - 05/02/2012 | $4.70 |
| System | 2012-05-31 | 00:01 | 82 | $11,495.04 @ 7.490 / 05/02/2012 - 05/31/2012 | $68.22 |
| System | 2012-06-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 05/31/2012 - 06/01/2012 | $2.35 |
| System | 2012-06-30 | 00:01 | 82 | $11,495.04 @ 7.490 / 06/01/2012 - 06/30/2012 | $68.22 |
| System | 2012-07-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 06/30/2012 - 07/01/2012 | $2.35 |
| System | 2012-07-02 | 00:01 | 82 | $11,495.04 @ 7.490 / 07/01/2012 - 07/02/2012 | $2.35 |
| System | 2012-07-31 | 00:01 | 82 | $11,495.04 @ 7.490 / 07/02/2012 - 07/31/2012 | $68.22 |
| System | 2012-08-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 07/31/2012 - 08/01/2012 | $2.35 |
| System | 2012-08-31 | 00:01 | 82 | $11,495.04 @ 7.500 / 08/01/2012 - 08/31/2012 | $70.67 |
| System | 2012-09-04 | 00:01 | 82 | $11,495.04 @ 7.500 / 08/31/2012 - 09/04/2012 | $9.42 |
| System | 2012-09-30 | 00:01 | 82 | $11,495.04 @ 7.500 / 09/04/2012 - 09/30/2012 | $61.24 |

| System | 2012-10-01 | 00:01 | 82 | $11,495.04 @ 7.500 / 09/30/2012 - 10/01/2012 | $2.36 |
|--------|-----------|-------|----|----|----|
| System | 2012-10-31 | 00:01 | 82 | $11,495.04 @ 7.480 / 10/01/2012 - 10/31/2012 | $70.48 |
| System | 2012-11-06 | 00:01 | 82 | $11,495.04 @ 7.480 / 10/31/2012 - 11/06/2012 | $14.10 |
| System | 2012-11-08 | 00:00 | 47 | Check Charge/Fee Adjustment | $-194.38 |
| System | 2012-11-08 | 00:01 | 82 | $11,495.04 @ 7.460 / 11/06/2012 - 11/08/2012 | $4.69 |
| System | 2012-11-09 | 00:01 | 82 | $11,495.04 @ 7.460 / 11/08/2012 - 11/09/2012 | $2.34 |
| System | 2012-12-03 | 00:01 | 82 | $11,495.04 @ 7.460 / 11/09/2012 - 12/03/2012 | $56.23 |
| System | 2012-12-17 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/03/2012 - 12/17/2012 | $32.80 |
| System | 2012-12-21 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/17/2012 - 12/21/2012 | $9.37 |
| System | 2012-12-31 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/21/2012 - 12/31/2012 | $23.43 |
| System | 2013-01-11 | 00:01 | 82 | $11,495.04 @ 7.460 / 12/31/2012 - 01/11/2013 | $25.84 |
| System | 2013-01-14 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/11/2013 - 01/14/2013 | $7.05 |
| System | 2013-01-18 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/14/2013 - 01/18/2013 | $9.40 |
| System | 2013-01-21 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/18/2013 - 01/21/2013 | $7.05 |
| System | 2013-01-22 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/21/2013 - 01/22/2013 | $2.35 |
| System | 2013-01-24 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/22/2013 - 01/24/2013 | $4.70 |
| System | 2013-01-25 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/24/2013 - 01/25/2013 | $2.35 |
| System | 2013-01-30 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/25/2013 - 01/30/2013 | $11.75 |
| System | 2013-01-31 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/30/2013 - 01/31/2013 | $2.35 |
| System | 2013-02-01 | 00:01 | 82 | $11,495.04 @ 7.460 / 01/31/2013 - 02/01/2013 | $2.35 |
| System | 2013-02-04 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/01/2013 - 02/04/2013 | $7.05 |
| System | 2013-02-06 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/04/2013 - 02/06/2013 | $4.70 |
| System | 2013-02-07 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/06/2013 - 02/07/2013 | $2.35 |
| System | 2013-02-08 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/07/2013 - 02/08/2013 | $2.35 |
| System | 2013-02-11 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/08/2013 - 02/11/2013 | $7.05 |
| System | 2013-02-12 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/11/2013 - 02/12/2013 | $2.35 |
| System | 2013-02-14 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/12/2013 - 02/14/2013 | $4.70 |
| System | 2013-02-15 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/14/2013 - 02/15/2013 | $2.35 |
| System | 2013-02-18 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/15/2013 - 02/18/2013 | $7.05 |
| System | 2013-02-28 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/18/2013 - 02/28/2013 | $23.49 |
| System | 2013-03-01 | 00:01 | 82 | $11,495.04 @ 7.460 / 02/28/2013 - 03/01/2013 | $2.35 |
| System | 2013-03-04 | 00:01 | 82 | $11,495.04 @ 7.450 / 03/01/2013 - 03/04/2013 | $7.04 |
| System | 2013-03-31 | 00:01 | 82 | $11,495.04 @ 7.450 / 03/04/2013 - 03/31/2013 | $63.35 |
| System | 2013-04-30 | 00:01 | 82 | $11,495.04 @ 7.450 / 03/31/2013 - 04/30/2013 | $70.39 |
| System | 2013-05-07 | 00:01 | 82 | $11,495.04 @ 7.450 / 04/30/2013 - 05/07/2013 | $16.42 |
| System | 2013-05-31 | 00:01 | 82 | $11,495.04 @ 7.450 / 05/07/2013 - 05/31/2013 | $56.31 |
| System | 2013-06-30 | 00:01 | 82 | $11,495.04 @ 7.450 / 05/31/2013 - 06/30/2013 | $70.39 |
| System | 2013-07-04 | 00:01 | 82 | $11,495.04 @ 7.450 / 06/30/2013 - 07/04/2013 | $9.38 |
| System | 2013-07-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 07/04/2013 - 07/31/2013 | $63.26 |
| System | 2013-08-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 07/31/2013 - 08/31/2013 | $72.64 |
| System | 2013-09-30 | 00:01 | 82 | $11,495.04 @ 7.440 / 08/31/2013 - 09/30/2013 | $70.29 |
| System | 2013-10-09 | 00:01 | 82 | $11,495.04 @ 7.440 / 09/30/2013 - 10/09/2013 | $21.09 |
| System | 2013-10-31 | 00:01 | 82 | $11,495.04 @ 7.430 / 10/09/2013 - 10/31/2013 | $51.48 |
| System | 2013-11-30 | 00:01 | 82 | $11,495.04 @ 7.430 / 10/31/2013 - 11/30/2013 | $70.20 |
| System | 2013-12-04 | 00:01 | 82 | $11,495.04 @ 7.430 / 11/30/2013 - 12/04/2013 | $9.36 |
| System | 2013-12-31 | 00:01 | 82 | $11,495.04 @ 7.420 / 12/04/2013 - 12/31/2013 | $63.09 |
| System | 2014-01-31 | 00:01 | 82 | $11,495.04 @ 7.420 / 12/31/2013 - 01/31/2014 | $72.44 |
| System | 2014-02-28 | 00:01 | 82 | $11,495.04 @ 7.420 / 01/31/2014 - 02/28/2014 | $65.43 |

| System | 2014-04-03 | 00:01 | 82 | $11,495.04 @ 7.420 / 02/28/2014 - 04/03/2014 | $79.45 |
|--------|-----------|-------|----|----------------------------------------------|--------|
| System | 2014-05-07 | 00:01 | 82 | $11,495.04 @ 7.410 / 04/03/2014 - 05/07/2014 | $79.34 |
| System | 2014-05-21 | 00:01 | 82 | $11,495.04 @ 7.400 / 05/07/2014 - 05/21/2014 | $32.63 |
| System | 2014-07-31 | 00:01 | 82 | $11,495.04 @ 7.400 / 05/21/2014 - 07/31/2014 | $165.47 |
| System | 2014-08-31 | 00:01 | 82 | $11,495.04 @ 7.400 / 07/31/2014 - 08/31/2014 | $72.25 |
| System | 2014-09-02 | 00:01 | 82 | $11,495.04 @ 7.400 / 08/31/2014 - 09/02/2014 | $4.66 |
| System | 2014-09-30 | 00:01 | 82 | $11,495.04 @ 7.410 / 09/02/2014 - 09/30/2014 | $65.34 |
| System | 2014-10-01 | 00:01 | 82 | $11,495.04 @ 7.410 / 09/30/2014 - 10/01/2014 | $2.33 |
| System | 2014-10-31 | 00:01 | 82 | $11,495.04 @ 7.410 / 10/01/2014 - 10/31/2014 | $70.01 |
| System | 2014-11-30 | 00:01 | 82 | $11,495.04 @ 7.410 / 10/31/2014 - 11/30/2014 | $70.01 |
| System | 2014-12-31 | 00:01 | 82 | $11,495.04 @ 7.410 / 11/30/2014 - 12/31/2014 | $72.34 |
| System | 2015-01-05 | 00:01 | 82 | $11,495.04 @ 7.410 / 12/31/2014 - 01/05/2015 | $11.66 |
| System | 2015-01-31 | 00:01 | 82 | $11,495.04 @ 7.400 / 01/05/2015 - 01/31/2015 | $60.59 |
| System | 2015-02-03 | 00:01 | 82 | $11,495.04 @ 7.400 / 01/31/2015 - 02/03/2015 | $6.99 |
| System | 2015-02-28 | 00:01 | 82 | $11,495.04 @ 7.420 / 02/03/2015 - 02/28/2015 | $58.42 |
| System | 2015-03-31 | 00:01 | 82 | $11,495.04 @ 7.420 / 02/28/2015 - 03/31/2015 | $72.44 |
| System | 2015-04-30 | 00:01 | 82 | $11,495.04 @ 7.420 / 03/31/2015 - 04/30/2015 | $70.10 |
| System | 2015-05-01 | 00:01 | 82 | $11,495.04 @ 7.420 / 04/30/2015 - 05/01/2015 | $2.34 |
| System | 2015-05-31 | 00:01 | 82 | $11,495.04 @ 7.430 / 05/01/2015 - 05/31/2015 | $70.20 |
| System | 2015-06-30 | 00:01 | 82 | $11,495.04 @ 7.430 / 05/31/2015 - 06/30/2015 | $70.20 |
| System | 2015-07-31 | 00:01 | 82 | $11,495.04 @ 7.430 / 06/30/2015 - 07/31/2015 | $72.54 |
| System | 2015-08-03 | 00:01 | 82 | $11,495.04 @ 7.430 / 07/31/2015 - 08/03/2015 | $7.02 |
| System | 2015-08-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 08/03/2015 - 08/31/2015 | $65.61 |
| System | 2015-09-30 | 00:01 | 82 | $11,495.04 @ 7.440 / 08/31/2015 - 09/30/2015 | $70.29 |
| System | 2015-10-01 | 00:01 | 82 | $11,495.04 @ 7.440 / 09/30/2015 - 10/01/2015 | $2.34 |
| System | 2015-11-04 | 00:01 | 82 | $11,495.04 @ 7.450 / 10/01/2015 - 11/04/2015 | $79.77 |
| System | 2015-11-05 | 00:01 | 82 | $11,495.04 @ 7.450 / 11/04/2015 - 11/05/2015 | $2.35 |
| System | 2015-12-31 | 00:01 | 82 | $11,495.04 @ 7.440 / 11/05/2015 - 12/31/2015 | $131.21 |
| System | 2016-01-01 | 00:01 | 82 | $11,495.04 @ 7.440 / 12/31/2015 - 01/01/2016 | $2.34 |
| System | 2016-01-19 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-01-19 | 00:01 | 82 | $11,495.04 @ 7.490 / 01/01/2016 - 01/19/2016 | $42.34 |
| System | 2016-01-31 | 00:01 | 82 | $11,495.04 @ 7.490 / 01/19/2016 - 01/31/2016 | $28.23 |
| System | 2016-02-01 | 00:01 | 82 | $11,495.04 @ 7.490 / 01/31/2016 - 02/01/2016 | $2.35 |
| System | 2016-02-12 | 00:00 | 12 | Interest Office Payment | $-305.00 |
| System | 2016-02-12 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-02-12 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/01/2016 - 02/12/2016 | $26.53 |
| System | 2016-02-16 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-02-16 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/12/2016 - 02/16/2016 | $9.65 |
| System | 2016-02-29 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/16/2016 - 02/29/2016 | $31.36 |
| System | 2016-03-16 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-03-16 | 00:01 | 82 | $11,495.04 @ 7.680 / 02/29/2016 - 03/16/2016 | $38.59 |
| System | 2016-03-31 | 00:01 | 82 | $11,495.04 @ 7.680 / 03/16/2016 - 03/31/2016 | $36.18 |
| System | 2016-04-01 | 00:01 | 82 | $11,495.04 @ 7.680 / 03/31/2016 - 04/01/2016 | $2.41 |
| System | 2016-04-18 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-04-18 | 00:01 | 82 | $11,495.04 @ 7.677 / 04/01/2016 - 04/18/2016 | $40.99 |
| System | 2016-04-30 | 00:01 | 82 | $11,495.04 @ 7.677 / 04/18/2016 - 04/30/2016 | $28.93 |
| System | 2016-05-02 | 00:01 | 82 | $11,495.04 @ 7.677 / 04/30/2016 - 05/02/2016 | $4.82 |
| System | 2016-05-17 | 00:00 | 12 | Interest Office Payment | $305.00 |

| System | 2016-05-17 | 00:01 | 82 | $11,495.04 @ 7.690 / 05/02/2016 - 05/17/2016 | $36.23 |
| System | 2016-05-31 | 00:01 | 82 | $11,495.04 @ 7.690 / 05/17/2016 - 05/31/2016 | $33.81 |
| System | 2016-06-16 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-06-16 | 00:01 | 82 | $11,495.04 @ 7.690 / 05/31/2016 - 06/16/2016 | $38.64 |
| System | 2016-06-30 | 00:01 | 82 | $11,495.04 @ 7.690 / 06/16/2016 - 06/30/2016 | $33.81 |
| System | 2016-07-01 | 00:01 | 82 | $11,495.04 @ 7.690 / 06/30/2016 - 07/01/2016 | $2.42 |
| System | 2016-07-18 | 00:00 | 12 | Interest Office Payment | $305.00 |
| System | 2016-07-18 | 00:01 | 82 | $11,495.04 @ 7.720 / 07/01/2016 - 07/18/2016 | $41.22 |
| System | 2016-07-25 | 00:00 | 12 | Interest Office Payment | $-305.00 |
| System | 2016-07-25 | 00:01 | 82 | $11,495.04 @ 7.720 / 07/18/2016 - 07/25/2016 | $16.97 |
| System | 2016-08-01 | 00:01 | 82 | $11,495.04 @ 7.720 / 07/25/2016 - 08/01/2016 | $16.97 |
| System | 2016-08-19 | 00:00 | 12 | Interest Office Payment | $215.00 |
| System | 2016-08-19 | 00:01 | 82 | $11,495.04 @ 7.720 / 08/01/2016 - 08/19/2016 | $43.64 |
| System | 2016-08-31 | 00:01 | 82 | $11,495.04 @ 7.720 / 08/19/2016 - 08/31/2016 | $29.10 |
| System | 2016-09-01 | 00:01 | 82 | $11,495.04 @ 7.720 / 08/31/2016 - 09/01/2016 | $2.42 |
| System | 2016-09-21 | 00:00 | 12 | Interest Office Payment | $215.00 |
| System | 2016-09-21 | 00:01 | 82 | $11,495.04 @ 7.750 / 09/01/2016 - 09/21/2016 | $48.68 |
| System | 2016-09-30 | 00:01 | 82 | $11,495.04 @ 7.750 / 09/21/2016 - 09/30/2016 | $21.91 |
| System | 2016-10-01 | 00:01 | 82 | $11,495.04 @ 7.750 / 09/30/2016 - 10/01/2016 | $2.43 |
| System | 2016-10-08 | 00:00 | 44 | Interest Adjustment | $-32.86 |
| System | 2016-10-08 | 00:01 | 82 | $11,495.04 @ 7.770 / 10/01/2016 - 10/08/2016 | $17.08 |
| System | 2016-10-31 | 00:01 | 82 | $11,495.04 @ 7.770 / 10/08/2016 - 10/31/2016 | $56.13 |
| System | 2016-11-01 | 00:01 | 82 | $11,495.04 @ 7.770 / 10/31/2016 - 11/01/2016 | $2.44 |
| System | 2016-11-30 | 00:01 | 82 | $11,495.04 @ 7.780 / 11/01/2016 - 11/30/2016 | $70.86 |
| System | 2016-12-31 | 00:01 | 82 | $11,495.04 @ 7.780 / 11/30/2016 - 12/31/2016 | $75.75 |
| System | 2017-01-01 | 00:01 | 82 | $11,495.04 @ 7.780 / 12/31/2016 - 01/01/2017 | $2.45 |
| System | 2017-01-31 | 00:01 | 82 | $11,495.04 @ 7.870 / 01/01/2017 - 01/31/2017 | $74.36 |
| System | 2017-02-01 | 00:01 | 82 | $11,495.04 @ 7.870 / 01/31/2017 - 02/01/2017 | $2.48 |
| System | 2017-02-28 | 00:01 | 82 | $11,495.04 @ 8.020 / 02/01/2017 - 02/28/2017 | $68.20 |
| System | 2017-03-01 | 00:01 | 82 | $11,495.04 @ 8.020 / 02/28/2017 - 03/01/2017 | $2.53 |
| System | 2017-03-31 | 00:01 | 82 | $11,495.04 @ 8.030 / 03/01/2017 - 03/31/2017 | $75.87 |
| System | 2017-04-01 | 00:01 | 82 | $11,495.04 @ 8.030 / 03/31/2017 - 04/01/2017 | $2.53 |
| System | 2017-04-30 | 00:01 | 82 | $11,495.04 @ 8.040 / 04/01/2017 - 04/30/2017 | $73.43 |
| System | 2017-05-01 | 00:01 | 82 | $11,495.04 @ 8.040 / 04/30/2017 - 05/01/2017 | $2.53 |
| System | 2017-05-03 | 00:01 | 82 | $11,495.04 @ 8.230 / 05/01/2017 - 05/03/2017 | $5.18 |